## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TIMOTHY E. JEFFRIES** | ) | |
| **11805 Brookeville Landing Court** | ) | |
| **Bowie, MD 20721** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. _____** |
| | ) | |
| **LORETTA E. LYNCH,** | ) | |
| **ATTORNEY GENERAL,** | ) | |
| **U.S. DEPARTMENT OF JUSTICE** | ) | |
| **950 Pennsylvania Ave. NW** | ) | |
| **Washington, D.C. 20530** | ) | |
| **Defendant** | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Timothy E. Jeffries, by his attorney, Jerry R. Goldstein, hereby sues

Loretta Lynch, Attorney General of the United States, and alleges as follows:

1.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Sec. 2000e-16(c).

2.  Venue lies in this Court pursuant to 42 U.S.C. Sec. 2000e-5(f), and 28 U.S.C.

Sec. 1391(b).

3.  All statutory prerequisites to suit have been timely satisfied.

### Background Facts

4.  The Plaintiff, Timothy E. Jeffries ("Jeffries"), is currently employed as a Policy

Advisor, GS-0343-13, in the Substance Abuse and Mental Health Division ("SAMH") in

the Bureau of Justice Assistance ("BJA"), which is in the Office of Justice Programs

("OJP") in the U.S. Department of Justice ("DOJ" or "Agency").

1

5.  Defendant Loretta E. Lynch is the Attorney General of the United States who is being sued in her official capacity.

6.  Jeffries is an African-American male who has been employed in OJP since 2000 and in BJA since 2002.

7.  Jeffries previously filed three cases against the Agency alleging discrimination on the basis of race and sex and retaliation in connection with several non-selections, which were consolidated and settled in 2008.

8.  BJA supports law enforcement, courts, corrections, treatment, victim services, technology, and prevention initiatives through leadership, services, and funding.  BJA has about 120 employees, and the Policy Office in which Jeffries works has approximately 35 employees.

9.  At the time that the claims involved in this case began, the leadership of BJA and the Policy Office consisted almost entirely of Caucasians. In the Policy Office, all but one of the GS-14 positions were occupied by Caucasians, and all 12 GS-15 and SES positions were occupied by Caucasians.

10.  Prior to Jeffries' original EEO complaint there had been no African-American males promoted or hired into management positions at BJA for more than eight years, and no African-American male supervisors hired in BJA in about 17 years.  In addition, two African-American male supervisors who had been in BJA from before that time had left after filing EEO complaints.

11.  There has been a regular practice in BJA in recent years of detailing Caucasian females to higher positions and then selecting them for those positions when

the positions were advertised.  African-American males, however, who have been detailed to higher positions have not been selected when those positions have been advertised as permanent positions.

12.  Jeffries has a B.S. Degree in psychology and a Master's Degree in social work and has extensive experience in the substance abuse field, especially with drug courts. He has served as a Presidential Management Intern and as a Special Assistant at the White House Office of National Drug Control Policy.  He has acted as a Senior Policy Advisor, a GS-14 position in BJA, and as an Acting Branch Chief.

13.  Jeffries has always received satisfactory or better performance appraisals, and has won various awards. His last three performance appraisals have been outstanding.

14.  Since 2011, Jeffries has applied for and not been selected for eight GS-14 positions in BJA.  He also has not been treated the same as his coworkers with respect to certain awards issued since that time.

15.  One of Jeffries' EEO cases that was settled in 2008 involved his non-selection for a GS-14 Program Analyst position in SAMH.  Even though his application for that position in 2006 had been given the highest score among all of the applicants, he was neither interviewed nor selected for the position.

16.  The selectee for that position, a Caucasian female, ultimately turned down the position and it was re-advertised in 2007.  Jeffries reapplied, but again was not interviewed for it.  Another Caucasian female, Ruby Qazilbash, his current supervisor, was selected for the position.

17.  In Jeffries' EEO case, the Agency denied that it discriminated or retaliated

against Jeffries, but contended that it simply made a mistake in failing to consider his application for an interview when the position was re-advertised. BJA therefore agreed to partially resolve the matter over the non-selection by issuing a priority consideration letter to Jeffries before there was a formal settlement agreement in his EEO case.

18.  Jeffries was given a priority consideration letter, dated July 30, 2007, which said that he would "receive priority consideration for the next open position similar and in the same geographical area to the one which proper consideration was missed.  This priority consideration will be granted to you prior issuing (sic) public notice of the vacancy. You will be notified in writing when this consideration has taken place."  The subsequent settlement agreement provided in Paragraph 7 that nothing "in this Agreement would affect the priority consideration given to Complainant in a letter dated July 30, 2007."

19.  For four years, Jeffries was never notified that his priority consideration letter had been used.  In February 2011 he inquired about it with the HR office.  Initially, BJA HR claimed that it was unable to locate the letter, but he gave them a copy and they finally said they found their copy later that month.  In March 2011, even though HR by then was clearly aware of Jeffries' priority consideration letter, it announced two positions for Supervisory Grants Program Manager (Branch Chief), GS-1109-14 to be filled in BJA without regard to the application of the letter.  Upon seeing the vacancy announcement (No. JP-11-036-MP), Jeffries asked HR about why it hadn't used his priority consideration letter, and was told that HR would in fact allow him to use the priority consideration for those positions.  By that time, the vacancy announcement had

4

been made and others had already applied.

20.   Publicly announcing the vacancy and accepting applications before giving Jeffries priority consideration were clear violations of the terms in the letter.  In addition, the referral list (cert) of best qualified applicants is dated April 19, 2011, and there is evidence that it, and presumably the application packages, were provided to the selection panel in April 2011 before the panel ever interviewed Jeffries.

21.   On the assumption that he was being given priority consideration, Jeffries submitted a resume and KSA's (knowledge, skills, and abilities) for the position as requested by HR.  He believed that his resume and KSA's would be submitted directly to the selecting official who would interview him and make a decision prior to seeing the cert.  Instead, Jeffries was interviewed for the position by a panel of three people who were supposed to make a recommendation to the selecting official. None of the notes of the panelists for Jeffries was on a rating and scoring sheet like that used for all of the other applicants to indicate that he was evaluated using the same rating factors and scoring methodology.

22.   At the end of the interview, Jeffries asked the panelists when a decision would be made.  He was told that the panel had other candidates who had made the best qualified certificate that they had to interview before making a decision.  He was also told that not every applicant had made the best qualified certificate.  Tammy Reid, a Division Chief in BJA who sat on the interview panel, acknowledged in her affidavit that "we compared Mr. Jeffries' qualifications with the other applicants."   This was also a violation of the priority consideration.

23.   In addition, contrary to the established law regarding priority consideration, Jeffries was <u>never</u> given an interview with the actual selecting official.

24.   The selectees for the two Supervisory Grants Program Manager positions were Naydine Fulton-Jones, an African-American female, and Esmeralda Womack, a Caucasian female. Neither had prior EEO activity.

25.   Jeffries had superior qualifications to those of the selectees.

26.   In 2011 Jeffries also applied for and was not selected for a GS-13/14 Special Assistant position under Vacancy Announcement No. JP-11-077.  The selectee was Cornelia Sigworth, a Caucasian female with no prior EEO activity.

27.   Sigworth had been given a special assignment immediately prior to her selection to enhance her qualifications for the position, but Jeffries still had superior qualifications to her.

28.   In 2013 Jeffries was not selected for the position of GS-0343-14 Senior Policy Advisor for Evidence Integration under Vacancy Announcement No. JP-13-009. The selectee was Clarence E. Banks, an African-American male with no prior EEO activity.

29.   Jeffries had superior qualifications to Banks.

30.   Jeffries had complained to the Attorney General's Diversity Committee shortly before the Banks selection about BJA's history of promoting Caucasians, particularly females, over more qualified African-American males, including the lack of promotion of African-American males to supervisory positions in 17 years. Jeffries' complaint was acknowledged by the Attorney General who indicated that BJA would

attempt to increase the number of African-American males in such positions after the current hiring freeze was lifted.  Shortly thereafter, Banks, was selected.

31.  In 2013 Jeffries also was not selected for a GS-0301-14 Administrative Services and Logistics Director position in BJA under Vacancy Announcement No. JP-13-015.  The selectee was Michelle Martin, a Caucasian female with no prior EEO activity.

32.  Jeffries had superior qualifications to Martin.

33.  In 2013 Jeffries also was not selected for a GS-1109-13/14 Supervisory Grants Management Specialist position under Vacancy Announcement No. JP-13-110. Although the vacancy announcement was for one position, two people were selected, Brenda Worthington, a Caucasian female, and Corey Randolph, a biracial male.  Neither had any prior EEO activity.

34.  This was a Branch Manager position which is normally at the GS-14 level in BJA, but it was changed to a GS-13/14 position because at least one of the selectees may not have had enough time in grade to qualify for the position at a GS-14 level.

35.  Jeffries had superior qualifications to both Worthington and Randolph.

36.  In 2013 Jeffries was not selected for the position of GS-0343-14 Senior Policy Advisor - Byrne Criminal Justice Innovation/Building Neighborhood Capacity Programs (BCJI/BNCP) in BJA under Vacancy Announcement No. JP-13-008.  The selectee was Alissa Huntoon, a Caucasian female with no prior EEO activity.

37.  The selectee was invited to attend meetings about the anticipated work of the position in advance of the interviewing for the position even though her existing GS-13

position would not have indicated that she should attend such meetings, which are normally attended by persons at the GS-14 level or higher.

38.  Jeffries had superior qualifications to Huntoon.

39.  In 2014 Jeffries was not selected for the GS-0343-14 Senior Policy Advisor (Health and Criminal Justice) in BJA under Vacancy Announcement No. JP-14-067.  The selectee was Danica Binkley, a Caucasian female with no prior EEO activity.

40.  This position was in the SAMH Division where Jeffries had extensive experience and had received recent outstanding performance appraisals.

41.  Even though the title and some of the duties for this position were changed prior to the vacancy announcement from Senior Policy Advisor (Substance Abuse and Mental Health), which Jeffries had actually acted in, to Senior Policy Advisor (Health and Criminal Justice) in an apparent effort to tailor it to Binkley's background, Jeffries still had superior qualifications to her for it.

42.  In addition to the foregoing non-selections, Jeffries was denied certain awards that his coworkers received.  These included a time-off award in 2011, a performance cash award in 2011, and cash and time-off awards for 2012.

### COUNT I
### (Discrimination in Violation of Title VII)

43.  Jeffries realleges and incorporates Paragraphs 1 through 42 herein.

44.  The treatment of Jeffries as aforesaid constitutes intentional disparate treatment on the basis of his race and/or sex in violation of Title VII.

45.  As a result of the violations as aforesaid, Jeffries has been adversely affected

8

in terms of compensation, benefits, lost promotional opportunities, past and future

pecuniary losses, humiliation and mental anguish, physical harm, and other non-pecuniary

losses.

WHEREFORE, Jeffries demands judgment against the Agency and prays that the

Court:

1.  Order his retroactive appointment to an appropriate GS-14 position.

2.  Award him full back pay and benefits.

3.  Award him compensatory damages of $300,000.

4.  Award him reasonable attorney's fees and the costs of this litigation.

5.  Award him such front pay and future benefits as may be appropriate.

6.  Enjoin the Agency from discriminating against, retaliating against, or harassing

him in any manner.

7.  Award him appropriate prejudgment interest.

8.  Award such other relief as may be necessary and proper.

## COUNT II
## (Retaliation in Violation of Title VII)

46.  Jeffries realleges and incorporates Paragraphs 1 through 45 herein.

47.  The treatment of Jeffries as aforesaid constitutes retaliation in violation of

Title VII.

48.  As a result of the violations as aforesaid, Jeffries has been adversely affected

in terms of compensation, benefits, lost promotional opportunities, past and future

pecuniary losses, humiliation and mental anguish, physical harm, and other non-pecuniary

losses.

WHEREFORE, Jeffries demands judgment against the Agency and prays that the Court:

1.  Order his retroactive appointment to an appropriate GS-14 position.

2.  Award him full back pay and benefits.

3.  Award him compensatory damages of $300,000.

4.  Award him reasonable attorney's fees and the costs of this litigation.

5.  Award him such front pay and future benefits as may be appropriate.

6.  Enjoin the Agency from discriminating against, retaliating against, or harassing him in any manner.

7.  Award him appropriate prejudgment interest.

8.  Award such other relief as may be necessary and proper.


## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable by a jury.


/s /  **JERRY R. GOLDSTEIN**
Jerry R. Goldstein (Bar No. 173690)
Jerry R. Goldstein, P.C.
4610 Elm St.
Bethesda, MD 20815
(301) 656-1177
(301) 986-9719 Fax
jrg4law@aol.com
Attorney for Plaintiff