UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY E. JEFFRIES )<br>    Plaintiff              )<br>                                             )<br>v.                              )<br>                                             )<br>LORETTA E. LYNCH,         )<br>ATTORNEY GENERAL,        )<br>U.S. DEPARTMENT OF JUSTICE )<br>    Defendant             )| Civil Action No. 15-1007 (BAH) |

**PLAINTIFF'S MOTION FOR RELIEF UNDER RULE 56(d)**

Plaintiff Timothy E. Jeffries ("Jeffries"), by his attorney, Jerry R. Goldstein, hereby respectfully requests an Order allowing him to take discovery pursuant to F.R.Civ.P. 56(d) for the reasons discussed herein.

**PROCEDURAL BACKGROUND**

As set forth in the attached Declaration of Jeffries' undersigned counsel, there has never been full discovery in this case, either in the EEOC or in this Court. Jeffries timely initiated separate EEO complaints regarding seven non-selections and several instances where he did not receive cash and time-off awards like his coworkers. However, of necessity they were initiated at different times and the Reports of Investigation (ROIs) were completed at different times. This meant that the cases reached the EEOC at different times and the EEOC, unfortunately, parceled the cases out to three different EEOC offices around the country for processing instead of keeping them all with one Administrative Judge in the Washington Field Office. One was sent to the Philadelphia District Office, one was sent to the Dallas District Office, and the rest were sent to two

different Administrative Judges in the Washington Field Office.

Written discovery was undertaken in only the first case to reach the EEOC – EEOC No. 570-2012-01151X involving Agency No. OJP-2011-00737.  However, it did include information about some of the other cases for which an EEOC hearing had been requested, but no Administrative Judge had yet been assigned.  No depositions or other discovery was undertaken in any of the cases because (a) the other cases were referred for settlement discussions by the Dallas and Washington Administrative Judges before any scheduling orders were issued, (b) no Administrative Judge was ever assigned in the Philadelphia case, (c) some of the cases were stayed to wait for the ROI to be completed in another case, and (d) it didn't make sense to take depositions of people who were involved in multiple selections while the ROIs dealing with some of those selections were still in the process of being completed or had not even begun.

When it became apparent that the settlement efforts were not successful and it was going to be untenable and unnecessarily expensive to litigate the cases in three different forums, Plaintiff initiated this case in federal court alleging discrimination on the basis of race and/or sex and retaliation in violation of Title VII.  The Defendant has now moved for judgment on the pleadings or, alternatively, for summary judgment prior to allowing Jeffries an opportunity to undertake any discovery other than the limited paper discovery he was able to undertake in the one case at the EEOC.  The Defendant has attached numerous exhibits containing information outside the pleadings to its Motion, which means that it should be treated as a motion for summary judgment pursuant to F.R.Civ.P. Rule 12 (d), such that Jeffries should be permitted to conduct discovery in order to

properly respond to the issues raised in the Motion.

The limited discovery which was conducted in the EEOC was incomplete and so were the ROIs provided to Jeffries. While Jeffries filed an Opposition to Defendant's Motion based upon the documents available at this time, which already demonstrates disputes of material fact and the inferences to be drawn therefrom, there is much more discovery needed to determine exactly what occurred in connection with the selections and awards in issue.

As discussed in Plaintiff's Opposition to Defendant's Motion, over 130 pages of the documents that the Defendant said it was producing were missing, as were the ROI affidavits of Denise O'Donnell, the Director of BJA, in four of the selections for which she was a selecting official, and the affidavit of Kristen Mahoney, in one of the selections in which she was a panelist. In some cases, the copies of the notes of the interviewers provided to the Plaintiff are missing or too faint to read, and the notes for Jeffries' interview are missing completely for one of the selections. See Ex. 5 attached to Plaintiff's Opposition to Defendant's Motion (all exhibit references herein are to exhibits attached to Plaintiff's Opposition). Although the Agency counsel at the time promised to rectify these issues, it was never done, presumably for the same reasons mentioned above that further discovery was not undertaken. The discovery still needed on the various claims is
discussed below.

## DISCOVERY NEEDED FOR NON-SELECTIONS

**Supervisory Grants Program Manager (Announcement No. JP-11-036)**

All three of the panelists for this selection, Jonathan Faley, Ed Aponte, and Tammy Reid, need to be deposed to determine exactly what occurred and to explain their notes, the lack of any scoring for Jeffries like they did for the other applicants, and the basis for the rationales used in Jeffries' rejection letter.  As discussed in Jeffries' Opposition, Faley and Aponte had been named as responsible management officials in Jeffries' prior EEO cases. In addition, Tracey Trautman, who claimed that she was the selecting official, and Faley had exchanged email correspondence joking about telling people that Jeffries had been selected for another Supervisory Grants Manager position in this case.  Ex. 19.

Naydine Fulton-Jones, one of the selectees, also needs to be deposed because she told Jeffries and another coworker that she had been interviewed for the position before Jeffries had been interviewed, Exs. 1, 24, contrary to Jeffries' priority consideration letter and to the Agency's contention that none of the other applicants was interviewed until Jeffries was rejected.  In addition, discovery is needed about the entire handling of Jeffries' priority consideration.

There is also a need to depose Kim Ball (Norris) who, according to one of her staff attorneys had objected to the settlement of Jeffries' prior cases, made racist statements, and said she intended to try and get him fired. Ex. 32.  At a minimum, there is a need to know what Ball said about Jeffries and to whom.

There is also a need to explore the Defendant's statement that some of the records relating to this selection were destroyed even though it knew that there was a pending claim about it.  Ex. 4.

**Special Assistant (Announcement No. JP-11-077)**

The panelists for this position also need to be deposed to explain their notes and scoring and exactly what occurred during the interview process. They were Ruby Qazilbash, who has been Jeffries' supervisor since 2008, was named as a responsible management official in Jeffries' pending EEO complaint and was also involved in the claims relating to time-off and cash awards, Ellen Williams, and Patrick McCreary. McCreary has acknowledged that the panelists discussed their independent scores for each candidate for purposes of "reconcil[ing] the scores," and it appears that Williams scratched out a number of her scores for Jeffries and lowered them. Ex. 36 at p. 149; Ex. 37 at pp. 380-82.

The selectee was also given a special assignment shortly before the selection to work with grant-funded programming and technical assistance to Puerto Rico which enabled her to enhance her qualifications for the position. Ex. 1. This raises the possibility of pre-selection, which can infer discriminatory or retaliatory intent, and which therefore needs to be explored in discovery.

**Senior Policy Advisor for Evidence Integration (Announcement No. JP-13-009)**

The panelists for this position also need to be deposed to explain their notes and scoring and exactly what occurred during the interview process. They were Ed Aponte again, Elizabeth Griffith, and Kristina Rose. As noted above, Aponte had been named as a responsible management official in several of Jeffries' EEO complaints and gave Jeffries the lowest score for all but one of the interview questions, Ex. 39 at pp. 150-56, which affected Jeffries' overall score. Griffith had been deposed twice in connection

with Jeffries' prior EEO cases and named as a responsible management official in connection with Jeffries' pending EEO complaint regarding his performance evaluation and failure to receive a cash award for 2010. Ex. 1.

In addition, although the selecting official cited the selectee's "educational field and background" justifying the selections, Ex. 38, the applications of Jeffries and the selectee are missing from the ROI provide to Jeffries and have never been produced, so discovery is needed on why they are missing and the rationale for the selection.

Also, Jeffries had complained to the Attorney General's Diversity Committee shortly before this selection about BJA's history of promoting Caucasians, particularly females, over more qualified African-American males, including the lack of promotion of African-American males to supervisory positions in 17 years. Jeffries' complaint was acknowledged by the Attorney General who indicated that BJA would attempt to increase the number of African-American males in such positions after the current hiring freeze was lifted. Ex. 41 at pp. 44-45. Shortly thereafter, Clarence Banks, an African-American with no prior EEO involvement, was selected for the position. Discovery is needed to determine if there is a relationship between Jeffries' complaint to the Attorney General's Diversity Committee and this selection.

**Administrative Services and Logistics Director Announcement No. JP-13-15)**

Only two applicants were interviewed for this position, Michelle Martin, a Caucasian female with no prior EEO activity, and Jeffries. Once again the panelists for this position need to be deposed to explain their notes and scoring and exactly what occurred during the interview process. Two of the panelists were Kristen Mahoney and

Shanetta Cutlar.  There is a discrepancy in the information provided on who the third was; the Defendant said it was Tracey Trautman, but the initials on the interview form apparently are those of someone else, Hope Janke.

There are a number of apparent irregularities with this selection about which discovery is needed.  These include substantial changes to the KSA's for the position before the vacancy announcement which raise the possibility that it was tailored for Martin, Ex. 43, the conflicting information on who the third panelist was, the fact that both Mahoney's and O'Donnell's (the selecting official) affidavits are missing from the ROI provided to Jeffries and were never produced, nor was one produced for Janke, and the lack of any documentation of how the applications of Jeffries and Martin were specifically scored by the panelists. According to the interview notes, separate scores were assigned for the applicant's resumes, work experience, and work history, as well as for the interviews.  Yet, there is nothing to indicate how this scoring for the resumes, work experience, and work history was actually determined.

**Supervisory Grants Management Specialist (Announcement No. JP-13-110)**

There are a number of irregularities that need to be explored in discovery with respect to this selection.  Prior to the vacancy announcement, the position was changed from a GS-14 to a GS-13/14 with a reduction in qualifications. Ex. 45.  The vacancy announcement for JP-13-110 was for only one GS-13/14 position, Ex. 46, but two applicants were selected – Brenda Worthington, a Caucasian female with no prior EEO activity, and Cory Randolph, a bi-racial male with no prior EEO activity.  The panelists were Ed Aponte, who oversaw the selection process and who had been named as a

7

responsible management official in Jeffries' 2007 case as well as in the pending case involving Announcement No. JP-11-036 for the other Supervisory Grants Program Manager positions; Jonathan Faley, who had been named as a responsible management official and deposed in the 2007 EEOC case, and had also been named as a responsible management official in the JP-11-036 case; and Kellie Dressler, a Caucasian female. The selectees were also interviewed by Denise O'Donnell, who had also been named as a responsible management official by Jeffries, and by Kristen Mahoney.

The interview notes of Jeffries and the selectees are missing from the ROI, except for one person's unrated notes for Worthington. Ex.47. In response to Jeffries' discovery request for the documents for this selection, Defendant produced only one interviewer's unsigned notes for Jeffries, one interviewer's unsigned notes for Worthington that appear to be on a different form than the one in the ROI, and one interviewer's unsigned notes for Randolph.

Jeffries was not interviewed until January 14, 2013, nearly a month after the other applicants were interviewed. According to Trautman, the second interviews were conducted in February 2013. Ex. 48 at p. 70. However, according to Randolph, his second interview was conducted on an unspecified date in January 2013. Ex. 49 at p. 91. If Randolph is correct, it would mean that he had a second interview before Jeffries even had a first interview.

In addition, Randolph acknowledged that Faley had suggested that he apply for the position even though he did not qualify for a GS-14 position, which undoubtedly is why the position was changed and announced as a GS-13/14 position. Ex. 49 at p. 92.

He also said that he believed his race played a factor in his selection because of the [need to correct] the bad historical climate at BJA, noting that there had been only one African-American division chief in the history of BJA, and that Trautman, the Deputy Director, had a picture of Confederate troops carrying the Confederate flag in her office. Id. Trautman and Faley also engaged in email correspondence joking about selecting Jeffries for this position to get a reaction from other BJA managers. Ex. 19.

Randolph also said that he was congratulated for his selection before he was told that he was selected, id., which led to a supplemental investigation where the employee who got advance notice of the selection, Anthony Burley, said "Tim [Jeffries] does not meet the definition of a safe 'Negro' by OJP's standards. Tim seems to be extremely knowledgeable within the Criminal Justice domain and that makes him dangerous to several non-progressive/racist OJP Managers who tend to prefer the 'Negro' men of OJP are humble, quiet, and docile." Ex. 44.

Based upon these irregularities, the panelists, as well as Cory Randolph, Anthony Burley, Tracey Trautman, and Denise O'Donnell need to be deposed.

**Senior Policy Advisor for Byrne Criminal Justice Innovation/Building Neighborhood Capacity Programs (BCJI/BNCP) (Announcement No. JP-13-9-008)**

Again, there are irregularities in the selection process that need to be explored in discovery. There were two separate panels used to do the initial round of interviews of the 13 qualified applicants such that neither panel interviewed all of them. There was also a second round of interviews in February 2013 for the six highest-rated candidates from the first round, which included both Jeffries and the selectee. The panel that interviewed

Jeffries and the selectee, Alissa Huntoon, consisted of Rebecca Rose, Ed Banks, and David Adams.  The second round of interviews was conducted by Elizabeth Griffith, Kristen Mahoney, and Denise O'Donnell.  At the time, Jeffries had two pending EEO cases naming Griffith as a responsible management official (regarding JP-11-077 and JP-13-009) and two naming O'Donnell as a responsible management official (regarding (JP-113-15 and JP-13-110).  Griffith had also been deposed twice in Jeffries' prior cases.  Ex. 1.

      According to HR's Vacancy Status Log, it appears that Griffith made substantial changes to the KSA's for the position before the position was advertised, Ex. 51, raising questions about possible discriminatory/retaliatory pre-selection. The vacancy announcement itself is missing.  One of the panelists, Shanetta Cutler, complained to one of the interviewees that the panelists received no scoring guidance and did not know how they were supposed to score the applicants.  Ex. 52 at p. 72.  In fact, although total scores were indicated for the applicants, Ex. 53, it is unclear exactly how those scores were determined and how separate scores were assigned to applicants' resumes and to work histories, which also factored into the overall scores.  In addition, Jeffries says that O'Donnell arrived 15 minutes late for his interview and rushed through it, cutting off his answers Ex. 54 at pp. 36-37, as if she had already determined who she was going to select, or did not want to select him.  Once again, O'Donnell's affidavit is missing from the ROI provided to Jeffries.

    In addition, an FOIA request by Jeffries produced evidence (a) that the selectee was invited to attend meetings about the anticipated work of the position in advance of her

and Jeffries' interviews, even though as a GS-13 she should not have attended such meetings, which are normally attended only by persons at the GS-14 level or higher, and (b) that persons outside of BJA with whom the selectee for the position would interact may have participated in Huntoon's interview. They did not participate in Jeffries' interview. Exs. 1; 55.

Based upon the foregoing, depositions need to be taken of the panelists, as well as Griffith and O'Donnell. A deposition of Huntoon may also be necessary to determine why she was invited to attend the high-level meetings involving the work of the position in advance of her interview and who was at her interview besides the panelists.

**Senior Policy Advisor for Health and Criminal Justice**
**(Announcement No. JP-14-067)**

There has been no discovery at all regarding this selection because it arose after the limited paper discovery was conducted in the first case. The selectee for this position was Danica Binkley, a Caucasian female with no prior EEO activity. The initial selection panel, which consisted of Cornelia Sorenson Sigworth, Anna Johnson, and Michael Dever, interviewed eight applicants. Neither the selectee nor Jeffries was the highest rated candidate by the panel. The five highest rated candidates, which included the selectee and Jeffries, were then interviewed by Denise O'Donnell, Kristen Mahoney, and Ruby Qazilbash, Ex. 56 at p. 181, all Caucasian females, with O'Donnell and Qazilbash each named as responsible management officials in several of Jeffries' pending EEO complaints.

The ROI provided to Jeffries is missing critical information, including the

vacancy announcement (recently produced with the Defendant's Motion), the position description, information indicating how the selection arose and was processed, and information on how scores were separately determined for applicants' resumes and work histories for purposes of rating the applicants. This is significant since the position was the long vacant GS-14 Senior Policy Advisor (Substance Abuse and Mental Health) position in Jeffries' Division, which was renamed as Senior Policy Advisor (Health and Criminal Justice) with some additional duties, although the Drug Court Program, which has been administered by Jeffries with high praise for some 14 years, still receives the bulk of the funding. Ex. 1.

In her affidavit attempting to justify the selection of Binkley, O'Donnell claimed that the major difference between Jeffries and Binkley "is that while the complainant demonstrated good qualifications for his current position as a policy advisor for the criminal justice and health portfolio with responsibility for drug and problem solving courts, he did not demonstrate the more advanced qualifications needed for a GS-14 Senior Policy Advisor." Ex. 57 at p. 92. However, Jeffries had served successfully as Acting Senior Policy Advisor, demonstrating that he could perform in the position, while Binkley had not. Ex. 1.

O'Donnell claims that she relied upon the recommendation of Qazilbash during the interviews for the selection of Binkley. Id. at 91. Qazilbash in fact wrote the justification for the selection stating that Binkley "has performed to a very high level in her work as a policy advisor within the Substance Abuse and Mental Health portfolio." Ex. 56 at p. 182. To the contrary, (a) Qazilbash had admitted to Jeffries that she had to

spend significant time in meetings with Binkley because of Binkley's inexperience with the subject matter, (b) Qazilbash had to remove the Prescription Drug Monitoring Program from Binkley's portfolio and reassign it to someone else because Binkley had caused strained relations with the private partners in the Program, (c) Binkley repeatedly cried at work and said that her job was too demanding and the subject matter was outside of her prior Adjudication Division experience, and (d) in a high-level grant review it was discovered that Binkley had allowed jurisdictions to receive repetitive grant funding for multiple years contrary to a major BJA audit recommendation. Exs. 1; 58 at pp. 264-65.

Binkley also told Jeffries that Qazilbash had secretly reassigned her from the Adjudication Division to the Substance Abuse and Mental Health Division after the vacancy in the latter Division had been announced and other candidates had already been interviewed, which is contrary to normal policy and procedures. Binkley was given the impression that this was done because of the anticipated promotion potential. Ex. 58 at p. 264.

Based upon the foregoing, there is a need to obtain the missing documentation about the selection and to depose the panelists to explain their notes and scoring and exactly what occurred during the interview process.  There is also a need to depose Qazilbash about how and why the position was changed, her role in the selection process, and the discrepancy about what she told Jeffries about the selectee versus what she wrote to justify the selection. Finally, there is a need to depose O'Donnell about her role in the selection and the position change.

## **DISCOVERY NEEDED FOR AWARDS**

There is a need to depose Qazilbash and O'Donnell about Jeffries' lack of a time-off special act award for FY 2011, Jeffries' performance award for FY 2011, and Jeffries' failure to receive the same time-off awards for FY 2012 as his coworkers.

**RULE 30(b)(6) DEPOSITION**

There is also a need to take a Rule 30(b)(6) deposition regarding the long-term lack of African-American males in management/supervisory positions in BJA, the changes in duties and grade for several of the positions and the HR records regarding those changes, the destruction of some of the records, BJA selection policies and procedures, and the awards in issue and the policies and procedures for awards at BJA.

**CONCLUSION**

It is anticipated that the facts developed through the depositions and other discovery sought as discussed above will demonstrate that the Defendant's rationales for not selecting Jeffries for any of the positions in issue and for its actions with regard to the awards in issue are pretext and that the true reasons are discrimination and/or retaliation.

Respectfully submitted,

/s / **JERRY R. GOLDSTEIN**
Jerry R. Goldstein (Bar No. 173690)
Jerry R. Goldstein, P.C.
4610 Elm St.
Bethesda, MD 20815
(301) 656-1177
(301) 986-9719 Fax
jrg4law@aol.com
Attorney for Plaintiff