UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

TIMOTHY JEFFRIES,                        )
                                         )
              Plaintiff,                 )
                                         )         Civ. Action No. 15-1007 (BAH)
       v.                                )
                                         )
LORETTA LYNCH,                           )
ATTORNEY GENERAL,                        )
U.S. DEPARTMENT OF JUSTICE,              )
                                         )
              Defendant.                 )
_____)


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

**Table of Contents**

Page

ARGUMENT ............................................................................................................... 1

I.     This Court Should Grant Defendant's Motion for Judgment on the Pleadings ................. 1

II.    This Court Should Grant Defendant's Motion for Summary Judgment ........................... 4

     A.     Supervisory Grants Program Manager JP-11-036-MP (Compl. ¶¶ 14-25) ............ 5

          1.     "Priority Consideration" ................................................................................ 5

          2.     Plaintiff's Non-Selection ............................................................................... 8

     B.     Special Assistant JP-11-077 (Compl. ¶¶ 26-27) ................................................. 10

     C.     Senior Policy Advisor for Evidence Integration JP-13-009 (Compl. ¶¶ 28-30)... 11

     D.     Administrative Services and Logistics Director JP-13-15 (Compl. ¶¶ 31-32) ..... 13

     E.     Supervisory Grants Management Specialist JP-13-110 (Compl. ¶¶ 33-35) ......... 14

     F.     Senior Policy Advisor for Byrne Criminal Justice Innovation/Building
            Neighborhood Capacity Programs JP-13-008 (Compl. ¶¶ 36-38) ....................... 15

     G.     Senior Policy Advisor for Health and Criminal Justice JP-14-067 (Compl. ¶¶
            39-41) ................................................................................................................ 16

     H.     Alleged Denial of Time-Off and Cash Awards Claims (Compl. ¶ 42) ................. 17

          1.     Time-off Award in 2011 ............................................................................... 17

          2.     Time-off Award in 2012 ............................................................................... 17

          3.     Performance Cash Award for FY 2011 ........................................................ 17

CONCLUSION ........................................................................................................... 18

Plaintiff is a prolific complainer who has initiated numerous Equal Employment Opportunity ("EEO") complaints since 2005. Plaintiff's claims in this action reflect his mistaken belief that membership in one or more protected classes transforms any employer decision with which he disagreed into "discrimination" and/or "retaliation." Before imposing the burdens of discovery, Plaintiff must show that his claims are plausible. The Complaint fails to make this necessary showing. Thus, Defendant is entitled to judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP").

In addition, Plaintiff fails to provide admissible evidence to support his factual assertions and the materials he cited in his opposition papers fail to establish the presence of a genuine dispute. Plaintiff's "beliefs," including his subjective beliefs about his "superior" qualifications, are insufficient to forestall summary judgment on his claims. It is the perception of the decision-maker, not the employee, that matters. Even assuming *arguendo* that Plaintiff presents sufficient evidence to support a *prima facie* case of discrimination, Plaintiff has not come forward with evidence to show that Defendant's proffered non-discriminatory reasons for its employment decisions were false and that discrimination or retaliation was the real reason for any such decision. Thus, this Court should, in the alternative, grant Defendant's motion for judgment as a matter of law under FRCP 56.

## ARGUMENT

### I.  THIS COURT SHOULD GRANT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff's opposition brief barely addresses Defendant's argument that the Complaint fails to allege sufficient facts to state plausible claims for relief. *See* Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings or, Alternatively, for Summ. J. ("Opp'n") at 13. Among other things, the Complaint asserts that Plaintiff "had superior qualifications" to the selectee(s) but fails to allege

any facts to support that conclusory assertion, *see* Compl. ¶¶ 25, 27, 29, 32, 35, 38, 41, and thus apparently relies on Plaintiff's subjective belief about his qualifications for his non-selection claims.

In his opposition brief, Plaintiff asserts that he "set forth factual allegations about irregularities in normal selection procedures, missing documents involving the selections, the long-standing lack of African-American males in management positions in BJA, and his protected EEO activities, among other things, to support his claims." Opp'n at 13. That is inaccurate with respect to the Complaint.

The Complaint does not allege (i) that there were irregularities in "normal selection procedures," with the arguable exception of the procedure used to provide Plaintiff "priority consideration" for one application, or (ii) that relevant documents are "missing." *See id.* Plaintiff cannot amend the Complaint through his opposition papers. *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002) ("[I]t is generally understood that the complaint may not be amended by legal memoranda that are submitted as oppositions to motions for dismissal or summary judgment[.]").

The Complaint's vague allegations about the alleged number of African-American male supervisors in the Department of Justice's Bureau of Justice Assistance ("BJA"), possibly as of 2005, are irrelevant as to whether any of Plaintiff's non-selections in 2011-2014 was because of his race, sex, or protected activities. *See* Compl. ¶ 10. Notably, one selectee is an African American male (Clarence Banks), *id.* ¶ 28, and another selectee is a biracial (African American and White) male (Cory Randolph), *id.* ¶ 33; Pl. Ex. 49 at 1. The selection of applicants who are members of Plaintiff's claimed protected classes undercuts Plaintiff's contention that he was not selected for those specific positions because of his race or sex.

As for Plaintiff's retaliation claims, the Complaint's only reference to Plaintiff's protected activities is activity that occurred during or prior to 2008, *i.e.*, approximately three years prior to the employment decisions challenged in this action.  *See* Compl. ¶ 7; *see also* Pl. Ex. 10 (settlement agreement executed on March 25, 2008).  A three-year gap is too long to establish the requisite causation for a retaliation claim.  *See Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (mere temporal proximity must be "very close," generally less than three months, to establish causality).

Plaintiff's opposition brief attempts to fix the Complaint's deficient retaliation claims by (i) adding that "[his] current claims have been ongoing since he initiated the EEO process on September 14, 2011," Opp'n at 12, and (ii) arguing, with respect to the Supervisory Grants Program Manager position, that his non-selection for that position was Edison Aponte's and Jonathan Faley's "first opportunity to retaliate toward [Plaintiff] due to the hiring freeze," *id.* at 29.  First, these allegations are not in the Complaint and Plaintiff cannot use his opposition papers to amend the Complaint.  *See Shekoyan*, 217 F. Supp. 2d at 73 ("[C]omplaint may not be amended by legal memoranda that are submitted as oppositions to motions for dismissal or summary judgment[.]").  Second, to the extent that Plaintiff is arguing that his EEO activities, no matter how remote in time, create an inference of retaliation *per se*, he is wrong:  "Title VII does not permit past protected activity to be used as a permanent shield against any and all unpleasant employment outcomes."  *Rochon v. Lynch*, No. 13-CV-131 (KBJ), 2015 U.S. Dist. LEXIS 137871, at *19-*20 (D.D.C. Oct. 9, 2015) (granting summary judgment on retaliation claims where plaintiff made a series of discrimination and retaliation claims over 30-plus years).  Third, as a factual matter, it is not clear from the Complaint why Faley and/or Aponte could not have

taken or participated in some other employment action, aside from non-selection, during the hiring freeze.

The Complaint is deficient because it fails to allege sufficient facts to state plausible claims for relief.  Accordingly, this Court should grant Defendant's motion for judgment on the pleadings.

## II.    THIS COURT SHOULD GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's opposition brief introduces new allegations, particularly with respect to "irregularities in normal selection procedures," and points out, *inter alia*, (i) alleged factual disputes that are not in dispute for the purposes of summary judgment where Plaintiff has not cited admissible evidence, and (ii) alleged "discrepancies" that are immaterial.  First, Plaintiff cannot use his opposition papers to amend his claims.  Second, Plaintiff's opposition brief does not show that Plaintiff "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated against the employee on [a prohibited basis]." *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 71 (D.D.C. 2015).  Like the plaintiff in *Mokhtar*, Plaintiff "almost exclusively relies on self-serving and conclusory testimony and [his] own opinions about what [his] employer should have done, none of which is sufficient to withstand the [employer's] evidence at summary judgment." *Id.* at 72-73.  The Court cannot credit a plaintiff's subjective assessment of his or her own qualifications because "[i]t is the perception of the decision-maker that is relevant to determining pretext, not a plaintiff's perception of [himself or herself]." *Id.* (internal quotation marks omitted).  Accordingly, this Court should grant Defendant's motion for summary judgment on these claims.

4

A.    **Supervisory Grants Program Manager JP-11-036-MP (Compl. ¶¶ 14-25)**

1.    "Priority Consideration"

Plaintiff asserts, incorrectly, that Defendant failed to provide Plaintiff with "priority consideration" for his Supervisory Grants Program Manager application.  By its terms, the priority consideration letter provides that Defendant would notify Plaintiff of "the next open position similar and in the same geographic area to the one [for] which proper consideration was missed," *i.e.*, Program Analyst (Substance Abuse and Mental Health), prior to issuing public notice of the vacancy.  Pl. Ex. 9.  Defendant did not notify Plaintiff of the Supervisory Grants Program Manager opening prior to announcing its vacancy because this position was not similar to the Program Analyst (Substance Abuse and Mental Health) position.  Plaintiff in essence concedes that these positions were not similar by stating that he decided to ask for priority consideration for this position, "the next available BJA GS-14 position to open," because there was no mention of posting the Policy Advisor position.  Pl. Ex. 61 at 208-09.

Under these circumstances, *i.e.*, where the vacancy had already been announced when Plaintiff asked for priority consideration, all that priority consideration could entail was giving Plaintiff the first interview for this position and a decision on his application before other applicants were interviewed.  The evidence, including the interview panel members' affidavits, shows that the panel interviewed Plaintiff and made a decision on his application for this position before it interviewed the other applicants.  *E.g.*, Pl. Ex. 21 (Reid Aff.) at 318 ("Tim was interviewed first.  Subsequently, there were 11 other candidates interviewed for this position."); Pl. Ex. 22 (Aponte Aff.) at 301 ("Priority consideration was employed by interviewing and considering Mr. Jeffries first for the position before all candidates."); Pl. Ex. 23 (Faley Aff.) at 311 ("After the decision not to hire Mr. Jeffries was officially completed, the interview panel then received in September 2011 applications for and interviewed 12 additional candidates[.]").

5

Plaintiff impermissibly relies on hearsay for his assertion that there is a factual issue as to whether Naydine Fulton-Jones was interviewed before him. *See* Opp'n at 20 (citing Pl. Ex. 1; Pl. Ex. 24). In any event, documents show that Plaintiff was interviewed first, including an email, dated August 16, 2011 (*i.e.*, after Plaintiff was notified of his non-selection for this position), from Tracey Trautman, then-Acting Deputy Director of BJA, to Michelle Sicat, the Human Resources Department staff member assisting BJA with the hiring process, where Trautman asks, "can I now start at least setting up interviews?," which indicates that the other applicants had not been interviewed yet. Def. Ex. 63; *see also* Def. Br. at 15 (citing and/or quoting involved staff who stated that Plaintiff was given priority consideration).

Plaintiff's subjective belief, the basis of which is not specified in his self-serving declaration, is that priority consideration meant that he would be interviewed by the selecting official. *See* Pl. Ex. 1 ¶ 13 ("I <u>believed</u> that my resume and KSA's would be submitted directly to the selecting official who would interview me and make a decision prior to seeing the best qualified certificate with the names of the other applicants, as indicated in the letter.") (emphasis added); *see also* Opp'n at 22 ("[I]t is undisputed that [Plaintiff] was <u>never</u> given an interview by the selecting official[.]") (emphasis in original).

Despite Plaintiff's "beliefs," the priority consideration letter does not state that Plaintiff would be interviewed by the selecting official. *See* Pl. Ex. 9; *see also* Opp'n at 17. And the quotations from the cases cited in Plaintiff's opposition brief do not state that priority consideration means being interviewed by the selecting official. *See* Opp'n at 21-22. Furthermore, Office of Justice Programs' Merit Promotion policy provides, "Priority consideration does not place conditions on the selecting official's right to select or not to select from <u>any</u> appropriate source <u>at any point</u> in the recruitment and staffing process." Def. Ex. 11 at

6

5 (emphasis added).  Nonetheless, Plaintiff suggests that the panelists improperly compared him to other candidates, "a clear violation of the priority consideration."  Opp'n at 20.  Apart from his self-serving declaration, Pl. Ex. 1 ¶ 15, the evidence Plaintiff cited does not support his assertion. *See* Opp'n at 19-20 (citing Pl. Ex. 22 (Aponte Aff.) at 298; Pl. Ex. 21 (Reid Aff.) at 318).  In those affidavits, Aponte and Reid each state that Plaintiff was interviewed, considered, and rejected for this position *before* the other candidates were interviewed.  *See* Pl. Ex. 22 (Aponte Aff.) at 301; Pl. Ex. 21 (Reid Aff.) at 321.  Faley's affidavit is consistent on this point and further specifies that the panel received the applications of the other applicants in September 2011.  Pl. Ex. 23 (Faley Aff.) at 308, 311.

Plaintiff's additional assertions are irrelevant.  For example, Plaintiff asserts that the panel used one rating sheet for his interview and a different one for the September interviews, Opp'n at 19, but this is irrelevant because Plaintiff was given a decision on his application before the other interviews occurred or were rated.  *See* Def. Br. at 19-20.  Although Plaintiff argues or appears to argue that the panel's evaluation of his application was "entirely subjective," Opp'n at 19, the panel used structured questions at his interview that were tailored to the position and that "would be used for any additional interviews."  Def. Ex. 64 at 12682 ("The panel asked 15 questions that were tailored to the technical qualifications and knowledge, skills, and abilities needed for the position, and would be used for any additional interviews."); Def. Ex. 63 at 12691 (stating interview questions were "mapped to the KSAs for the position").  In any event, it is unclear why Plaintiff focuses on the materials associated with the interviews of the other applicants, and how they are dissimilar or allegedly dissimilar to those for his interview, when the panel made its decision on his application before it interviewed the other applicants.

Ultimately, even assuming *arguendo* that priority consideration means what Plaintiff believes it means (*i.e.*, an interview with the selecting official and a decision on his application by the selecting official while s/he lacks any knowledge of the identity or credentials of other applicants), Plaintiff cannot show that the consideration he was given or not given was because of his race, sex or protected activities.

Assuming *arguendo* that failure to provide "priority consideration" is an adverse employment action, Plaintiff has not set forth sufficient evidence for a reasonable jury to find that Defendant's non-discriminatory and non-retaliatory reasons for providing the consideration that it provided were not the actual reasons and that Defendant intentionally discriminated or retaliated against Plaintiff. Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

        2. <u>Plaintiff's Non-Selection</u>

Plaintiff cannot show that Defendant's reason for not selecting him for this position – that the panel unanimously judged that he was insufficiently qualified for this position – is pretextual, and that the real reason for this non-selection was his race, sex or protected activities.

Plaintiff's opposition brief describes how certain resume entries and some panel notes indicate that Plaintiff had some of the qualifications for the position, *see* Opp'n at 23-25, but those points are irrelevant. Defendant's reasons for not selecting Plaintiff for this position were that his qualifications and interview performance did not convince the panel to recommend him – not that Plaintiff was utterly unqualified. *See* Pl. Ex. 26; Def. Ex. 64. "[A] Court will 'not second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Wright v. Waste Mgmt. of Maryland, Inc.*, 77 F. Supp. 3d 218, 224 (D.D.C. 2015). The panel unanimously did not recommend Plaintiff, and Plaintiff fails to provide admissible evidence

sufficient for a reasonable jury to find that he was not selected due to his race, sex, or protected activities.

For his retaliation claim, Plaintiff's opposition brief focuses on Faley and Aponte as subjects of his pre-2008 EEO complaints. Opp'n at 18, 29. As discussed *supra* on page 3, the three year gap means that Plaintiff's retaliation claim for this non-selection fails to meet the causation requirement absent evidence of a retaliatory motive. In addition, Tracey Trautman, the selecting official at the time Plaintiff was being considered for this position, Pl. Ex. 17 at 276, was not aware of any recent protected activity at the time of this non-selection, Def. Ex. 4 at 266. Although Plaintiff argues that an e-mail thread between Trautman and Faley reflects animus towards Plaintiff, Opp'n at 18-19, those emails are dated March 1, 2013 – nearly two years *after* this non-selection – and thus are irrelevant for this non-selection. Pl. Ex. 19. In any event, those emails do not refer to race, sex or any protected activities. *See id.*

Plaintiff alleges that Kim Ball-Norris, a BJA employee who is not in his supervisory chain and who was not involved in this non-selection, wanted to see him fired. Opp'n at 27. Putting aside for now that this allegation is impermissibly supported by hearsay provided by Maureen Dimino, a former BJA employee who was not involved in the selection process, Plaintiff puts forth no evidence to show that Ball-Norris influenced the panel's decision or to connect her alleged involvement in a BJA "mommies group" to this non-selection. *See* Opp'n at 27.

Plaintiff's additional points are irrelevant. For example, he asserts that Aponte criticized Plaintiff's abilities in his affidavit, yet praised Plaintiff on another project that was handled years earlier, Opp'n at 25, and that a selectee, Esmeralda Womack, was a GS-9 when Plaintiff's original EEO claims arose (in 2005), *id*. His allegation of a "regular practice" of detailing

Caucasian females to higher positions and then selecting them, Opp'n at 26, is supported only by his self-serving declaration, and is irrelevant for *this* non-selection where Plaintiff has not alleged that selectees Womack or Naydine Fulton-Jones were detailed to that position before they were selected.

Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

### B.    Special Assistant JP-11-077 (Compl. ¶¶ 26-27)

Plaintiff cannot provide admissible evidence sufficient for a reasonable jury to find that Defendant's reasons for not selecting him for the Special Assistant position – that the interview panel deemed selectee Cornelia Sorenson-Sigworth as more qualified and as performing better in the interview process – are pretextual, and that the real reason was Plaintiff's race, sex or protected activities.

The Complaint alleges that selectee Sorenson-Sigworth "had been given a special assignment immediately prior to her selection to enhance her qualifications for the position, but [Plaintiff] still had superior qualifications to her." Compl. ¶ 27. Significantly, despite alleging in the Complaint that his qualifications were superior to the selectee's qualifications, Plaintiff now declines to provide any evidence to support that allegation. *See* Opp'n at 30-32.

Instead, Plaintiff argues that he does not need to show that his qualifications for this position were superior to prove discrimination, and that he can use other evidence to show pretext, such as the possibility that Defendant's real reason for not selecting him was because it had preselected Sorenson-Sigworth. Opp'n at 31-32. Putting aside for now that there is no allegation of preselection in the Complaint, preselecting a candidate – that is, "soliciting a particular candidate to apply for a job vacancy" – based solely upon his or her qualifications does not violate federal discrimination law. *Kilby-Robb v. Duncan*, 77 F. Supp. 3d 164, 170 (D.D.C.

2015).  "For preselection to raise an inference of discrimination, evidence must demonstrate that the employer preselected a candidate out of a discriminatory motive or that the employer broadly uses preselection as a method of disguising discrimination and did so in a particular case."  *Id.* The interview panel gave selectee Sorenson-Sigworth the highest rating, Def. Ex. 17 at 145, and Plaintiff provides no evidence that her alleged preselection was based on anything other than her qualifications.

Plaintiff's opposition brief appears to speculate that a BJA "mommies group" conspired to have one of their members, Sorenson-Sigworth, selected for this position.  Opp'n at 30-31. Even if it were true that a "mommies group" exists and that the selectee was favored over Plaintiff because of her relationships with others in the "mommies group," such allegations do not show that Plaintiff was not selected because of his race, sex, or protected activities. Plaintiff's self-serving declaration is the only evidence Plaintiff offers as to the existence of a "mommies group" and its alleged members.  Pl. Ex. 1 ¶ 9.  As for the existence of a conspiracy, his opposition brief merely provides speculation and inadmissible hearsay, including that BJA employee, Kim Ball-Norris, who is not in his supervisory chain and was not involved in this selection, was in the "mommies group" and allegedly "wanted to get Plaintiff fired due to his EEO activity."  *See* Opp'n at 30-31.

Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

### C.    Senior Policy Advisor for Evidence Integration JP-13-009 (Compl. ¶¶ 28-30)

Plaintiff cannot provide admissible evidence sufficient for a reasonable jury to find that Defendant's reason for not selecting him for this position – that selectee Clarence Banks was more qualified and performed better in the interview process – is pretextual, and that the real reason was Plaintiff's race, sex or protected activities.  Notably, selectee Banks is an African-

American male.  The fact that Banks is of the same race and sex as the Plaintiff "cuts strongly against any inference of discrimination."  *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005).

As for Plaintiff's retaliation claims, his assertion that Aponte and Griffith were named and involved in his prior, pre-2008 EEO complaints at some point is insufficient to show the requisite causation.  In addition, all members of the interview panel rated Plaintiff poorly and the panel included Kristina Rose, who was Director of the National Institute of Justice (*i.e.*, not a BJA employee) and was unaware of Plaintiff's protected activities, *see* Def. Ex. 12 at 74.  Rose's low rating for Plaintiff (a weighted score 2.45 out of 5, versus 5 out of 5 for both Banks and Kracke), on its own would have prevented Plaintiff from becoming a top candidate even if Aponte and Griffith had each given Plaintiff the highest score of 5 out of 5.  *See* Def. Ex. 65 at 2839.  As Rose noted, Plaintiff's "interview was weak.  He scored the lowest of all the candidates."  Def. Ex. 12 at 75.

Contrary to Plaintiff's assertion that Banks' application was never produced, Opp'n at 32, Defendant provided Plaintiff with Bank's resume and application during administrative discovery, at Bates 12791-12832.  Def. Ex. 66.  Plaintiff did not interview with Denise O'Donnell for this position so it is not clear how her affidavit, if any, is relevant.  See Opp'n at 32.

Plaintiff's remaining assertions with respect to this position consist of (i) his opinion on an aspect of his experience that the panel should have viewed more favorably and (ii) allegations that contribute nothing to his burden of supplying sufficient evidence to show that he has been discriminated or retaliated against.  *See* Opp'n at 33.

Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

**D.      Administrative Services and Logistics Director JP-13-15 (Compl. ¶¶ 31-32)**

Plaintiff cannot provide admissible evidence sufficient for a reasonable jury to find that Defendant's reason for not selecting him for this position – that selectee Michelle Martin made a better impression on the interview panel – is pretextual, and that the real reason was discrimination or retaliation.  Significantly, although the Complaint alleges that Plaintiff's qualifications were superior to the selectee's qualifications, Compl. ¶ 32, Plaintiff declines to provide any evidence to support that allegation.

Instead, Plaintiff merely points to alleged "irregularities" in the selection.  *See* Opp'n at 34.  Even if true, such alleged "irregularities" are irrelevant.  For example, he alleges that BJA modified the Knowledge, Skills, and Abilities (KSAs) before announcing the position, Opp'n at 34, but does not state why this would have been improper.  He also speculates that the KSAs were tailored for Martin, *id.*, but does not elucidate how such tailoring, if true, shows that his non-selection was due to his race, sex or protected activities.

His allegations about "missing" documents do not show "irregularities" in the selection. In any event, his burden is to show how the evidence he has would advance his claims, not speculate about the existence of evidence that he does not have and what such evidence could show.

Finally, even assuming *arguendo* that Plaintiff could show preselection, such evidence does not suffice to show discrimination or retaliation.

As for Plaintiff's retaliation claims, Plaintiff does not allege that any member of this interview panel had knowledge, let alone recently acquired knowledge, of his protected

activities.  Opp'n at 34-35.  Plaintiff appears to concede that any retaliation claim for this non-selection is meritless.

Plaintiff's remaining assertions with respect to this position appear to be irrelevant and the portion of his opposition brief that addresses this position cites little evidence.  *See id.*

Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

### E.    Supervisory Grants Management Specialist JP-13-110 (Compl. ¶¶ 33-35)

Plaintiff cannot provide admissible evidence sufficient for a reasonable jury to find that Defendant's reasons for not selecting him for this position – that selectees Brenda Worthington and Cory Randolph were more qualified – are pretextual, and that the real reasons were Plaintiff's race, sex or protected activities.  Notably, selectee Randolph is an African-American and White male.  The fact that Randolph is or partially is of the same race and sex as the Plaintiff "cuts strongly against any inference of discrimination."  *Murray*, 406 F.3d at 715.

For his retaliation claim, Plaintiff does not assert that panel member Kellie Dressler had any knowledge of his protected activities.  *See* Opp'n at 36.  Dressler rated him 32, as compared to 56 for Randolph and 52 for Worthington, and her scores are similar to the other panel members' scores.  Def. Ex. 31 at 228.  Plaintiff fails to provide evidence of temporal proximity with respect to Faley's or Aponte's knowledge of Plaintiff's protected activities.  Instead, he appears to take the position that any adverse action they take or participate in will be retaliatory *per se* while any of his EEO complaints are pending, Opp'n at 37-38.  Title VII, however, "does not permit past protected activity to be used as a permanent shield against any and all unpleasant employment outcomes." *Rochon*, 2015 U.S. Dist. LEXIS 137871, at *19-*20.

Plaintiff's allegation that Randolph was pre-selected, without more, does not show any violation of federal discrimination law.  *See supra* at 10-11.

Plaintiff's remaining assertions with respect to this position, including the timing of

Plaintiff's interview, appear to be irrelevant and/or speculative. *See* Opp'n at 36-38. The email

chain does not include any reference to race, sex or protected activities. *See* Pl. Ex. 19.

Accordingly, this Court should grant Defendant's motion for summary judgment on this

claim.

**F.    Senior Policy Advisor for Byrne Criminal Justice Innovation/Building
Neighborhood Capacity Programs JP-13-008 (Compl. ¶¶ 36-38)**

Plaintiff cannot provide admissible evidence sufficient for a reasonable jury to find that

Defendant's reason for not selecting him for this position – that the selectee Alissa Huntoon was

more qualified – is pretextual, and that the real reason was Plaintiff's race, sex or protected

activities. Significantly, although the Complaint alleges that Plaintiff's qualifications were

superior to the selectee's qualifications, Compl. ¶ 38, Plaintiff declines to provide any evidence

to support that allegation, *see* Opp'n at 38-40.

Plaintiff's allegations of anomalies in the selection process are supported primarily by his

own self-serving declaration. Even assuming *arguendo* that such allegations are true, they do not

show discrimination or retaliation. For example, he points to Shanetta Cutlar's complaint about

the scoring process, but Cutlar's panel did not interview Plaintiff or the selectee. Opp'n at 38-

39. Plaintiff alleges that O'Donnell rushed through his second interview, Opp'n at 39, but only

cites only his own self-serving affidavit in support of this allegation, and does not show how that

was discriminatory or retaliatory.

Plaintiff asserts that Huntoon was invited to attend meetings that he believes she "should

not have attended." Opp'n at 39. His opinion is irrelevant and his assertion of impropriety is

unsupported by the evidence that he cites (*see* Pl. Ex. 55, which indicates that Huntoon was

invited to a meeting to speak about projects that she had been involved in). Plaintiff's assertion

that people from outside BJA may have participated in Huntoon's interview, even though they did not participate in his interview, is speculative and does not appear to be unsupported by the evidence that he cited. He also asserts that the vacancy announcement is "missing," though he clearly had access to it as he applied for the position, and, in any event, he does not explain how it might advance his claims.

Plaintiff's remaining assertions with respect to this position appear to be irrelevant and/or speculative. *See* Opp'n at 39-40.

Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

## G.    Senior Policy Advisor for Health and Criminal Justice JP-14-067 (Compl. ¶¶ 39-41)

Plaintiff cannot establish that Defendant's legitimate, non-discriminatory reason for not selecting him – that Defendant was more impressed by selectee Danica Binkley – is pretextual, and that the real reason was Plaintiff's race, sex or protected activities. Although Plaintiff served as Acting Senior Policy Advisor, he only did so for approximately three months, *see* Ex. 67 at 361. In any event, the panel was impressed that Binkley is an attorney, while Plaintiff is not, and that she "practiced law as a criminal prosecutor and directly handled cases in mental health courts," "experience [that] is directly relevant to this portfolio" Def. Ex. 42 at 4. Plaintiff attempts to distract from the clear disparity in his experience versus Binkley's experience by quibbling over gaps in the ROI and providing his own self-serving statements about Binkley's post-selection performance, which are irrelevant.

Accordingly, this Court should grant Defendant's motion for summary judgment on this claim.

### H.    Alleged Denial of Time-Off and Cash Awards Claims (Compl. ¶ 42)

Plaintiff concedes that the Complaint mistakenly asserted a claim for a "cash . . . award[]

for 2012," and withdrew that claim.  *See* Opp'n at 44.

#### 1.    Time-off Award in 2011

Plaintiff's opposition brief clarifies that "time-off award in 2011" in paragraph 42 of the

Complaint refers to a "special <u>act</u> time-off award for FY 2011, not a performance award."  Opp'n

at 43 (emphasis in original).  Plaintiff's opinion that he should have received a special act award

for the "Exceeds Expectations" rating for the performance period is meritless, as he had already

been given a cash award for his overall FY 2011 performance.  *See* Def. Br. at 44; *see also*

Opp'n at 44 (citing Plaintiff's self-serving, conclusory statements in Plaintiff's Exhibits 1, 58,

and 61).

Special act time-off awards, unlike performance awards, are discretionary, *see* Pl. Ex. 60

at 286, and denial of a "time-off" award does not constitute an adverse action for a

discrimination claim.  *Se*e *Weber v. Hurtgen*, 297 F. Supp. 58, 64 (D.D.C. 2003) (time-off award

does not impact grade or salary and thus its denial is not an adverse action).

#### 2.    Time-off Award in 2012

Plaintiff received not one, but *two*, special act time off awards in FY 2012, one for six

hours and another for ten hours.  Def. Br. at 41.  Defendant not awarding him more time is not an

adverse action for a discrimination claim.  *See supra* Part H.1.  His only evidence for this claim

is his own statements and opinions, and those conclusory statements do not allege facts that

would establish his entitlement to additional hours.  *See* Opp'n at 44.

#### 3.    Performance Cash Award for FY 2011

Plaintiff was awarded and received a cash award of $1,632 for his FY 2011 performance.

Def. Ex. 68; Def. Ex. 70.  This was as much or more than what his coworkers received for their

performance that year.  *See* Def. Ex. 69.  Plaintiff's Exhibit 62 captures cash awards to BJA staff

members for FY 2010 performance, with payment occurring within the dates of Oct. 1, 2010 to

Sept. 30, 2011.  Plaintiff does not appear on that list because he was not eligible for a cash award

in FY 2010.

      To the extent that Plaintiff asserts that he never received payment for his FY 2011

performance award, he has asserted no claim, let alone any evidence, that he was denied *payment*

for discriminatory or retaliatory motives.  In any event, these claims were never administratively

exhausted.

<div align="center"><strong>CONCLUSION</strong></div>

      For the foregoing reasons and those more fully articulated in Defendant's moving brief,

this Court should grant Defendant's motion for judgment on the pleadings or, in the alternative,

summary judgment.

Dated:  February 29, 2016

                          Respectfully submitted,

                          CHANNING D. PHILLIPS, D.C. Bar # 415793
                          United States Attorney
                          for the District of Columbia

                          DANIEL F. VAN HORN, D.C. Bar # 924092
                          Chief, Civil Division

                          By: /s/ Marsha W. Yee
                          MARSHA W. YEE
                          Assistant United States Attorney
                          Civil Division
                          555 4th Street, N.W.
                          Washington, D.C. 20530
                          Telephone:  (202) 252-2539
                          Facsimile:  (202) 252-2599
                          Email:  Marsha.Yee@usdoj.gov

                          *Counsel for Defendant*

Of Counsel:
Rafael A. Madan, General Counsel
Jason P. Cooley, Senior Litigation Counsel
Kristopher Brambila, Assistant General Counsel
Nathanial Kenser, Assistant General Counsel
Office of the General Counsel
Office of Justice Program
810 7th St. NW
Washington, DC 20531

**Exhibit 63**

**McCarthy, Jennifer**

| | |
|---|---|
| **From:** | Trautman, Tracey |
| **Sent:** | Tuesday, August 16, 2011 11:26 AM |
| **To:** | Trautman, Tracey; Sicat, Michelle |
| **Cc:** | McCarthy, Jennifer |
| **Subject:** | RE: Supervisory Grants Program Manager- GS-1109-14  Interviews |
| **Attachments:** | Interview Questions for Chief.doc |

Good morning Michelle:

Since I have provided the interview questions, can I now start at least setting up interviews?   We will have a number of them to set up over the next several weeks, which includes a holiday (Labor Day).

Also, before we actually begin doing the interviews, I'd like to have the panel (and myself) meet with you on the new guidance.   Should I schedule that with you, or someone else?

As you know, we are anxious to move forward.

Thanks-
Tracey

Tracey Trautman
Acting Deputy Director
Bureau of Justice Assistance
U.S. Department of Justice
810 7th St. NW
Washington, DC  20531
(202) 305-1491 (desk)
(202) 353-5333 (cell)
Tracey.Trautman@usdoj.gov

**From:** Trautman, Tracey
**Sent:** Thursday, August 11, 2011 4:12 PM
**To:** Sicat, Michelle
**Cc:** McCarthy, Jennifer
**Subject:** RE: Supervisory Grants Program Manager- GS-1109-14 Interviews

Michelle:

Here are our interview questions, which are mapped to the KSAs for the position.

I'll wait and see what you send out in guidance tomorrow, but I think we would like to meet with you on this checklist before we start conducting our interviews so that we are on the right path.

Thanks-

1

Tracey

Tracey Trautman
Acting Deputy Director
Bureau of Justice Assistance
U.S. Department of Justice
810 7th St. NW
Washington, DC 20531
(202) 305-1491 (desk)
(202) 353-5333 (cell)
Tracey.Trautman@usdoj.gov

**From:** Sicat, Michelle
**Sent:** Thursday, August 11, 2011 3:22 PM
**To:** Trautman, Tracey
**Cc:** McCarthy, Jennifer
**Subject:** RE: Supervisory Grants Program Manager- GS-1109-14 Interviews
**Importance:** High

Hi Tracey,

Effective immediately, please use this Sample interview guide for your upcoming panel interviews.

We will be asking all programs to utilize a methodology rating interview guide when conducting panel interviews.

You may interview from both certs.

Prior to setting up interviews, please send us your Interview questions for HR review.

I will be sending out guidance tomorrow to all AO's and Managers regarding the changes in panel interviewing process.

If you have any questions or concerns, please let me know.

Thanks!
-Michelle

**From:** Trautman, Tracey
**Sent:** Thursday, August 11, 2011 3:18 PM
**To:** Sicat, Michelle
**Cc:** McCarthy, Jennifer
**Subject:** RE: Supervisory Grants Program Manager- GS-1109-14 Interviews

Thank you Michelle – we'll plan to move forward with interviews.

Can I just ask one "technical" question – I have two sets of certs – one is "best qualified" and one is "well qualified". Can I interview from both certs, or am I limited to the "best qualified" cert? They are all OJP employees.

Thanks-
Tracey

Tracey Trautman

2

012692

Acting Deputy Director
Bureau of Justice Assistance
U.S. Department of Justice
810 7th St. NW
Washington, DC 20531
(202) 305-1491 (desk)
(202) 353-5333 (cell)
Tracey.Trautman@usdoj.gov

**From:** Sicat, Michelle
**Sent:** Thursday, August 11, 2011 3:09 PM
**To:** Trautman, Tracey
**Cc:** McCarthy, Jennifer
**Subject:** Supervisory Grants Program Manager- GS-1109-14 Interviews
**Importance:** High

Hi Tracey,

Timothy Jefferies has been informed of his FPC Passover.

You may move forward with your interviews.


Michelle Sicat
Associate Director of Operations
Department of Justice
Office of Justice Programs/OA
810 7th Street NW
Washington DC 20531

Direct: (202) 514-9605
Blackberry: (202) 598-9813
Fax: (202) 514-0036
Email: michelle.sicat@usdoj.gov

3

012693

**Exhibit 64**

MEMORANDUM

TO:        Phil Merkle
           Acting Deputy Assistant Attorney General
           Office of Justice Programs

THRU:      Jennifer McCarthy
           Deputy Director
           Office of Personnel
           Office of Justice Programs

FROM:      Tracey Trautman
           Acting Deputy Director
           Bureau of Justice Assistance

Subject:   Non-selection of Tim Jeffries for the Supervisory Grants Program Manager
Position

On May 11, 2011, an interview was conducted with Tim Jeffries by Bureau of Justice
Assistance (BJA) Programs Office staff for one of the Supervisory Grants Program
Manager vacancies.  The interview panel was comprised of Edison Aponte, Associate
Deputy Director; Jonathan Faley, Associate Deputy Director; and Tammy Reid, Division
Chief.  The panel asked 15 questions that were tailored to the technical qualifications
and knowledge, skills, and abilities needed for the position, and would be used for any
additional interviews.  As a result of the interview and subsequent discussion, the panel
concluded that Tim Jeffries was not suitable for the position.

The panel felt that Mr. Jeffries did not specifically answer some of the questions that
were designed to determine the experience and knowledge of a candidate applying for
a leadership role in BJA. While Mr. Jeffries did mention that he possessed some limited
supervisory experience and limited training, the panel felt that he did not adequately
articulate the qualities, skills, and knowledge that would prepare him for this important
leadership position.   Mr. Jeffries did not explain or demonstrate what experience or set
of skills has prepared him for staff supervision and oversight of a grant management
team. For example, during the interview when asked to describe his experience working
with challenging employees and a diverse workforce, he actually did not address the
first part of the question referring to challenging employees and only mentioned that he
has worked on certain working groups to describe his experience working with a diverse
workforce. This question posed by the interview panel addresses two very important
technical qualifications of the position as listed in the vacancy announcement: ability to

supervise, and ability to develop and promote a diverse workforce. Mr. Jeffries lacked qualifying experience in these areas.

While Mr. Jeffries did provide answers to all fifteen questions, the answers did not demonstrate a strong ability for him to fulfill the requirements or demands of the position. He used the same example to answer many of the questions and did not provide any additional examples to highlight his qualifications. Further, some of his answers to some of the questions were not sufficient. For example, when asked how his current supervisor would describe his ability to supervise, he mentioned that he has had many supervisors and has had to continue to work with each of them to continue to effectively manage his programs, but did not mention what the supervisor would actually say. Finally, Mr. Jeffries voluntarily provided the interview panel with a writing sample that contained grammatical, spelling, and punctuation errors, which demonstrated a lack of good writing skills.

This position requires a strong sense of leadership skills, detailed experience with grants administration, and knowledge and abilities that have successfully prepared an individual for the requirements and demands of the position. Based on the reasons noted above, the panel believes that Mr. Jeffries does not possess the qualifications and is not a viable candidate for the Supervisory Grants Program Manager position.

**Exhibit 65**

Candidate Name: _Jim Jerrica_

Panel Member: _Kris Rose_

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

_Senior policy advisor_

## Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

## Interview summary comments

1

**INTERVIEW QUESTIONS:**

**Ability to communicate in writing**

Question: **Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?**

*Research to practice initiatives. Took what was learned from drug courts — translated for practitioners. Worked w/ Linda Trutt. Tried a provider who could translate. Did a webinar. Considers this a writing example because the webinar was archived and they had to write the slides. He was moderator.* → *survey to the field.*

BENCHMARKS: *Writes solicitation — worked to improve them. Resource guide — he wrote it. 80 pp.*

LEVEL 5 DEFINITION *OUTCOME → better educated. Organized how apps met requirement — spreadsheet.*
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

2

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise?  What was involved?  What did you do and what was the outcome?

*[handwritten annotations:]*

*RSAT*

*- Manage 6 Training and TA providers. Had not had an RSAT conference in 12 + years. Had a focus group to understand the key issues. Evidence integration became key. Put together a 2 day conf by himself. Held focus group himself. Determined a time/task plan. Selected key sessions. Outcome → people loved it. Ben Tucker gave closing remarks. Worked w/ NIJ. 128 people. Had financial challenges — worked back and forth on conf. costs. Challenge w/ response to invites because they couldn't afford it — budget mods. Added a ...*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, *[handwritten: very dynamic picture —]*
locates and allocates resources to fulfill objectives.  Example:  Develops and executes
agency wide standards for report formats.  Defines format and content organization so
that reports can be transmitted by email and consolidated and summarized without
reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal
justice program or policy work.  Example:  Compares and contrasts services to be
contracted and supplied by a vendor or partner.  Makes recommendations based on
analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform
criminal justice program or policy work activities; new insights have a moderate impact
on others.  Example:  Develops a new method for disseminating information to staff in
the field.  Recommends changes to the creation or execution of a product that reduces
costs for an agency/corporation.

*[handwritten: provided for such detail]*

**Ability to lead work as a team member**

3

Question: Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?

*[handwritten annotations]*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

4

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario: You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program. .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners? What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

*Research to practice initiative. What are the key things our partners need to know in the field. Want to connect the dots. Key topics for dissemination — Must look at performance measures, to look at the overall outcome. Provide decided how best to disseminate the information. Envisioned questions from the field, then incorporated them. Added "applicable" to the list.*

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in  developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

5

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice ~~systems~~ program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

*Example → Consultants at CSR Performance measures. PART. Looked at the effectiveness of some performance measures. Tried to look at Drug Court Graduation rates. Fund analysis.*

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

6

*Why does he want the job?*

Question: Do you have any questions or comments?

Connections w/ NIJ - connect the dots.
"So what" message. Incorporate
evidence into funding decision.
Started RZP initiative from
scratch.
Wants to take what he knows and expand?
to all of BJA?

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 3 | .3 |
| **Experience** (Proven competencies and Skills) | .35 | 3 | 1.05 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 2 | .7 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 2 | .4 |
| | 1.00 | | 2.45 |

7

012839

Candidate Name: _Kristin Clarke_    [Formatted: No underline]

Panel Member: _Kris Rose_    [Formatted: No underline]

**Bureau of Justice Assistance**
~~Interview Questions: Program Analyst GS-343-14~~    [Formatted: Centered]
(Evidence Integration Coordinator)
Interview Question Guide

**Interview welcome and introduction of panel members**

- This position is for a Senior Policy Advisor for Evidence Integration in the    [Formatted: Font: Not Bold, No underline]
  Strategic Initiatives Unit in the BJA Policy Office    [Formatted: Bullets and Numbering]
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

**Interview summary comments**

[Formatted: No underline]

Betsi
CL

1

INTERVIEW QUESTIONS:                                          [ Formatted: No underline ]

Ability to communicate in writing

Question: QUESTION:
Describe the types of documents you have written. What types of information did
you present and how did you organize what you wrote? Who was the audience?
How did you adapt the writing to meet the audience's level of knowledge? What
was the outcome?

*[handwritten notes]*

BENCHMARKS: (she provided documents)

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences;
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program
plans; complex or unique legislative proposals; Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio
presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

2

**Ability to plan and execute work on criminal justice programs or strategies.**

Question:

**In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?**

Strategic planning → LEAD.
Staff [illegible]. Reentry program plan.
Developed process and quality framework.
Mid level connections → internal operations.
Captured communications across all
levels of staff.

BENCHMARKS: New [illegible] — 1st RCT [illegible]

Worked with [illegible] + Created a [illegible] [illegible] Retention [illegible]

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

Ability to lead work as a team member

Question: Describe a situation in which you lead a team that was responsible for
coordinating a key criminal justice program involving a team of interdisciplinary
experts and staff. Provide examples of how you led the collaboration and
coordination activities with internal colleagues and external partners. Discuss
challenges and successes in managing this collaborative effort. What was the
outcome and impact of the project you led?

Formatted: Font: Bold

*[handwritten notes, partially legible:]* Experience in leading team of peers than ~~facily~~
working w/ folks from outside. Much more
challenging. Built authority & ? based
on projects she worked with them on. Must
listen, focus on strengths. Recognize challenges and
address them. → forged relationships as much as

*[left margin handwritten:]* OFF
START
(CONTRACT)

*[right column handwritten notes, partially legible:]* common position.
Have conversations
early on about
expectations?
If the Fed agencies –
have received
a lot of support.
Evidence for
[integration] –
Very rewarding.
Pilot groups had
very diverse
interests.

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and
cooperative interpersonal relationships with subject matter experts, executives, or
managers, as well as subordinates, superiors, peers, multiple internal and external
customers and stakeholders across federal, state, local, and tribal government agency
lines, or on a national scale (or limited international scale) to accomplish the
organization's mission. Adapts approach to different people and situations. Example:
Coordinates efforts of the at meetings with national or international professional or
industry groups, non-governmental organizations (NGO's), or other outside groups on
controversial issues; chairs a national committee to accomplish a defined task; leads
internal workgroup of colleagues; represents agency at meetings of professional
organizations; maintains an effective working relationship with legislative committee
leaders.

LEVEL 3 DEFINITION – Tactfully handles unique, difficult, hostile, or uncomfortable
situations involving superiors or subordinates; works well with others from diverse
backgrounds and across levels in the agency or organization to resolve an issue and
accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try
a new strategy or develop new project; networks with others outside of the functional
group or agency; restores a working relationship between competing managers or
supervisors who have opposing views; calms an important customer who is threatening to
file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative
working environment after resolving a grievance.

*[handwritten:]* Nominated for the AAG award.

4

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

**AAbility to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

~~QUESTION:~~
Scenario:
You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program. .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners? What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

*[handwritten notes]*

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment,

012844

development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

Question:
Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

*[handwritten:]* Matrix — E2I. Data profile / Sheets. CEV —
Quantitative data need to set different standards and adjust your "N." Instrument power and retention data, these were not ideal. Qualitative info showed typical promise.

*[handwritten margin note:]* administered and middle of the

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes  in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and  makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert

6

012845

technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

Question: Do you have any questions or comments?

*[handwritten notes:]*

Focus evidence - integration.
Systems - improvement

JJ reinvestment and reform
(~~of~~ OJJ partnership fund)

What more do programs need?

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| Resume (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 5 | .5 |
| Experience (Proven competencies and Skills) | .25 | 5 | 1.25 |
| Interview (Presentation, level of | .25 | 5 | 1.25 |

7

JJ RII

012846

| | | | |
|---|---|---|---|
| preparedness, responsiveness) "from interview guide | | 5 | 4 |
| Work History (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 5 | 1 |
| | 1.00 | 5 | 5 |

Formatted: Font: 12 pt

Formatted: Font: 12 pt

Formatted: Font: Times New Roman, 12 pt

Formatted: Font: Calibri, 11 pt

8

012847

Candidate Name: *Ed Banks*

Panel Member: *Kris Rose*

Bureau of Justice Assistance
Program Analyst GS-343-14
(Evidence Integration Coordinator)
Interview Question Guide

## Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

## Interview summary comments

1

INTERVIEW QUESTIONS:

## Ability to communicate in writing

Question: Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?

*Dissertation*
*State-wide crime analysis report*
*Summaries of research - corrections, courts,*
*Important to translate              (law enforcement*
*Bulleted info -                      (Gun buy-backs)*

BENCHMARKS:
*- Take what researchers have written*
*and translate.*

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials; policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

012849

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?

*Examples: (1) DFEs → HOPE coordinated NIJ, BJA, Pepperdine, RTI conversations re: program and eval.*

*Made all changes in writing — 4 sites, all different. Coordinated all changes w/ team.*

*All team members have expertise. Folks on the ground don't. Sheriff doesn't want to do something — Ed conveys that they originally agreed to comply.*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to lead work as a team member**

3

Question: **Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?**

*2nd DEE → ~~Com~~ 2nd Chance. No model to start with NiYA — Partnered w/ NIC, GMU/MDRC, BJA/NIJ. His job to ID sites and develop the model. Developing 3 components of the training. Figuring out how to implement the model on the ground. What is needed? NIC has different ideas — needed to get them acclimated.*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

*His direction has given the team direction. Helps them focus.*

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

4

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario:  You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

*[handwritten notes:]*
Michigan reentry project —
Developed logic models. Ran into issues w/ implementation. Had to collect data on a monthly basis — promised to get it back in better shape. Made sure they know where to go for assistance.
RCTs — research coord and project coordinator. Ensured randomization occurred. Need to explain why these things are important. Critical training for the sites is important. Did a session on "what could go wrong."

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in  developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment. development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

5

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

*Michigan - asked to evaluate the [youthful] offender program. Had to collect info from 9 prisons and conduct interviews of offenders. Regression analysis and descriptive statistics. Worked w/ Byrne, Davidson. Traveled across the state - Dept of Corrections — wardens, parole staff. Analyzed info, [circulated], provided to them. Recommendations for*

**LEVEL 5 DEFINITION** - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

*changes. (e.g. age range)*

**LEVEL 3 DEFINITION** – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

*Didn't take recommend. immediately.*

**LEVEL 1 DEFINITION** - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

*But laid it out for them so they could implement later.*

6

Question: **Do you have any questions or comments?**

*This position will build the infrastructure for translating findings. Summarizing SVORI study.*

*Researchers are requesting help to see if what they are doing is working.*

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 5 | .5 |
| **Experience** (Proven competencies and Skills) | .35 | 5 | 1.75 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 5 | 1.75 |
| **Work History** (Leadership skills. Stability, Diversity and Relevance of experience) | .20 | 5 | 1 |
| | 1.00 | *5* | *5* |

Candidate Name: _Timothy Jeffries_

Panel Member: _Edson Apointe_

## Bureau of Justice Assistance
## Program Analyst GS-343-14
## (Evidence Integration Coordinator)
## Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>

Question: Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome? – *RESEARCH TO PRACTICE INITIATIVE AS AN EXAMPLE. DRUG COURT PROGRAM – INFO THAT PRACTITIONERS CAN INTERPRET. HIRED A PRODUCER THAT COULD TRANSLATE RESEARCH TO PRACTITIONERS. DEVELOPED SEVEN DESIGN FEATURES OF DRUG COURTS. WAS MODERATOR FOR THE WEBINAR ON SEVEN DESIGN FEATURES. THIS WEBINAR IS EXAMPLE OF HIS WRITING (ARCHIVED SLIDES). EACH YEAR HE WRITES SOLICITATIONS. HE WORKS WITH TTA PROVIDERS TO ENHANCE LANGUAGE IN SOLICITATIONS. DESCRIBED A SPREADSHEET HE*

BENCHMARKS: *DEVELOPED TO CATEGORIZE DRUG COURT APPLICATIONS BASED ON 7 FEATURES.*

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: **In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?** — *Analyzes 6/7 TA Providers and their projects. Used national drug court conference as example - recommended conference to mgmt, then recommended focus group and then developed a conference agenda. Helped with logistics. Outcome — grantees apparently learned a lot and got to hear from other practitioners. 128 people attended first challenge faced was funding, ~~for~~ location for conference. Also worked with grantees that do not budget for conference hotel contract was also an issue. He facilitated certain conference sessions where they educated certain drug court players. Write-ups were created post-conference for practitioners.*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
~~Is innovative~~ in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

*a team and*

**Ability to lead work as a team member**

Question: **Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project** ~~you led?~~ - MANAGES A COHORT OF DRUG COURT T/A PROVIDERS. EACH CHO DSEL MANAGES DFFERENT AREAS. HE COORDINATES ALL PROVIDERS (6), MEETS WITH THEM QUARTERLY AND COORDINATES ACTIVITIES SO AS NOT TO OVERLAP. HE ALSO MANAGES THE DELIVERABLES. WORKS INDIVIDUALLY WITH T/A PROVIDERS AND WORKS WITH INTERNAL PROGRAMS OFFICE STAFF TO PROVIDE UPDATES ON PROJECTS, FEELS THAT HIS COORDINATION ACTIVITIES REACHES OUT TO EXTERNAL PARTNERS AND INTERNAL COLLEAGUES.

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with ~~management~~, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario: You are tasked to develop a research project to assist practitioners in using data and research to enhance ~~the management of~~ the implementation and impact of an innovative criminal justice program. .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners? What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?). – EXAMPLE – RESEARCH TO PRACTICE INITIATIVE. MENTIONED THAT AS PART OF RJA STRATEGIC PLAN, HE HAS EXPRESSED THE NEED TO MOVE TOWARDS EVIDENCE BASED PRACTICES, DISCUSSED THE IMPORTANCE OF PERFORMANCE MEASURES, HE FACILITATED GETTING THE KEY TOPICS OF RESEARCH AND THEN THIS INFORMATION WAS SUMMARIZED. HE FEELS THAT THIS INFORMATION DISSEMINATION TO THE FIELD WAS SUCCESSFUL.

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

Question:  **Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice** ~~systems~~ **program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used.  Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?**

— EXAMPLE WORK WITH CSR, PERFORMANCE METRIC CONTRACTOR. FEELS SIGNIFICANT PROGRESS HAS BEEN MADE REFINING/DEVELOPING DRUG COURT MEASURES. THESE MEASURES ARE USED TO EVALUATE QUANTITATIVE AND QUALITATIVE DATA. WORKS WITH CSR TO ANALYZE TREND ANALYSIS. THIS QUESTION WAS NOT ANSWERED FULLY.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes  in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and  makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

Question: **Do you have any questions or comments?**

- SUMMARY COMMENT - FEELS HE HAS GOOD KNOWLEDGE/GRASP OF
  RESOURCES NECESSARY FOR DRUG COURT GRANTEES AND
  FEELS HIS KNOWLEDGE CAN BE EXPANDED THROUGHOUT
  B.J.A.

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 2 | .20 |
| **Experience** (Proven competencies and Skills) | .35 | 1 | .35 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 1 | .35 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 1 | .20 |
| | 1.00 | 5 | 1.10 |

012861

Candidate Name: KRISTEN KRACKE

Panel Member: EDISON APONTE

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

1

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>

Question: Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?

- *[handwritten, largely illegible]* 25 yrs of Federal service. Written several documents, for both internal & external audiences. Translated for demonstration sites and public and evidence findings (evidence-based practices) for child abuse experts to a science. translated from research to practitioners and vice versa. Per old several examples of written documents (CSSDP bulletins and booklets) working w/ the performance measures and translating to staff & grantees.

BENCHMARKS:

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

2

<u>Ability to plan and execute work on criminal justice programs or strategies.</u>

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise?  What was involved?  What did you do and what was the outcome?

*[handwritten] — LEAD FOR STRATEGIC PLANNING/MEASURES FOR C___DE. REVAMP C___DE PROGRAM PLAN. HELPED WITH OPERATIONAL FRAMEWORK AND THEN ORGANIZE STAFF RESPONSIBILITIES. MODIFICATIONS — ADDED INTERNAL OPERATIONS AND INCLUDED STAFF (INTERNAL COMMUNICATION/COORDINATION)*

*[handwritten] NATIONAL DEMONSTRATION PROJECT — CONVEYED INFO. FROM DEMONSTRATION TO RESEARCH TO EVIDENCE. CONVEYED INFO TO PRACTITIONERS WHO MAY NOT UNDERSTAND RESEARCH FINDINGS. BROKE IT DOWN TO NON-TECHNICAL PROCESS. ANSWERED VERY WELL (CONFIDENT)*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives.  Example:  Develops and executes agency wide standards for report formats.  Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work.  Example:  Compares and contrasts services to be contracted and supplied by a vendor or partner.  Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others.  Example:  Develops a new method for disseminating information to staff in the field.  Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

<u>Ability to lead work as a team member</u>

3
012864

Question: Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?

*[handwritten] Feel she has gained credibility with ___ ___ staff/colleagues, while working with projects, engaged stakeholders, grantees & staff, pilot projects - organizing ___ content around evidence.*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

012865

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario:  You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would you ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?). *- First she would want to understand the current state of the field. Strong believer in "demonstration", would like to build knowledge base from "demonstration", then look at best approach, look at fidelity. Develop national standards.*

BENCHMARKS

(LEVEL 5) DEFINITION – Provides expert expertise and advise in  developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods, and to develop strategies to enhance capacity and implementation** *ability*

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

*[handwritten:]*
- SAFE START MATRIX - ASSESS AS EVIDENCED-BASED STUDY ^CREATED ^DATA
  SPECIFIC DATASETS AS AN EXAMPLE. WORKED WITH SITES ON
  PROGRAM DESIGN RANDOMIZED CONTROL TRIALS AS AN EXAMPLE →
  POWER ANALYSIS AND RETENTION RATES (ANALYZED THIS DATA) /METHOD
  TRANSLATED SITE FINDINGS. LOOKED AT QUALITATIVE +
  QUANTITATIVE DATA. ANSWERED CONFIDENTLY. GAVE CONCRETE
  EXAMPLES.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

**Question: Do you have any questions or comments?**

REALLY LIKES EVIDENCE INTEGRATION. RESEARCH HELPS
INFORM THE RECORDS AND IS IMPORTANT. MENTIONED
SBE IS DEDICATED TO THIS WORK, ENJOYS WORKING
WITH CROSS-CUTTING SYSTEMS IMPLEMENT, RESEARCH
INTEGRATION, ETC.

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 4 | .4 |
| **Experience** (Proven competencies and Skills) | .35 | 5 | 1.75 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 5 | 1.75 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 4 | .8 |
| | 1.00 | 18 | 4.70 |

Candidate Name: _C ALLIE  MULFORD_

Panel Member: _EDISON  APUNTE_

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

Interview summary comments

1

INTERVIEW QUESTIONS:

## Ability to communicate in writing

Question: Describe the types of documents you have written. What types of
information did you present and how did you organize what you wrote? Who was
the audience? How did you adapt the writing to meet the audience's level of
knowledge? What was the outcome? – SET UP RESEARCH AGENDA WITH RESEARCHERS
AND WROTE ABOUT RESEARCH/PRACTITIONER DIFFERENCES IN FIELD ON TEEN
DATING VIOLENCE. THIS STIMULATED A LOT OF CONVERSATION IN
THE FIELD.         LITERATURE (ARTICLES)

– MADE LITERATURE EASY TO READ/FOLLOW WITH VISUALS FOR THE
AUDIENCE.

BENCHMARKS:

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences;
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program
plans; complex or unique legislative proposals; Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio
presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome? *FA [unclear] EVALUATION AS AN EXAMPLE. HAD TO DEVELOP AN EVALUATION DESIGN FOR PROJECT (OVC & OVW) HAD SEVERAL CONVERSATIONS WITH OVC AND LESSONS LEARNED INCLUDED ADAPTING AND LEARNING ABOUT CAPACITY & SUSTAINABILITY OF ACTIVITIES INVOLVED. PRESENTED RESULTS OF STUDY. WHILE MANAGING PROJECTS, SHE FEELS SHE IS CLEAR, FLEXIBLE, AND VERY SUPPORTIVE.*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
~~Is innov~~ative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to ~~lead~~ work ~~as a~~ team member** *a [unclear] with*

012871

Question: Describe a situation in which you lead a team that was responsible for
coordinating a key criminal justice program involving a team of interdisciplinary
experts and staff. Provide examples of how you led the collaboration and
coordination activities with internal colleagues and external partners. Discuss
challenges and successes in managing this collaborative effort. What was the
outcome and impact of the project you led? — *Interagency workgroup on teen dating*
*violence – she coordinates this group. Pulled resources, looked at*
*sources for the study. Met frequently, collected data*
*by connecting with the field. Discussed a challenge*
*involving minor data collection (survey) where it was*
*challenged to get approval first (Human Subject approval),*
*but she verified it and determine no approval was necessary, so the survey was*
*completed.*

LEVEL 5 DEFINITION — Establishes, maintains and leads constructive and cooperative
interpersonal relationships with subject matter experts, executives, or managers, as well
as subordinates, superiors, peers, multiple internal and external customers and
stakeholders across federal, state, local, and tribal government agency lines, or on a
national scale (or limited international scale) to accomplish the organization's mission.
Adapts approach to different people and situations. Example: Coordinates efforts of the
at meetings with national or international professional or industry groups, non-
governmental organizations (NGO's), or other outside groups on controversial issues;
chairs a national committee to accomplish a defined task; leads internal workgroup of
colleagues; represents agency at meetings of professional organizations; maintains an
effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable
situations involving superiors or subordinates; works well with others from diverse
backgrounds and across levels in the agency or organization to resolve an issue and
accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try
a new strategy or develop new project; networks with others outside of the functional
group or agency; restores a working relationship between competing managers or
supervisors who have opposing views; calms an important customer who is threatening to
file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative
working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with
management, other employees and customers. Remains courteous when discussing
information or eliciting information from people who are reluctant to give it. Effectively
handles situations involving a high degree of tension or discomfort involving people who
are demonstrating hostility or distress. Example: Patiently explains the benefits of
controversial policy changes to upset individuals.

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario:  You are tasked to develop a research project to assist practitioners in using data and research to enhance the ~~management of the~~ implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

She would lay the groundwork for the project. The methods have to be analyzed and incorporated into research method. She feels you need a strong background in the research area and need to be a good listener. She feels that explaining different types of models first, then explaining why a certain one ~~would~~ work is essential. (give people options). Feels you should talk to implementers to determine how everything is going to get an idea of how implementation is going.

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in  developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods and to develop  strategies to enhance capacity and implementation**

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems ~~program~~ policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

— Evaluability assessment – conducted the assessment and got results out to the field in a short amount of time. Looked at forensic centers and how they were working.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION – Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

**Question: Do you have any questions or comments?**

— Comments — Feels being flexible topically is important. She embraces new topics, How to interact with people, being able to translate are important. Feels you can learn the topic on the job. Feels she is very independent.

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors. relevant experience highlighted) | .10 | 3 | .30 |
| **Experience** (Proven competencies and Skills) | .35 | 3 | 1.05 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 3 | 1.05 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 3 | .60 |
| | 1.00 | 12 | 3.00 |

Candidate Name: _CLARENCE E BANKS_

Panel Member: _EDISON APONTE_

Bureau of Justice Assistance
Program Analyst GS-343-14
(Evidence Integration Coordinator)
Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

1

INTERVIEW QUESTIONS:

Ability to communicate in writing

Question: Describe the types of documents you have written. What types of
information did you present and how did you organize what you wrote? Who was
the audience? How did you adapt the writing to meet the audience's level of
knowledge? What was the outcome? *[handwritten, partially illegible]*

BENCHMARKS:

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences:
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program
plans; complex or unique legislative proposals; Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio
presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

2

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome? — *Demonstration Field experience as an example - Committed to relations first to plan. Brought all parties together and met frequently. Communicated modifications in writing to ensure clarity. Spoke to fractions along with TA providers to help them understand the requirements of the Demo sites.*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to lead work as a team member**

3

012878

Question: Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led? *[handwritten text, largely illegible]*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

<u>Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.</u>

Scenario: You are tasked to develop a research project to assist practitioners in using data and research to enhance the management ~~of the implementation and impact~~ of an innovative criminal justice program. .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners? What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?). *[handwritten]* Fidelic Review Board at an example.
HELD MONTHLY MEETINGS OF THE STAFF TO ENSURE DATA BEING DATA COLLECTED. COLLECTED PRINCE DATA ACCURATELY. WOULD WORK CLOSELY WITH THE COURT PARTNER TO ENSURE FIDELITY TO MODEL (RESEARCH COORDINATOR)

NEEDED AREAS — TRAINING RIGHT FROM THE BEGINNING TO BUILD CAPACITY FOR PRACTITIONERS. PROVIDE IN-DEPTH SESSIONS TO HELP PRACTITIONERS UNDERSTAND.

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

<u>Ability to analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation</u>

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice ~~systems program~~ policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or the impact of the assessment of the recommendations you provided?

*(handwritten notes)*

- PERSONAL PROJECT —
- QUANTITATIVE INFORMATION WAS USED (STATISTICS DATA ETC.)
- EVALUATION — ORGANIZED PROJECT FINDINGS
- WORKED WITH PROFESSOR AND RESEARCHERS (NIJ—) ALSO AND DEPARTMENT OF CORRECTION.
- CREATED A REPORT W/ TH RECOMMENDATIONS, FINDINGS, AND RECOMMENDATIONS, AND IMPROVEMENTS
- RECOMMENDATIONS WEREN'T NECESSARILY TAKEN RIGHT AWAY.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major ~~criminal~~ justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

Question: Do you have any questions or comments?

*[handwritten notes]*

- Mentions that he feels that this position would help BJA build structure around research/evidence-based initiatives.
- Feels BJA would become a leader in promoting research findings and evidence-based implementation and integration.
- Feels that capacity building is important for practitioners. Feels that researchers need to participate in practitioner conferences. (Researcher/Practitioner Partnerships)
- Provided excellent examples (documents) of his work with research/evidence integration at BJA.

Rating Criteria and Scoring:

|  | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 5 | 5 |
| **Experience** (Proven competencies and Skills) | .35 | 5 | 1.75 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 5 | 1.75 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 5 | 1.00 |
|  | 1.00 | 20 | 5.00 |

Candidate Name: _MONTE EVANS_

Panel Member: _EDISON AICONTE_

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

1.

INTERVIEW QUESTIONS:

**Ability to communicate in writing**

Question: Describe the types of documents you have written. What types of
information did you present and how did you organize what you wrote? Who was
the audience? How did you adapt the writing to meet the audience's level of
knowledge? What was the outcome? — *Peer Review Policy for U.S. Game*
*(Remediations on Peer Review Process. Worked with NIS Recovery Act*
*Awards and Second-Chance. Awards. Presented my Dissertation on*
*1974 Justice Act.*

BENCHMARKS:

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences;
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program
plans; complex or unique legislative proposals: Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio
presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

2
012884

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: **In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?** — *Project Lead for peer review — provided on how peer review would be conducted. Hired staff. Developed call center as part of process in response to questions from field about solicitations.*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products. services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to lead work as a team member**

Question: **Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?** – *Sccel lead with "Caliber" Served as senior consultant with technical assistance. Worked on 5 regional Scdcl trainings. Worked in the getting community on board. Outcome – reancd information on Successes.*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

4

012886

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario: **You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).** — Work with internal staff to develop solicitation. Target to those who are interested in program. Make presentations about program. Set up a board of SMEs to assist grantees. Provide national/regional conference information to build knowledge of program area. Develop performance metrics from field research.

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation** ability

Question: **Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?**

— PMs for BJA — did qualitative analysis of Juvenile Act. Foundation was used, for Juvenile Accountability Block Grant (JABG). impact

Looked at sentencing for juveniles and the positive nature.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

6

**Question: Do you have any questions or comments?**

*Would clarification on which position in Policy Mentioned he serves as a liaison within CSO.*

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 1 | .10 |
| **Experience** (Proven competencies and Skills) | .35 | 1 | .35 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 1 | .35 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 2 | .40 |
| | 1.00 | 5 | 1.20 |

012889

Candidate Name: LINDA HAMMOND - DECKARD

Panel Member: EDWIN APONTE

<u>Bureau of Justice Assistance</u>
<u>Program Analyst GS-343-14</u>
<u>(Evidence Integration Coordinator)</u>
<u>Interview Question Guide</u>

## Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

## Interview summary comments

1

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>

Question: Describe the types of documents you have written. What types of
information did you present and how did you organize what you wrote? Who was
the audience? How did you adapt the writing to meet the audience's level of
knowledge? What was the outcome?

*[handwritten]* Feels writing is a strength. English major. Written many types
of documents. Reports, web content, Research thesis — reading most of them.
Adapts all writing depending on audience. She always is able
to get down their goal. Feels she provides clear thoughts in
her writing. For example, wrote Alzheimer's presentation
and broke it down to make it clear.

BENCHMARKS:

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences;
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program
plans; complex or unique legislative proposals; Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio
presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

**Ability to plan and execute work on criminal justice programs or strategies.**

Question: **In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?**

- NEIGHBORHOOD WATCH PROGRAM USED AS AN EXAMPLE... WANTED TO DEVELOP A PLAN THAT WAS [illegible] AND [illegible] FOR BJA AND MET [illegible] [illegible] SHE HELPED MODIFY THE PLAN SO [illegible] DID NOT DUPLICATE [illegible] OFFICE EFFORTS, [illegible] DIFFERENT [illegible] AS PART OF [illegible] PROJECT. [illegible] TOGETHER AND DISCUSSED [illegible] [illegible] MODEL POLICY LINDA DESCRIBED HOW SHE MANAGED THIS MULTI-FACETED PROJECT AND GAVE EXAMPLES OF HER WORK.

GAVE AN EXAMPLE OF HOW SHE WORKED WITH GRANTEES TO SATISFY CERTAIN SPECIAL CONDITIONS. DISCUSSED THE [illegible] PROJECT (ALZHEIMER'S) THAT SHE HELPED DEVELOPED.

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to lead work as a team member**

Question: **Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?**

— GREAT program as an example - involved working with the board to develop training, policy etc. Linda described what the program needed to accomplish and how she was involved in facilitating/coordinating these activities. Each one was able to eliminate a mistake (ineffective partner, realigning regions to save money) Linda feels that successful partnerships lead to a successful program ... ment and that over 450 trainings still occur without federal funding.

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

4

012893

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario:  **You are tasked to develop a research project to assist practitioners in using data and research to enhance ~~the management of~~ the implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).** — Example used — up and of child matrix. Small l.e. agencies vs large l.e. agencies. She feels that small agencies need to be coached / taught to implement evidence-based practices, assess their community/agency needs (first), and help them to implement the practice. Feels you need to meet with practitioners on a regular basis, have regular contact. Feels she can analyze the results of research, and developing how we get to the outcome.

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

Question: **Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice ~~systems~~ program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?**

Analysis of BwC Program - mentioned vests were being bought
but not necessarily being used. Came up with mandatory wear
policy. (discussed new vehicle being developed)

G.R.E.A.T. Program - did data collection before and after training
analyzed that information to improve the program.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes  in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and  makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

012895

Question: **Do you have any questions or comments?**

[illegible]

- [illegible] ... they think

- BJA experience - years in Programs Office and managing nationwide programs and in Policy Office.

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 2 | .20 |
| **Experience** (Proven competencies and Skills) | .35 | 2 | .70 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 3 | 1.05 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 2 | .40 |
| | 1.00 | 9 | 2.35 |

Candidate Name: _Kristen Kracke_

Panel Member: _Betsi Griffith_

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

- OJJDP 17 yrs
- Leading, data + translation very strong
- Research a little more limited

1

012897

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>    BG

Question: Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?

*Standard · Solicitations, white papers etc.*
*Has written - internal audience = w/self + Cx*
*                      diverse*
*   some projects w/ gen'l audience, demo site, research*
*CEV· matrix of resources = gave examples*
*     · translation - R2P*

BENCHMARKS:
*Outcome = ·demo sites using inplanning +*
*           ·selected models for programs*
*           ·some booklets · won an award -*
*                                   user friendly*

✓LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

*Pm · coordinates for OWDP. works*
*w/staff on Pm develop + use.*
*                                              2*

012898

**Ability to plan and execute work on criminal justice programs or strategies.**    *EA*

Question: **In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?**

*2 examples ∘ 1) Str Plan. OJJDP ~ lead*
*revamp program plan - shift from grants*
*to more strategic approach - work >*
*grants. Created a model w/ staff*
*to define processes. Mid course . added*
*internal focus to SP + engaged staff.*
*2) Nat'l Demo*
*CEV - led from model to demo to DFE -*
*Strong collaboration w/ researchers + local sites to*
*develop measures + tools. Data profile sheets +*
*Comms.*

BENCHMARKS:    *※ Not a lot of details of the how*
                *and her role in work - more comms again*

✓ LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

✓ LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to lead work as a team member**

3

Question: Describe a situation in which you lead a team that was responsible for
coordinating a key criminal justice program involving a team of interdisciplinary
experts and staff. Provide examples of how you led the collaboration and
coordination activities with internal colleagues and external partners. Discuss
challenges and successes in managing this collaborative effort. What was the
outcome and impact of the project you led?

*[handwritten notes:]*

*RR*

- Prior examples relevant here, too.
- Working w/ leaders + peers internally - have established credibility
- Success • listen, stay focused on mission - engage
  • not afraid of challenges
  • clarity of roles + buy in early on
- Example • led E2I with CEV. Won AAG award

*for work =*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative
interpersonal relationships with subject matter experts, executives, or managers, as well
as subordinates, superiors, peers, multiple internal and external customers and
stakeholders across federal, state, local, and tribal government agency lines, or on a
national scale (or limited international scale) to accomplish the organization's mission.
Adapts approach to different people and situations. Example: Coordinates efforts of the
at meetings with national or international professional or industry groups, non-
governmental organizations (NGO's), or other outside groups on controversial issues;
chairs a national committee to accomplish a defined task; leads internal workgroup of
colleagues; represents agency at meetings of professional organizations; maintains an
effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable
situations involving superiors or subordinates; works well with others from diverse
backgrounds and across levels in the agency or organization to resolve an issue and
accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try
a new strategy or develop new project; networks with others outside of the functional
group or agency; restores a working relationship between competing managers or
supervisors who have opposing views; calms an important customer who is threatening to
file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative
working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with
management, other employees and customers. Remains courteous when discussing
information or eliciting information from people who are reluctant to give it. Effectively
handles situations involving a high degree of tension or discomfort involving people who
are demonstrating hostility or distress. Example: Patiently explains the benefits of
controversial policy changes to upset individuals.

4

<u>**Ability to plan, evaluate and direct criminal justice research activities in**</u>
<u>**collaboration with practitioners.**</u>                                    B6

Scenario:  **You are tasked to develop a research project to assist practitioners in**
**using data and research to enhance the management of the implementation and**
**impact of an innovative criminal justice program.  .Please describe how you will**
**develop and implement the program utilizing research and data (examples include:**
**how would ensure fidelity to the program model, the rigor of the research methods**
**and the cooperative of the practitioners?  What do you think would be needed areas**
**of capacity building for the practitioners and how would you help them build this**
**capacity?).**

- Assess current state of the field + engage team.

- Rigor depends on state of research + nature of question to be answered. ( how specific is knowledge)

- Challenge · taking demo to next level — including translation of current research.

- Fidelity is key. needs more attention. + overcome desire to "customize" to a point of losing fidelity.

- Tools. checklists, criteria, ~~fidelity / prgm~~ standards.

BENCHMARKS

√ LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and
managing projects which utilize research and data to inform the assessment,
development and management of criminal justice programs in partnership between
research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and
compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support
implementation of projects which utilize research and data to inform the assessment,
development and management of criminal justice programs in partnership between
research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which
utilized basic research and data to inform the assessment, development, and management
of criminal justice programs in partnership between research partners and practitioners.

<u>**Ability to  analyze current or projected operating criminal justice programs and**</u>
<u>**tests of research methods and to develop strategies to enhance capacity and**</u>
<u>**implementation**</u>

5

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

*Ex*

- matrix ) · created Standards to assess
  E2I ) research w/in an area.
- Challenge: learning @ language + roles bet
  practitioners + researchers.
- Working w/sites to make power analysis
  as rigorous as possible.
- methods: increasing #s in retention to enhance
  power for research. Used other methods like
  cluster analysis + process data.
- ✓ Translated some experience in probs —

*changed method w/ next Round of sites*

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

6

Question: **Do you have any questions or comments?**

- Commitment to EI in her career = focus on system improvement
- need to change how field operates w/ all research available
- another project : JJ Reinvestment — OMB research ptrships effort. (based on Lipsey + Met.)
  - what are cost effective approaches
  - key aspects of fidelity for prgms.
- Info c SIV, position etc.

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 5 | .5 |
| **Experience** (Proven competencies and Skills) | .35 | 4.4 | 1.54 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 5 | 1.75 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 4.5 | .9 |
| | 1.00 | | 4.69 = |

4.7.

Kris:
- why JJ to adult? —
- Focus on systems improvement, Capacity bldg vs. program.
- Reorg: may limit scope of work.

7

012903

Candidate Name: _Ed Banks_

Panel Member: _Betsi Griffith_

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

1

INTERVIEW QUESTIONS:

Ability to communicate in writing    *BG*

*[handwritten: Has vision already c what will we need in role]*

Question: Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?

*[handwritten:]*
- *Dissertation ~*
- *Statewide crime analysis report ~ MI*
  - *audience practitioners*
- *Research translations — gray buy backs*
- *Recognizes — importance of translation —*

BENCHMARKS:

*[handwritten: from 1 page to many pages]*
- *also important to think c how to present info to audience*

*[handwritten: ✓]* LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

*[handwritten: clear: researcher vs practitioners vs policy makers*
*· there is a difference!]*

2

012905

**Ability to plan and execute work on criminal justice programs or strategies.**    ε/~

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?

- DFEs = HOPE ~
  - worked w/ TA providers to develop a operational plan, balanced w/ needs of researchers, working w/ team.
- ongoing assessments + dialogue
- Discussed issues rly, made sure changes are documented.
- Translation w/ sites + model fidelity.

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

**Ability to lead work as a team member**

3

012906

Question: **Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?**

*DFE · SCA ~*

*· Developed a more theoretical model + made operational — in ptrship w/ a number of partners*

*· lead development of model, key steps TTA components — roles clarity + vision.*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

*Collaboration between — NIJ, NIC*

4

*Outcome · clear vision of where ____ next ____*

012907

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario: You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program. .Please describe how you will develop and implement the program utilizing research and data (examples include: how would you ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

*[handwritten notes:]*

- MI Prisoner Reentry — has done this
- Developed model + how to implement
- as challenges arose — managed via check in
- Challenges - data did not relate to outcomes. had to build capacity to collect data, get buy in from field — collecting data used eval approach to results.
  - Rigor — ensure best results.

**BENCHMARKS**

**LEVEL 5 DEFINITION** – Provides expert expertise and advise in developing and managing projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management. *Clarity c roles + on ground support needed for fidelity +*

**LEVEL 3 DEFINITION** – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

**LEVEL 1 DEFINITION** – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

5

Question: Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?

*EX*

- M1. evaluate youthful offender program =
  collected data / interview - 9 prisons =
- Regression analysis
- Qualitative by prisons / themes sorting
- worked w/ other researchers -
  - client = DOC = leadership, wardens, parole
- Recs. created a report. background, process
  analysis + translation - recs - program
  each facility - recs - program
  improvements + change of
  target pop (age)

5 ✓ LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major *(age)* criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes  in support of national criminal justice policy and programs.

*did not accept recs immediate*

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and  makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

**Question: Do you have any questions or comments?**

- Position will help BJA work w/ field to build capacity to integrate evidence. RR
- Want to move field toward reading research; ensuring its used by practitioners.
- Researchers now coming to BJA
- Tools // RNR ⟹ cook to judge – using tool to have trnt assess programs for gaps.

Rating Criteria and Scoring: • R+P – need to build capacity for these – PSN – great experience.

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 5 | .5 |
| **Experience** (Proven competencies and Skills) | .35 | 5 | 1.75 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 5 | 1.75 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 5 | 1.0 |
| | 1.00 | | 5.0 |

- Ideas where to connect the dots bet. practice + research.
- Shared program plan/ vision =
- good written examples =

7
012910

Candidate Name: *Carrie Mulford*

Panel Member: *Beth Smith*

## Bureau of Justice Assistance
## Program Analyst GS-343-14
## (Evidence Integration Coordinator)
## Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

1

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>    B4

Question: **Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?**

- Teen dating violence workgroup = summarized research findings & why it does not synch w/ practice experience.
- Stimulated a lot of dialogue in the field =
- Balancing tendency of researchers to add provisos — gave room — more visuals

BENCHMARKS:

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

(4) ✓+

Right topic, not alot details =

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

2



**Ability to plan and execute work on criminal justice programs or strategies.**

Question: **In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?**

- *Faith Based eval's. OVW / OVC programs – mandated by Congress.*
- *Created methodology – methods not followed in practice, hard to evaluate a program vs. program model.*
- *Learned 2 : capacity, sustainability of programs.*
- *Project mgmt : set clear expectations, create rapport w/ partners, encourage sharing Role to assist vs "police" work.*

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

✓ +

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

* *Ltd interaction w/ Sites or programs*

**Ability to lead work as a team member**

3

Question: Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?

*[handwritten notes:]*

- Interagency grp c Teen Justing audience   people
- serves or lots of wk groups
- created project, pooling resources = looks c youth vs adult perspectors =
- Finan-of project; outreach + recruitment;
- Challenge. differing ideas c how to process -

*[margin notes: < 18 aget  <? o ;  very flex.]*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

*[handwritten margin: 4+ ]*

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

012914

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

B4

Scenario: You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program. .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners? What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

- Encourage p'tnship w/ local researcher = even leverage grad student.
- Need to know research — implementation issues to develop project. Sensitive to nuances of research done in past + how → build on knowledge.
- Be a good listener — understand needs of practitioners.
- We ask practitioners to do too much or too little. need → incentive — ensure we answer Qs they want to know.

**BENCHMARKS**

✓ LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

stipends etc.

- Discuss options + why we are proceeding = ✓

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

- measure fidelity w/ research — checklists etc.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

5

Question:  **Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?**

- o Orange County: eval assessment —
  used propensity score matching = vs RCT
- o Continued to allow this method for
  future solicitators = successful to
  helping applicants complete reviews.
- o created some research aut area =

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

6

*Timing*

**Question: Do you have any questions or comments?**

- Topics = current focus on growth - prevention - but can emb are new topics - dev skills in the hows to do it.

- Preferred style w/ mgmt - indeped. hard worker = do best where room - proactive reading.

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 3.5 | .35 |
| **Experience** (Proven competencies and Skills) | .35 | 4.0 | 1.4 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 4.0 | 1.4 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 3.0 | .6 |
| | 1.00 | | 3.75 |

7

Candidate Name: _Linda Hill_

Panel Member: _Betsi Forth_

**Bureau of Justice Assistance**
**Program Analyst GS-343-14**
**(Evidence Integration Coordinator)**
**Interview Question Guide**

**Interview welcome and introduction of panel members**

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

**Interview summary comments**

1

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>    *BG*

Question: **Describe the types of documents you have written. What types of information did you present and how did you organize what you wrote? Who was the audience? How did you adapt the writing to meet the audience's level of knowledge? What was the outcome?**

- written docs. a strength =
- Reports; circular; articles; web content; annual reports; Final project; applied research project - c 2 yrs ago = rec'd award ← thesis - project funded by BJF - 1 SOLS =

BENCHMARKS:
- Looks a audience to define perspective what do they know? what do I need to tell them?
- alot of review for audience = saw difference in level of staff so eg line off if chief.

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives and managers and communicates on a frequent basis with people from a variety of backgrounds, cultures, and service needs in a very complex environment. Composes, reviews, edits and issues critical and sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program plans; complex or unique legislative proposals; Federal/State guidelines for the public and private sector; press releases; or scripts (e.g., for videotaped, TV or radio presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse audiences; communicates purpose in a succinct and organized manner, appropriate for context, time and place. Example: Drafts, edits, or reviews publications or informational brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and adapts writing to the audience's level of knowledge. Proofreads or edits complex or technical writing of others. Example: Explains, in writing, the application of laws, regulations, precedents, and practices covering one or more types of legal actions.

good creative approach - eg missing 3Ls + BUF (creative w/ legis some)

2

012919



**Ability to plan and execute work on criminal justice programs or strategies.**

Question: In thinking about a recent major project for which you were the staff lead,
what strategies did you implement to effectively manage the project and ensure a
quality product or service? How did you address modifications to the plan or
changes in direction in response to changing situations? How did you convey ideas
to those who don't have technical research expertise? What was involved? What
did you do and what was the outcome?

- *Changes: New prgm w/ NSA = due to diminishing funds, ltd resources which would max resources. changed + dups. scope to ensure responsive to field + dups.*
- *Dialogue w/ grantee up grant; sound as't prgm mgnt of interest grorps. — Focus on good facilitative relationships.*
- *Example does not involve any data or research.*

BENCHMARKS:

- *Technical info translated = management of sc in grantee expectations*

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies,
locates and allocates resources to fulfill objectives. Example: Develops and executes
agency wide standards for report formats. Defines format and content organization so
that reports can be transmitted by email and consolidated and summarized without
reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal
justice program or policy work. Example: Compares and contrasts services to be
contracted and supplied by a vendor or partner. Makes recommendations based on
analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform
criminal justice program or policy work activities; new insights have a moderate impact
on others. Example: Develops a new method for disseminating information to staff in
the field. Recommends changes to the creation or execution of a product that reduces
costs for an agency/corporation.

- *Community success = developed a pilot of protocols to ensure comm safety.*

**Ability to lead work as a team member**

Question: **Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?**

*• GREAT = rec'd project in transition = shift management from PTS to BJA. Coordinates policy led that sets policy; coord of Sr leadership + contractors. often audience. & Grantees w/ students. Program evaluated + concluded from an evidence based =*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. <u>Example</u>: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

*3/75*

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. <u>Example</u>: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. <u>Example</u>: Patiently explains the benefits of controversial policy changes to upset individuals.

*- Discussed issues w/ data collection to grantees.*
*— challenge. enhanced outcomes + receptrs*
*— streamlined structure. - Sustained*

**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**

Scenario:  You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

*[handwritten notes across middle of page]*

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and managing  projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

**Ability to  analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**

5

Question: **Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice systems program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?**

RR

BVP · developed a process to track vests deployed into field. noted that not all vests actually were - did random sample of grantees - based on results - recommended mandatory wear policy w/ those purchased. approved.

GREAT. data collection = new direction - resistance from some grantees, incl. collecting incidence data.

Translated to DHS 400

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

[illegible]

4.0

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

Question: **Do you have any questions or comments?**



BVP. using results to inform
new info @ NIJ web w/ results + usage.
Strengths: 1) Communicate oral/wr.
2) Knowledge of LE -
+ how they think =
3) BJA. breadth of experience I
agency = programs +
policy.

Rating Criteria and Scoring:

|  | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 3.0 | .13 |
| **Experience** (Proven competencies and Skills) | .35 | 3.0 | 1.05 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 3.5 | 1.225 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 2.0 | .4 |
|  | 1.00 |  | 2.975 |

7

Candidate Name: _Tim̅ ̅ ̅_ _̅ ̅ ̅ ̅ ̅_

Panel Member: _B̅ ̅ ̅ ̅ ̅ ̅ ̅_

## Bureau of Justice Assistance
## Program Analyst GS-343-14
## (Evidence Integration Coordinator)
## Interview Question Guide

### Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

### Interview summary comments

_not responsive to many questions._

1

012925

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>   *BG*

Question: **Describe the types of documents you have written. What types of
information did you present and how did you organize what you wrote? Who was
the audience? How did you adapt the writing to meet the audience's level of
knowledge? What was the outcome?**

*• RFP for Drug Courts =
too # design features from research
to inform new curr of sol = developed
w/ NHC + TA partner —
• webinar = looked @ outcomes from orgs*

BENCHMARKS:  *sol — scored lower than others w/out
research. Translated each feature —
served as moderator. ??? ??? prepared
??? al docs.*

LEVEL 5 DEFINITION   *• Drug & Sol + resource guide = created
materials
w/ TA*
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences;   *ptr #*
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program   *wrote*
plans; complex or unique legislative proposals; Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio   *guide =*
presentation of agency/corporate policies).

*Outcome = field better educated =*
LEVEL 3 DEFINITION   *thru GrantStat — tracking outcomes
r graph*
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

*) +*   LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

*• Another example. Tracking Sheet*

2



**Ability to plan and execute work on criminal justice programs or strategies.**

Question: In thinking about a recent major project for which you were the staff lead,
what strategies did you implement to effectively manage the project and ensure a
quality product or service? How did you address modifications to the plan or
changes in direction in response to changing situations? How did you convey ideas
to those who don't have technical research expertise? What was involved? What
did you do and what was the outcome?

- *Oversees Drg ♀ = all TITA — CL*
  *with multi million awards. overall*
  *$35 mill.*

- *FSA : no team re/me  > 12 vrs —*
  *starting par in lar — red into care.*
  *sought input on sole group & inform =*
  *Focus on evider & innovation = developed*
  *agenda w/ themes — speakers. — 150+*
  *Dev Time Task plan ndel a rate*
    - *good feedback & emphasize calendar*
    - *coord w/ or Fed PI's.*

BENCHMARKS:

LEVEL 5 DEFINITION: *Not really details a evider & rep*
Develops agency level criminal justice program or policy plans and strategies; identifies,
locates and allocates resources to fulfill objectives. Example: Develops and executes
agency wide standards for report formats. Defines format and content organization so
that reports can be transmitted by email and consolidated and summarized without
reformatting. *leverage dialogue →*
              *inform future research*

LEVEL 3 DEFINITION:
Is innovative in developing or modifying applications or systems related to criminal
justice program or policy work. Example: Compares and contrasts services to be
✓3  contracted and supplied by a vendor or partner. Makes recommendations based on
analysis of agency needs and available resources. *change) ⌐ funding =*
                                                    *participation =*
LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform
criminal justice program or policy work activities; new insights have a moderate impact
on others. Example: Develops a new method for disseminating information to staff in
the field. Recommends changes to the creation or execution of a product that reduces
costs for an agency/corporation. *Info a technical issues —*
                                 *did no really answer.*

**Ability to lead work as a team member**  *nice discussion a how*
                                            *they worked w/ sought*
                                            *input from field*

012927

Question: Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?

*[handwritten notes]*

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

*[handwritten notes]*

012928

<u>**Ability to plan, evaluate and direct criminal justice research activities in collaboration with practitioners.**</u>



Scenario: You are tasked to develop a research project to assist practitioners in using data and research to enhance the management of the implementation and impact of an innovative criminal justice program.  .Please describe how you will develop and implement the program utilizing research and data (examples include: how would ensure fidelity to the program model, the rigor of the research methods and the cooperative of the practitioners?  What do you think would be needed areas of capacity building for the practitioners and how would you help them build this capacity?).

*R2P example = support 2 BJA Sr Plan*
- *Build support thru education c benefits*
  *of this approach.*
- *Collaborate w/ researchers no Adv Ed*
  *to leverage technical expertise.*
- *Identify critical issues + topics —*
  *review of research findings.*
- *Define who should help w/ message —*
  *those w/ expertise 2 drive it*
- *Assess baseline data — Fm company*

BENCHMARKS
*- Morale info c specific challenges more process =*

LEVEL 5 DEFINITION – Provides expert expertise and advise in developing and *x Had c* managing projects which utilize research and data to inform the assessment, *m=t, t* development and management of criminal justice programs in partnership between *aftercare* research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support implementation of projects which utilize research and data to inform the assessment, development and management of criminal justice programs in partnership between research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which utilized basic research and data to inform the assessment, development, and management of criminal justice programs in partnership between research partners and practitioners.

<u>**Ability to analyze current or projected operating criminal justice programs and tests of research methods and to develop strategies to enhance capacity and implementation**</u>

5

Question: **Describe a situation in which you used quantitative and qualitative analytical and evaluation methods and techniques to assess the effectiveness of criminal justice~~program~~ program policies and activities in reaching their stated goals. Please describe the specific methods and techniques you used. Who did you work with and how did they use your recommendations? What was the outcome or impact of the assessment of the recommendations you provided?**

*[handwritten notes:]*

• Collaborator w/ ISA c lma st measures = seen evolution of pm & explored dllector + usage. (eg PFFT process, etc).

• used PFFT experience to inform developed new measure; saught inout & m/ overview

• no discussion if non-applicant actually conducted the actual research or analysis.

• Prr too new to define results. *[margin: leads — oversees]*

• discussed analysis by TFors; + comparison *[margin: w/ others prior reports etc.]*

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major criminal justice agency programs of national scope and impact, and provides recommendations. Example: Leads development and implementation of program evaluations, field demonstration experiment or other formal program analysis using the most rigorous research methods which had a positive impact on program planning, management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative methods and makes recommendations on implementation and impact of the program model that affect critical aspects of major agency programs. Example: Provides expert technical advice and guidance to the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on implementation and impact of the program model using established procedures or methods/ Example: Supported the use of evaluation or other formal program analysis using the research methods which had an impact on program planning, management and in support of national criminal justice policy and programs.

6

Question: **Do you have any questions or comments?**

- *[handwritten, illegible]*
- *[handwritten, illegible]*
- *[handwritten, illegible]*

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | 2.0 | .2 |
| **Experience** (Proven competencies and Skills) | .35 | 1.5 | .525 |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | 2.0 | .7 |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | 2.0 | .4 |
| | 1.00 | | |

7

Candidate Name: _Monte Evans_

Panel Member: _Beth Smith_

### Bureau of Justice Assistance
### Program Analyst GS-343-14
### (Evidence Integration Coordinator)
### Interview Question Guide

## Interview welcome and introduction of panel members

- This position is for a Senior Policy Advisor for Evidence Integration in the Strategic Initiatives Unit in the BJA Policy Office
- The interview is expected to last about 30-45 minutes
- There are a total of 5 questions
- Panel members will be taking notes in the interview
- At the conclusion, we would welcome any questions or concluding remarks

## Interview summary comments

1

INTERVIEW QUESTIONS:

<u>Ability to communicate in writing</u>    *E.*

Question: Describe the types of documents you have written. What types of
information did you present and how did you organize what you wrote? Who was
the audience? How did you adapt the writing to meet the audience's level of
knowledge? What was the outcome?

- *wrote peer review P+P (NIJ, other SAE) related to Standing panels, working w/ NIJ staff.*
- *Has presented 1 PR processes*
- *Worked on rfds, proposals + presenting PR P+*

BENCHMARKS:
- *ARRA. leading work = <20 awards*
- *Limited tie w/ translating research + CJ substance*
- *other training re grants etc. in past*

LEVEL 5 DEFINITION
Prepares and articulates complex policy and technical issues to organization executives
and managers and communicates on a frequent basis with people from a variety of
backgrounds, cultures, and service needs in a very complex environment. Composes,
reviews, edits and issues critical and sensitive written materials for diverse audiences;
communicates purpose in a succinct and organized manner, appropriate for context, time
and place. Example: Drafts, edits, or revises sensitive materials: policy papers; program
plans; complex or unique legislative proposals; Federal/State guidelines for the public
and private sector; press releases; or scripts (e.g., for videotaped, TV or radio
presentation of agency/corporate policies).

LEVEL 3 DEFINITION
Composes, reviews, edits and issues complex or sensitive written materials for diverse
audiences; communicates purpose in a succinct and organized manner, appropriate for
context, time and place. Example: Drafts, edits, or reviews publications or informational
brochures on agency/corporate programs and policies.

LEVEL 1 DEFINITION
Composes documents or correspondence involving complex or technical information, and
adapts writing to the audience's level of knowledge. Proofreads or edits complex or
technical writing of others. Example: Explains, in writing, the application of laws,
regulations, precedents, and practices covering one or more types of legal actions.

Ability to plan and execute work on criminal justice programs or strategies.

Question: In thinking about a recent major project for which you were the staff lead, what strategies did you implement to effectively manage the project and ensure a quality product or service? How did you address modifications to the plan or changes in direction in response to changing situations? How did you convey ideas to those who don't have technical research expertise? What was involved? What did you do and what was the outcome?

- Project lead or peer review — HHS or 79500 awards (FY)
- Hired 5 staff, seek SME no contractor, oversee Managed call center / QC, panels.
- Solution _____ need for 30 _____
- _____

BENCHMARKS:

LEVEL 5 DEFINITION:
Develops agency level criminal justice program or policy plans and strategies; identifies, locates and allocates resources to fulfill objectives. Example: Develops and executes agency wide standards for report formats. Defines format and content organization so that reports can be transmitted by email and consolidated and summarized without reformatting.

LEVEL 3 DEFINITION:
Is innovative in developing or modifying, applications or systems related to criminal justice program or policy work. Example: Compares and contrasts services to be contracted and supplied by a vendor or partner. Makes recommendations based on analysis of agency needs and available resources.

LEVEL 1 DEFINITION:
Is innovative in developing or modifying products, services, or processes to perform criminal justice program or policy work activities; new insights have a moderate impact on others. Example: Develops a new method for disseminating information to staff in the field. Recommends changes to the creation or execution of a product that reduces costs for an agency/corporation.

Ability to lead work as a team member

3

012934

Question: Describe a situation in which you lead a team that was responsible for coordinating a key criminal justice program involving a team of interdisciplinary experts and staff. Provide examples of how you led the collaboration and coordination activities with internal colleagues and external partners. Discuss challenges and successes in managing this collaborative effort. What was the outcome and impact of the project you led?

*[handwritten notes:]*
- TTA provider under Caliber for SVORI =
- Served as Senior w/ 2 juniors =
  bid intake connected w/ SMEs. Regional Training (TAP) =
- Challenge · each grantee needed term Ed — across disciplines → building collaborative capacity + community

LEVEL 5 DEFINITION – Establishes, maintains and leads constructive and cooperative interpersonal relationships with subject matter experts, executives, or managers, as well as subordinates, superiors, peers, multiple internal and external customers and stakeholders across federal, state, local, and tribal government agency lines, or on a national scale (or limited international scale) to accomplish the organization's mission. Adapts approach to different people and situations. Example: Coordinates efforts of the at meetings with national or international professional or industry groups, non-governmental organizations (NGO's), or other outside groups on controversial issues; chairs a national committee to accomplish a defined task; leads internal workgroup of colleagues; represents agency at meetings of professional organizations; maintains an effective working relationship with legislative committee leaders.

LEVEL 3 DEFINITION - Tactfully handles unique, difficult, hostile, or uncomfortable situations involving superiors or subordinates; works well with others from diverse backgrounds and across levels in the agency or organization to resolve an issue and accomplish a defined goal. Example: Persuades skeptical or reluctant subordinates to try a new strategy or develop new project; networks with others outside of the functional group or agency; restores a working relationship between competing managers or supervisors who have opposing views; calms an important customer who is threatening to file a complaint; quiets a co-worker who disrupts team meetings; rebuilds a cooperative working environment after resolving a grievance.

LEVEL 1 DEFINITION - Establishes and maintains ongoing working relationships with management, other employees and customers. Remains courteous when discussing information or eliciting information from people who are reluctant to give it. Effectively handles situations involving a high degree of tension or discomfort involving people who are demonstrating hostility or distress. Example: Patiently explains the benefits of controversial policy changes to upset individuals.

4

Ability to plan, evaluate and direct criminal justice research activities in
collaboration with practitioners.

Scenario: You are tasked to develop a research project to assist practitioners in
using data and research to enhance the management of the implementation and
impact of an innovative criminal justice program.  .Please describe how you will
develop and implement the program utilizing research and data (examples include:
how would ensure fidelity to the program model, the rigor of the research methods
and the cooperative of the practitioners?  What do you think would be needed areas
of capacity building for the practitioners and how would you help them build this
capacity?).

- Develop the *solicitation* w/ colleagues.
  take research in a *way* + present in
  a way that translates
- Target to those interested =
- Develop good resource materials =
- Make awards to strong applications.
  - earn + strong program *requirement* = metrics
    for performance, *goals* i.e.
- No information really @ Research / data methods
  *important*    or Capacity building

BENCHMARKS

LEVEL 5 DEFINITION – Provides expert expertise and advise in  developing and
managing  projects which utilize research and data to inform the assessment,
development and management of criminal justice programs in partnership between
research partners and practitioners. Conducts ad-hoc analyses, prepared reports, and
compiled information for management.

LEVEL 3 DEFINITION – Shows ability to effectively develop, coordinated and support
implementation of projects which utilize research and data to inform the assessment,
development and management of criminal justice programs in partnership between
research partners and practitioners.

LEVEL 1 DEFINITION – Supported efforts to develop and manage projects which
utilized basic research and data to inform the assessment, development, and management
of criminal justice programs in partnership between research partners and practitioners.

Ability to  analyze current or projected operating criminal justice programs and
tests of research methods and to develop strategies to enhance capacity and
implementation

5

Question: Describe a situation in which you used quantitative and qualitative
analytical and evaluation methods and techniques to assess the effectiveness of
criminal justice systems program policies and activities in reaching their stated
goals. Please describe the specific methods and techniques you used. Who did you
work with and how did they use your recommendations? What was the outcome or
impact of the assessment of the recommendations you provided?

*Ex*

- Quantitative -
  Qualitative · PMI w/ BJA · wrote thesis c
  juvenile crime act - JAIBG = looked at c
  policies & 1 prison w/ juvenile events.
- Research limited to school = colorado
  ago.
- Showed that policies were becoming
  more punitive than intended in the
  original act.

LEVEL 5 DEFINITION - Plans and conducts analysis of the effectiveness of a major
criminal justice agency programs of national scope and impact, and provides
recommendations. Example: Leads development and implementation of program
evaluations, field demonstration experiment or other formal program analysis using
the most rigorous research methods which had a positive impact on program planning,
management and outcomes in support of national criminal justice policy and programs.

LEVEL 3 DEFINITION – Conducts some analysis using qualitative and quantitative
methods and makes recommendations on implementation and impact of the program
model that affect critical aspects of major agency programs. Example: Provides expert
technical advice and guidance to the use of evaluation or other formal program analysis
using the research methods which had an impact on program planning, management and
in support of national criminal justice policy and programs.

LEVEL 1 DEFINITION - Performs more limited and less rigorous analysis on a on
implementation and impact of the program model using established procedures or
methods/ Example: Supported the use of evaluation or other formal program analysis
using the research methods which had an impact on program planning, management and
in support of national criminal justice policy and programs.

6

Question: Do you have any questions or comments?

*[handwritten notes, illegible]*

Rating Criteria and Scoring:

| | Weighting | Applicant Score (1-5) | Weighted Score |
|---|---|---|---|
| **Resume** (education, written presentation and lack of errors, relevant experience highlighted) | .10 | | |
| **Experience** (Proven competencies and Skills) | .35 | | |
| **Interview** (Presentation, level of preparedness, responsiveness) *from interview guide | .35 | | |
| **Work History** (Leadership skills, Stability, Diversity and Relevance of experience) | .20 | | |
| | 1.00 | | |

012938

**Exhibit 66**

# Clarence Edward Banks II, Ph.D.

---

Dr. Banks has extensive training and experience in action research and applied social research methods. During the past 18 years, Dr. Banks has been involved in all aspects of the research process, including project evaluation; strategic planning and training; instrument and study design; study implementation; project and budget management; data collection and processing; questionnaire development and implementation; data analysis; database development and management; and report writing.  His research experience has been in the areas of family & child ecology, criminal justice, juvenile justice, substance abuse, mental health, social policy, rural health policy, and measuring the effectiveness of cancer programs. Dr. Banks has served as a member of the Office of Justice Programs Institutional Review Board (IRB), and as the co-Chair of the Assistant Attorney General's Evidence Integration Team focused on Gangs. He was also a member of the National Institute of Corrections Advisory Board for their Evidence-Based Decision-Making initiative. Dr. Banks has been a member of the Department of Justice's "Equipping Teams for Success - Anti-Gang training" (November 2006) and "Comprehensive Anti-Gang Initiative" (August 2007) training & facilitation teams. Dr. Banks has also served on the Department of Justice's (DOJ) Evidence Integration Initiative (E2I) team, the DOJ Evidence Standards Team, and as the Evaluation Coordinator for Michigan's Prisoner Reentry Initiative (MPRI). Dr. Banks has also co-authored "Michigan's Statewide Juvenile Crime Analysis Report" in 2008; the "Process Evaluation of Michigan's Youthful Offender Program" in 2007; and the "Improving Cancer Outcomes in African-Americans in Michigan: Evaluation Report" in 2005.

## Education

Ph.D., Interdisciplinary Social Science, Criminal Justice (2006); Michigan State University, East Lansing, Michigan. Cognates: Criminal Justice, Sociology, and Family & Child Ecology. *Dissertation Title*: Examining the Early initiation of Substance Use on Measures of Social Control, Delinquency, and Future Substance Use.

Master of Science, Criminal Justice (1997). Michigan State University, East Lansing, Michigan. *Thesis Title*: Conflict Resolution: Evaluating the Effects on Perceived School Safety and Measures of Interpersonal Conflict in Middle School Children.

Bachelor of Arts, Criminal Justice & Psychology (1993). Michigan State University, East Lansing, Michigan.

## Professional Experience

▲ *Knowledge Management Coordinator*
[04/08 – present] United States Department of Justice, Bureau of Justice Assistance, Strategic Initiatives Unit, Washington, DC

012791

<u>Summary of Responsibilities</u>: Serve as the BJA subject matter expert on the disciplines, techniques, and best practices of program review, evidence-based programming, program assessment, program evaluation, and evidence integration. Periodically serve as the Acting Associate Deputy Director for Policy (Strategic Initiatives) in my supervisor's absence. Serve as a member of the Bureau of Justice Assistance (BJA) & National Institute of Justice (NIJ) Leadership Team. Serve as the Agency Lead on OJP's Demonstration Field Experiment (DFE), Randomized Control Trial (RCT) portfolio. This portfolio includes the Second Chance reentry program & the Hawaii HOPE (probation and enforcement) program. Manage key agency projects that focus on: program evaluation & performance measurement; cost-benefit analysis; and offender risk, needs, and responsivity. Served on the Assistant Attorney General's Evidence Integration Initiative (E2I) team, which included co-chairing the Evidence Integration Team focused on Gangs.

<u>Agency Lead: Demonstration and Evaluation of HOPE: An Innovative Probation Program</u>
The Bureau of Justice Assistance (BJA) and the National Institute of Justice (NIJ) are teaming up to replicate Hawaii's Opportunity Probation with Enforcement (HOPE). NIJ will fund an evaluation of the BJA demonstration sites. This Demonstration Field Experiment (DFE) will rigorously test whether the HOPE probation model can promote the successful completion of probation for high-risk probationers. DFE sites will be asked to examine risk assessment scores, criminal histories, and prior behavior on probation to determine which probationers are high-risk for failing probation through drug use, missed appointments, and/or re-offending. After the pool of high-risk probationers has been determined, they will be randomized into one of the following groups: (a) HOPE probation, or (b) probation as usual.

<u>Agency Lead: Second Chance Act Demonstration Field Experiment: Fostering Desistance through Effective Supervision</u>
BJA will fund up to four demonstration sites to test a crime desistance-based reentry model. This project is a collaborative effort among BJA, the National Institute of Justice (NIJ), and the National Institute of Corrections (NIC). BJA will fund the demonstration sites, NIJ has funded the evaluation, and NIC will coordinate and facilitate the training, technical assistance, and coaching to the sites. This DFE will consist of a randomized controlled trial (RCT), where the parole officers will be randomized into treatment and control groups, and the parolee participants will be randomized into treatment and control groups. In order to generate new knowledge about effective solutions for working with offenders in the community and to enhance practice, this DFE will be focused on examining the community-based components of a comprehensive reentry strategy. This DFE will also examine how post-release interactions, programs, services, and activities impact parolees. The results from this DFE are expected to enhance the knowledge base for working with post-release offenders in the community.

<u>Agency Lead: Women's pathways to Jail: The roles and intersections of serious mental illness and trauma</u>
BJA has funded Idaho State University to examine the prevalence of mental illness among women in jails, and the pathways to jail for women with and without mental illness. The

sample will include approximately 400-500 women incarcerated in jails in four states (CO, DC, ID, and SC). Research interviews will be conducted at each facility, and measures will include structured interviews addressing mental health, victimization, and criminal activity.

Agency Lead: Risk, Needs, & Responsivity (RNR) simulation tool
BJA has funded George Mason University (GMU) and the University of Massachusetts-Lowell (UML) to develop a Risk, Needs, & Responsivity (RNR) simulation tool. This RNR simulation tool is being developed to help federal, state and local jurisdictions define the types and nature of correctional options available in their jurisdictions. The RNR simulation tool will also help jurisdictions assess their current system, identify gaps, and prioritize both services and controls (drug testing, electronic monitoring, etc.) based on desired outcomes. The RNR simulation tool will be web-based allowing jurisdictions to modify the parameters of the model based on the unique features of their jurisdictions. It will also complement efforts to advance the use of evidence-based practices by helping jurisdictions strategically review their existing correctional and treatment services and then make choices based on maximizing different outcomes (i.e. costs, offender change, and public safety) in their jurisdictions. The intent is for the resulting model to be useful to policymakers and practitioners to identify how their current system is functioning, to determine the impact of revised policies and practices on outcomes, and to understand the service gaps that exist in their system based on the distribution of offenders in that jurisdiction.

Agency Lead: Skills for Offender Assessment and Responsivity in New Goals (SOARING2)
SOARING2 will create a suite of web-based tools that can facilitate the important development of knowledge and skills to sustain evidence-based practices (EBPs). The goal is to provide SOARING2 tools that supplement traditional correctional and judicial academies. SOARING2 is designed to provide in-office skill development for the individual staff and agencies to facilitate the sustainability of evidence-based practices and to provide innovative tools to assist staff in managing offender outcomes. This project is also designed to do the following: (a) increase declarative knowledge ("what," meaning of terms), (b) procedural knowledge ("how"), and (c) strategic knowledge (when to apply the technique) for professionals in a manner that involves cognitive, interpersonal, and psychomotor skills or tasks and to evaluate its impact on outcomes in select probation settings.

Responsible for long-range planning and analysis of new substantive agency programs. Have developed policies and processes for the efficient capture of relevant knowledge content across the entire spectrum of criminal justice issues. Have defined and established knowledge management tasks, which include an inventory of BJA programming, developing program logic models, creating knowledge management plans, etc. Helped develop and manage the BJA Performance Measurement Tool (PMT). The PMT is used to collect grantee performance measures data. The PMT is also used to analyze, interpret, and disseminate the BJA performance data.

Serve as a liaison to the National Institute of Justice (NIJ), the Office of Juvenile Justice & Delinquency Prevention (OJJDP), the National Institute of Drug Abuse (NIDA), the Bureau of Justice Statistics (BJS), the National Academy of Sciences (NAS), National Institute of Corrections (NIC), and the Justice Research & Statistics Association (JRSA) to facilitate research and information sharing collaborations, as well as, to promote and obtain the latest data and research results on a wide range of criminal justice and public safety policy areas. Manage the JRSA/BJA Center for Program Evaluation & Performance Measurement and the Vera Institute of Justice's Criminal Justice Cost-Benefit Knowledge Bank. Serve on multiple Department of Justice taskforces focused on "evidence-based practice", and also facilitated a cross-Bureau Corrections Working Group.

Responsible for vetting research methodologies & evaluation plans, reviewing submitted research instruments and evaluation studies, and participating in the creation and revision of program performance measures (Justice Assistance Grants, Residential Substance Abuse Treatment, Comprehensive Anti-Gang Initiative, Drug Courts, Prisoner ReEntry Initiative, Prescription Drug Monitoring program, and Indian Alcohol and Substance Abuse program).

▲ *Senior Research Associate & Evaluation Coordinator - Michigan Prisoner ReEntry Initiative* ▲
[10/05 – 04/08] Public Policy Associates, Inc., Lansing, MI

Summary of Responsibilities: Working in collaboration with the National Institute of Corrections, the Michigan Department of Corrections, the Michigan Council on Crime and Delinquency, and with Michigan communities the MPRI (Michigan Prisoner ReEntry Initiative) evaluation coordinator provides expert technical assistance regarding data collection, analysis, reporting, and the examination of trends over time. The evaluation coordinator presents information and interacts with multiple community stakeholders, including individuals from the Michigan Department of Community Health, the Michigan Department of Mental Health, the Michigan State Housing Development Authority, the Michigan Office of Drug Control Policy, and with local community leaders and groups. The evaluation coordinator's responsibilities also includes strategic planning; conducting a competitive process to identify an independent evaluation consultant; overseeing the work of the independent evaluation consultant; serving as principal link between the independent evaluation consultant and the MPRI; serving as a member of the MPRI performance measures committee; and developing a plan for the ongoing evaluation of the MPRI.

Other Selected Research Projects:
- Jail Monitoring of Juvenile Detainees for the Department of Human Services, Bureau of Juvenile Justice - Responsible for conducting 75 site visits to selected county jails, adult lockups, juvenile detention homes, and locked state and private institutions, and (b) developing a procedures manual that provides specific guidance for conducting site visits to county jails, adult lockups, juvenile detention homes, and locked state and private institutions for the purpose of monitoring and collecting of data regarding the de-institutionalization of status offenders, removal of juveniles from adult jails and lock-ups, and separation of juveniles from adult detainees.

- Michigan Juvenile Crime Analysis Project for the Department of Human Services, Bureau of Juvenile Justice - Responsible for providing the Governor's Committee on Juvenile Justice and Michigan communities with a detailed analysis of juvenile crime in Michigan counties. Also responsible for showing the relationship of disproportionate minority contact (DMC) from one contact point to another within communities; completing an assessment report of juvenile crime activity in Michigan; working with Michigan communities to assess and gather DMC data; and for completing a crime analysis report for the State of Michigan.

-Ingham County/City of Lansing, Community Coalition for Youth: Communities that Care Comprehensive Prevention Strategies Title II Data Collection Project - Responsible for ensuring that the data-collection process is carried out effectively through review and modification of existing data-collection tools; developing a common set of data to collect, including age, familial system, gender, race, school status, zip code, frequency of contact with juvenile justice/ human services system, reasons for contact, and indicators of risk; incorporating qualitative and quantitative findings; and reporting findings to partnering agencies.

-Process Evaluation of the Workplace and Community Transition for Incarcerated Youthful Offenders Programs (YOP) - Responsible for documenting and understanding the way in which the YOP was unfolding, to determine whether implementation is occurring as planned, to determine whether unexpected barriers or opportunities were arising, and to determine whether the multiple sites were maintaining fidelity to the YOP model. Responsibilities also included assisting with the development of a logic-model, survey and interview protocols, and a process evaluation report.

▲ *Technical Assistance Coordinator & National Research Team member* [10/02 – 04/08]
Michigan State University & United States Department of Justice; Project Safe Neighborhoods (PSN); School of Criminal Justice, East Lansing, MI

Summary of Responsibilities: Responsible for coordinating and providing technical assistance to United States Attorney Office (USAO) judicial district task forces in the implementation, operation, and assessment of the PSN initiatives. This assistance focuses on all aspects of PSN strategic problem solving including assessing the gun crime problem, implementing strategies, monitoring implementation, and evaluating the impact of PSN. In this context, technical assistance can involve arranging on-site visits using a cadre of experienced individuals involved with PSN and initiating & coordinating peer to peer contacts between districts to discuss strategies, initiatives, collaboration, evaluation, etc. In each instance, technical assistance is tailored to the need of the individual district. In general, this position is responsible for coordinating and assisting technical assistance in the following areas: (a) Strategic Problem Solving, (b) PSN Interventions and Best Practices, and (c) Research, Data Collection, and Evaluation. Specifically, the TA Coordinator can be involved in a number of technical assistance activities including: providing strategic problem training to USAO district task forces, disseminating PSN information, participating in the development of research instruments to measure PSN initiatives, developing Memorandums of Understanding to promote collaboration between law enforcement agencies and research organizations, promoting the sharing of information between districts, addressing data requirement inquiries, arranging meetings and conference calls to discuss PSN initiatives and strategies (including offender notification meetings, lever-pulling meetings, homicide incident reviews, media campaigns, most violent

persons [MVP] lists, etc.). Also been a member of the Department of Justice's "Equipping Teams for Success - Anti-Gang training" (November 2006) and the "Comprehensive Anti-Gang Initiative" (August 2007) training & facilitation teams.

### ▲ *Research Associate*
[10/04 – 9/05] Michigan Public Health Institute, Center for Collaborative Research on Health Outcomes and Policy (CRHOP), Okemos, MI

Summary of Project Responsibilities:
- -Improving Cancer Outcomes in African-Americans Evaluation, Project Leader & Lead Evaluator: Responsible for leading project team meetings, completing IRB/ Privacy applications, providing assistance to grantees/ project partners in complying with data security and privacy sensitive data requirements, provide technical assistance to grantees/ project partners for data collection and evaluation efforts, develop focus group and survey protocols, develop and review evaluation plans, develop study methodologies and write a process evaluation report.

- -Office of Rural Health Policy (ORHP) Evaluation, Research Team member: Assist the CRHOP research team with data abstraction and interpretation, develop data collection instruments, contact grantees to obtain project information, and write, review, and edit sections of two reports for the United States Congress.

- -State Planning Grant, Research Team member: Responsible for programming revisions to the household survey, employer survey, and the key informant interviews; assist with data management, including checking data integrity, outputting, and the transfer of data. Also assist with data analysis, data management, and report writing for two studies designed to examine Michigan's employers and uninsured population.

### ▲ *Juvenile Justice Project Leader, Juvenile Delinquency Prevention Program Evaluation Project*
[12/03 – 12/04] Michigan Public Health Institute, Center for Collaborative Research on Health Outcomes and Policy (CRHOP), Okemos, MI

Summary of Responsibilities: Responsible for the coordination, planning, development, and implementation of the Juvenile Delinquency Prevention Program Evaluation Facilitation Project (JDPPE). This position provided research and evaluation direction and coordination as well as grant compliance and needs assessment assistance for 30 Michigan communities (Title V, Comprehensive Strategy, and Building Restorative Communities). This position also provided technical assistance, expertise and leadership for local program activities and directed a variety of administrative, project management, and program development activities. This included participating in and providing oversight and coordination of training and technical assistance activities, including community site visits, workshops, and annual conferences. This position also maintained regular proactive phone and e-mail communication with assigned communities and ensured the fulfillment of all project reporting requirements, including, but not limited to, project quarterly reports, annual reports, and final reports. Finally, this position provided team-building leadership, group process facilitation, and conflict resolution, when needed.

▲*Research Coordinator* [10/99 – 10/02] Michigan Department of Community Health, Division of Mental Health Quality & Planning; Substance Abuse Prevention Needs Assessment Studies, Lansing, MI

Summary of Responsibilities: Responsible for (a) developing statewide and regional estimates of substance use prevalence and need for prevention for key subgroups of middle and high school-aged adolescents; (b) for demonstrating the linkage between risk factors, substance use, and the need for prevention among youth; (c) assessing substance abuse prevention needs using social indicators; and (d) evaluating the adequacy of the current substance abuse prevention service system in meeting the needs of high-risk population subgroups, including identifying gaps and needs in the system. Provided management, supervision, and coordination of data collection efforts for three substance abuse prevention needs assessment studies: (1) the Michigan Substance Abuse Risk and Protective Factors 2000 Student Survey, (2) the Community Prevention Systems Assessment - COMPSA survey, and (3) the Assessing Substance Use Prevention Needs in Michigan Counties: A Study Using Social Indicators. This position also managed and coordinated the duties of staff members from 2 survey research organizations (Research Triangle Institute and Prevention Network), while monitoring and managing a $950,000 budget. This position was also responsible for contacting and obtaining authorization from approximately 100 school superintendents and principals to participate in a statewide school survey effort. Duties also included preparing data tables, graphs, charts, figures for information dissemination; conducting literature searches; developing workplans, protocols, and quarterly progress reports; designing and managing database tracking systems to monitor school participation, school refusals, survey administration, and the ordering and distribution of school incentives.

▲*Program Coordinator* [8/95 – 10/02] United States Department of Justice, National Institute of Justice, Contractor: Michigan State University; Arrestee Drug Abuse Monitoring (A.D.A.M.) Program; School of Criminal Justice, East Lansing, MI

Summary of Responsibilities: Responsible for the day to day operations of the Detroit/ Wayne County Arrestee Drug Abuse Monitoring (ADAM) program. This included recruiting law enforcement agencies to participate in the ADAM program, training and supervising interviewers, scheduling and coordinating data collection at 6 Wayne County detention facilities, obtaining supplies, preparing questionnaire materials, editing data, coordinating the activities of security officers, packaging and shipping questionnaires and specimens, and conducting face to face interviews with arrestees (when necessary). Hired, trained, and managed a staff of 15 to 20 facility supervisors and interviewers. This position was also responsible for requesting and presenting information and data to the Executive staffs of the 56 Detroit/ Wayne County law enforcement agencies.

▲*Associate Project Coordinator* [6/00 – 12/02] Michigan Department of Community Health, Office of Drug Control Policy; System Responses to Substance Abuse Treatment Needs among Offenders; Lansing, MI

Summary of Responsibilities: Provided supervision of data collection, training of interviewers, and coordination of the research process for a joint treatment needs assessment project between the Michigan Department of Community Health and the Michigan State University, School of

012797

Criminal Justice. Participated in a collaborative effort to develop a research addendum to the existing ADAM (Arrestee Drug Abuse Monitoring) interview instrument. Arranged, coordinated, and supervised the pre-testing of the research addendum. Scheduled and coordinated data collection at 3 Detroit Police Department precincts. Collaborated with executive-level police officers and court officials to determine the most effective and efficient method of tracking arrestees through the Wayne County judicial system.

▲ Intern to the Special Agent in Charge [5/98 - 9/98] Department of the Treasury, United States Customs Service, Office of Investigations, Detroit, MI

Summary of Responsibilities: As an intern for the US Customs Service I wrote case reports, used Treasury databases to track the border crossings of subjects, documented wire tap information, sat in on informant interviews, and shadowed agents as they conducted surveillance, sting operations, and border and airport terminal searches. I also created tables and graphs to document the money connection of a smuggling conspiracy case. I also collaborated with the Resident Agent in Charge (RAC) from another federal investigative agency on a smuggling conspiracy case, and I was granted security clearance to access to the Treasury Enforcement Communications System (T.E.C.S.), the National Criminal Information Center (N.C.I.C.), and the Special Investigative Unit Support System (S.I.U.S.S.). I was also granted Disclosure of Grand Jury Material, Granted by the United States Attorney, Eastern District of Michigan.

## Select Research Appointments
▲ *Research Associate* [6/99 – 9/99] Michigan Department of Community Health, Bureau of Substance Abuse Services: Lansing, MI; Treatment Needs Assessment Studies; Lansing, MI

Summary of Responsibilities: Performed activities for the Michigan substance abuse treatment needs assessment studies, including assisting in the management and analyses of the needs assessment studies data, producing reports from the Michigan Family of Treatment Needs Assessment Studies, producing tables/charts and/or graphs to display statistical results and/or concepts. Also performed literature reviews and participated in the development of scientific manuscripts related to the studies.

▲ *Research Assistant* [6/97 - 9/97] MSU School of Criminal Justice, Justice Research Statistics Association (JRSA), Homicide Incidents Study; Michigan State University; School of Criminal Justice, East Lansing, MI

Summary of Responsibilities: Examined crime scene photos, evidence, and reports for approximately 70 homicide cases for a National study investigating patterns of homicide incidents in the city of Detroit, Michigan. This position was responsible for determining and documenting: (1) what the first officer on the scene did to preserve the crime scene, (2) who collected and preserved the physical evidence, (3) the circumstances that led to the homicide, (4) the offenders relationship with the decedent, (5) what injuries were caused to the decedent, and (6) what, if any, weapon(s) were used to cause the injuries to the decedent. Records for this study were provided by the Detroit Police Department's Homicide Unit.

▲ *Program Evaluator* [5/95 - 8/95] Detroit Public School System, Violence Intervention Curriculum; Michigan State University; School of Criminal Justice, East Lansing, MI

Summary of Responsibilities: Conducted face-to-face interviews with middle school children and documented their responses pertaining to the effectiveness of their schools conflict resolution and peer mediation initiatives. Responsible for distributing attitude assessment questionnaires to students in a multiple classrooms, in 4 middle schools. Also responsible for editing and cleaning the data from the completed interviews.

▲ *Criminal Law Research Assistant* [8/94 - 5/95] MSU School of Criminal Justice; 560 Baker Hall, East Lansing, MI

Summary of Responsibilities: Wrote legal briefs. Researched criminal justice related Supreme Court decisions and opinions. Assisted in the preparation of legal materials and briefs for journal publication. Assisted in a project which was designed to explore States perspectives on federal habeas corpus reform.

▲ *Case Management Analyst* [3/94 - 8/94] National Council on Crime and Delinquency, Child Protective Services; Lansing, MI 48909

Summary of Responsibilities: Reviewed child abuse and child neglect cases in 7 Michigan counties for a national research study. Audited and analyzed approximately 100 Department of Child Protective Services case files to abstract and describe: (1) the number of children involved in the case, (2) the alleged abuse that took place, (3) the type of support that existed within the family, (4) the identification of the alleged perpetrator, (5) the involvement and referrals made by the case manager, and (6) the risk of future abuse or neglect.

## Professional Training

Project Management course. (July 2012). This course provided direction on how to organize projects, track costs and time expenditures, manage quality and risk, evaluate human resources requirements and overcome potential obstacles. This course also provided an understanding of how to use the Road Map to Good Project Management and apply the most important tools and techniques needed to plan and manage projects. This course was aligned with the Project Management Institute's *Project Management Body of Knowledge (PMBOK®) Guide-4th Edition*, which covers all of the related best practices. 24 Professional Development Units (PDUs). Administered by: Graduate School USA.

Contracting Officer's Representative Course. (November 2011). This comprehensive training was designed to provide personnel with knowledge of the federal acquisition process as well as the knowledge and skills to execute their responsibilities as a representative of the contracting officer, including Contracting Officer's Representatives (CORs), Contracting Officer's Technical Representatives (COTRs), Technical Officers (TOs), and Project Officers (POs). This training focused on: (a) describing the COR's role and authority in the acquisition process; (b) participating in acquisition planning, contract formation, and contract administration; (c)

developing a contract administration plan; (d) maintaining appropriate documentation and communications; (e) monitoring contract performance; and (f) assisting the contracting officer with processing changes, equitable adjustments, claims, disputes, and appeals. 40 Professional Development Units (PDUs). Administered by: Management Concepts.

Microsoft SharePoint 2010 Fundamentals. (October 2011). This training focused on: (a) the basic components of the SharePoint family of products; (b) understanding the different kinds of sites available in SharePoint; (c) working with document libraries to store, track and edit documents; (d) working with lists and views to store and view information; and (e) describing the SharePoint Search functionality. 7 Professional Development Units (PDUs). Administered by: ONLC Training Centers.

Workshop: Designing and Leading Randomized Field Experiments. (November 2010). This workshop provided expert insight into designing and leading randomized trials. Presenters discussed the problems and pitfalls that they have faced in conducting randomized field experiments in criminal justice system settings. In addition, they presented specific solutions that they have applied to these problems and pitfalls, and provided more general strategies for developing solutions to barriers to the implementation of randomized experimental designs. Held by the Division of Experimental Criminology, within the American Society of Criminology.

Grant Management System (GMS) Redbook Training. (March 2009). This training covered the steps and actions that are required to take place between the Office of Justice Program's (OJP) decision to fund an application and the final approval and acceptance of that funding.

Concept Mapping in Evaluation (January 2009). This training covered a state-of-the-art, comprehensive, integrated and structured approach to organizing the ideas of stakeholders, special interest groups, organizations or constituencies and bringing these diverse perspectives together in developing a common frame of important issues, needs and priorities that can then be used for planning, program development, implementation and evaluation.

Workshop: Logic Model Development (November 2008). American Evaluation Association One-Day Workshop. This workshop presented two broad topics that were intended to increase the value of using logic models: (1) an expanded view of what forms logic models can take, and (2) the knowledge and issues related to logic modeling.

Workshop: How to Estimate the Effects of Interventions (November 2008). American Evaluation Association One-Day Workshop. This workshop explored how to design program evaluations in order to produce the most credible estimates of treatment effects that can be obtained under the many imposing constraints of field settings.

Grant Management System (GMS)– Certificate Training. (May – June 2008). This training covered: Overview of GMS; Application/award processing; Grant Adjustment Notices; Progress Reports; Site Visits; Closeouts; and Read only and Financial Status Reporting

Ethics Training. (June 2008). Administered by the U.S. Department of Justice.

Computer Security Training. (April 2008). Administered by the U.S. Department of Justice.

Microsoft Access 2000 – Level 2. (August 2003). Conducted by the Libraries, Computing, and Technology Department, Michigan State University. Building on the Access Level 1 course Access Level 2 was a more detailed look at various features of tables, queries, forms and reports. This course provided an opportunity to experience first-hand the benefits of related tables, advanced queries (select and action), creating calculated controls, and customizing forms and reports.

Microsoft Access: Queries & Reports. (July 2003). Conducted by the Libraries, Computing, and Technology Department, Michigan State University. This class covered the basics of how to select and action queries plus parameter and calculation queries. The reports component covered how to create sub-reports, insert graphics, create calculations, and how to base a report on a query.

Microsoft Access 2000 – Level 1 & Microsoft Access Database Design. (May 2003). Conducted by the Libraries, Computing, and Technology Department, Michigan State University. This training seminar introduced to the four main objects (tables, queries, forms, and reports) of a Microsoft Access database. The primary focus of this hands-on course was creating structurally sound tables. Relationships were defined between tables to promote data integrity. Select queries, forms and reports were also introduced.

An Introduction to the Reid Technique of Interviewing and Interrogation - Certified Training Seminar. (April 2002). Conducted by John E. Reid and Associates, Inc. This seminar covered Proxemics; Interviewer & Interrogator Profiling; Behavior Symptom Analysis; The Reid Behavioral Analysis Interview (BAI); and The Reid 9 Steps on Interrogation.

## Publications, Technical Reports, & Issue Briefs

O'Donnell, D., Griffith, A. E., & Banks, C. E. (2012). Probation Supervision: Building Capacity in Community Corrections. Journal of Crime & Justice, 35:2, 145-148.

Corley, C., Banks, C.E., Elam, P., & Rydberg, J. Michigan's Statewide Juvenile Crime Analysis Report. Research Report prepared by Public Policy Associates, Inc. for the Michigan Department of Human Services, Bureau of Juvenile Justice. Lansing, MI: March 2008.

Elam, P., Arnovitz, E., Burrough, R., Duran, L., & Banks, C. E. Taking Action on Housing: A ReEntry Issue Brief. Prepared by Public Policy Associates, Inc. for the Michigan Department of Corrections. Lansing, MI: October 2007.

Hwalek, M., Banks, C. E., Bynum, T., Davidson, W., & Padden, J. Process Evaluation of Michigan's Youthful Offender Program. Research Report prepared by Public Policy Associates, Inc. for the Michigan Department of Corrections, Office of Correctional Education. Lansing, MI: January 2007.

Banks, C. E., Smeltzer, M., Jones, J., & Martin, A. Improving Cancer Outcomes in African Americans in Michigan: Evaluation Report. Prepared by the Center for Collaborative Research in Health Outcomes & Policy (CRHOP), at the Michigan Public Health Institute (MPHI), for the Michigan Department of Community Health (MDCH). Okemos, MI: September 2005.

Calkins, R. F., Banks, C. E., & Weimer, B. Assessing Substance Use Prevention Needs in Michigan Counties: A Study Using Social Indicators. State of Michigan/ Michigan Department of Community Health, Division of Quality Management & Planning. Lansing, MI: September 2002.

Calkins, R. F., Banks, C. E., Greene, J., & Weimer, B. The Michigan Substance Abuse Risk & Protective Factors 2000/2001 Student Survey: Public School Results. State of Michigan/ Michigan Department of Community Health, Division of Quality Management & Planning. Lansing, MI: May 2002.

Calkins, R. F. & Banks C. E. (November 2000). Michigan's Prevention Needs Assessment Studies: Alcohol and Other Drugs (Part 2 of 2). Prevention Network News, Volume 3, Issue 7, p. 4.

Banks, C. E. (October 2000). Michigan's Prevention Need Assessment Studies: Alcohol and Other Drugs (Part 1 of 2). Prevention Network News, Vol. 3, Issue 6, p.5.

Thayer, J. & Banks C. E. (May 2000). Prevention Needs of School-Age Youth in Michigan. Prevention Network News, Vol. 3, Issue 3, p. 4.

Aktan, G. B., Calkins, R. F., & Banks, C. E. Social Indicators Modeling for Substance Abuse Treatment Needs Assessment: Substance Abuse Need Index (SANI). State of Michigan/ Michigan Department of Community Health, Bureau of Substance Abuse Services. Lansing, MI: September 1999.

Aktan, G. B., Calkins, R. F., & Banks, C. E. Social Indicators Modeling for Substance Abuse Treatment Needs Assessment: Substance Abuse Indicators for Community Health Assessment. State of Michigan/ Michigan Department of Community Health, Bureau of Substance Abuse Services. Lansing, MI: September 1999.

Bynum, T., O'Connell, T., Becker, N. & Banks, E. (1997). Site Reports: Detroit. 1996 Drug Use Forecasting: Annual Report on Adult and Juvenile Arrestees. Washington, DC: National Institute of Justice.

*Protocol Development & Executive Summaries*

Rural Health Network Development: Grantee Information from Contact Calls. Summary
Report. Produced by the Center for Collaborative Research in Health Outcomes & Policy
(CRHOP), at the Michigan Public Health Institute. Submitted to the Office of Rural
Health Policy (ORHP), Health Resources and Services Administration (HRSA) and the
Georgia Health Policy Center (GHPC). June 2005.

Correctional Health Care Issues in Michigan. Concept Paper. Submitted to the Michigan
Department of Corrections. May 2005.

Calkins, R. F., Banks, C. E., & Weimer, B. (January 2002). State Demand and Needs Assessment
Studies: Alcohol and Other Drugs. Protocol for Study 2: Assessing Prevention Need
Using Social Indicators. Submitted to the Substance Abuse and Mental Health Services
Administration, Center for Substance Abuse Prevention (Contract No. 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).

Calkins, R. F., Banks, C. E., Greene, J., & Rachal, J. V. (April 2000). State Demand and Needs
Assessment Studies: Alcohol and Other Drugs. Protocol for Study 1: Prevention Needs
of School-Aged Youths in Michigan. Submitted to the Substance Abuse and Mental
Health Services Administration, Center for Substance Abuse Prevention (Contract No.
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).

Calkins, R. F., Banks, C. E., Taylor, S., Thayer, J., Dalberth, B., & Ringwalt, C. (April 2000).
State Demand and Needs Assessment Studies: Alcohol and Other Drugs. Protocol for
Study 3: Michigan's Community Prevention Systems Assessment (COMPSA).
Submitted to the Substance Abuse and Mental Health Services Administration, Center
for Substance Abuse Prevention (Contract No. 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).

Composite Prevalence Estimates of the Need for Substance Abuse Treatment Services in
Michigan. Executive Summary. State of Michigan/ Michigan Department of Community
Health, Bureau of Substance Abuse Services.  Lansing, MI:  September 1999.

The 1995 Michigan Drug and Alcohol Population Survey (MDAPS): Risk Factors for Substance
Abuse and Need for Treatment. Executive Summary. State of Michigan/ Michigan
Department of Community Health, Bureau of Substance Abuse Services. Lansing, MI:
September 1999.


*Acknowledged for Assistance*

McGarrell, E. F., Hipple, N. K., Corsaro, N., Bynum, T. S., Perez, H. P., & Garmo, M. (February
2009).  Project Safe Neighborhoods: A National Program to Reduce Gun Crime: Final
Project Report. Submitted to the National Institute of Justice, U.S Department of
Justice: Washington, DC.

Report to Congress: Report on Rural Health Care Services Outreach Grant Program. (July 2005).
Prepared by: Office of Rural Health Policy U.S. Department of Health and Human
Services.

Report to Congress: Report on Rural Health Network Development Grant Program. (July 2005).

Prepared by: Office of Rural Health Policy U.S. Department of Health and Human Services.

Smith, C. E. (1997). Courts, Politics, and the Judicial Process, (2nd Ed). Chicago, Illinois: Nelson-Hall.

Smith, C. E. (1995). Federal Habeas Corpus Reform: The State's Perspective. The Justice System Journal 18: 1-11.


## Presentations, Panels, & Group Trainings

Banks, C.E. (March 2012). Opening Remarks. Department of Justice's HOPE DFE Training & Technical Assistance Kick-Off meeting. First Circuit Court, Honolulu, HI

Banks, C.E. (January 2012). Webinar Facilitator & Presenter. Second Chance Act: Demonstration Field Experiment – Fostering Desistance through Effective Supervision. United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance. Washington, DC.

Banks, C. E. (June 2011). Webinar Facilitator. Honest Opportunity Probation with Enforcement: Demonstration Field Experiment – What is the Hawaii HOPE model? United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance. Washington, DC.

Griffith, E., & Banks, C. E. (May 2011). Co-Facilitator. Local Perspectives to TTA: How to Ensure Readiness, Receptivity, and Need. Session at the 2011 BJA Training and Technical Assistance Grantee meeting. Arlington, VA.

Tuthill, L., & Banks, C. E. (September 2009). Using Data to Develop and Enhance Evidence-Based Strategies. Presented at the Governors Highway Safety Association (GHSA) Annual Meeting: Savannah, GA.

Dennis, G., & Banks, C. E. (December 2008). Group Facilitator. ReEntry Research Roundtable. United States Department of Justice, Office of Justice Programs, Bureau of Justice Assistance.

Banks, C. E. (Moderator), Mears, R., Owens, C., & Pryor, S. L. (September 2008). Task Force Performance, Training, and Technical Assistance. United States Department of Justice, 4th Annual Conference on Human Trafficking: Atlanta, GA.

Elam, P., Banks, C. E., Corley, C., & Rydberg, J. (November 2007). 2005 Michigan Crime Analysis: Preliminary Findings. Presented to the Michigan Governor's Committee on Juvenile Justice & the Michigan Department of Human Services, Bureau of Juvenile Justice: Lansing, MI.

Banks, C. E., Beam, K., Bender, J., Drake, H., Hobson, R., Matthews, W., Trotter, J., Wilkinson, J., & Wright, A. (September 2007). Overview of PSN Training and Technical Assistance

Opportunities. United States Department of Justice, Project Safe Neighborhoods National Conference. Atlanta, GA.

Bynum, T. & Banks, C. E. (August 2007). Group Facilitators. Project Safe Neighborhoods: Comprehensive Anti-Gang Initiative. Eastern District of North Carolina. Washington, DC.

Corley, C., Banks, C.E., & Elam, P. (July 2007). Proposed Statewide Juvenile Crime Analysis Methodology. Presented to members of the Michigan Governor's Committee on Juvenile Justice & the Michigan Department of Human Services, Bureau of Juvenile Justice: Lansing, MI.

Elam, P., Banks, C. E., Beard, V., & Padden, J. (November 2006). Ingham County/City of Lansing, Community Coalition for Youth: Communities that Care Comprehensive Prevention Strategies Title II Data Collection Project. Meeting held at the Lansing Police Department. Lansing, MI

Faley, J. & Banks, C. E. (November 2006). Group Facilitator. Project Safe Neighborhoods: Super Six Gang Workshop. Fiscal Agents for the United States Attorney's Office Gang Initiative. Dallas, TX.

Mock, L. & Banks, C. E. (November 2006). Group Facilitator. Project Safe Neighborhoods: Super Six Gang Workshop. United States Attorney's Office, Central District of California. Dallas, TX.

Bynum, T., Davidson, W., Duran, L., Padden, J., & Banks, C. E. (September 2006). Michigan Prisoner ReEntry Initiative (MPRI): Introduction to the Evaluation of MPRI. Michigan Department of Corrections, Community Coordinator and Co-Chair meeting. Lansing, MI.

Banks, C. E., Beam, K., Bender, J., Drake, H., Hobson, R., Kovener, M., Matthews, W., Muller, N., Trotter, J., Wilkinson, J., & Wright, A. (May 2006). Overview of PSN Training and Technical Assistance Opportunities. United States Department of Justice, Project Safe Neighborhoods National Conference. Denver, CO.

Banks, C.E., Thompson, M., & Martin, A. (March 2005). Improving Cancer Outcomes in African Americans 2004-2005: Evaluation Plan. Michigan Public Health Institute (MPHI). Okemos, MI.

Banks, C. E. (February 2004). Presenter & Facilitator. Michigan Title V, Comprehensive Strategies, & Building Restorative Communities: Annual Conference. Michigan Public Health Institute (MPHI) & Michigan's Family Independence Agency (FIA). Lansing, MI.

Banks, C. E. (March 2003). National Trainer. Project Safe Neighborhoods: Strategic Problem Solving Training. United States Attorney's Office, Southern District of West Virginia task force. Chantilly, VA.

Banks, C. E. (February 2003). National Trainer. Project Safe Neighborhoods: Strategic Problem Solving Training. United States Attorney's Office, District of Puerto Rico task force. Destin, FL.

Banks, C. E. (December 2002). National Trainer. Project Safe Neighborhoods: Strategic Problem Solving Training. United States Attorney's Office Eastern District of Oklahoma task force. Los Angeles, CA.

Banks, C. E. (November 2002). National Trainer. Project Safe Neighborhoods: Strategic Problem Solving Training. United States Attorney's Office Northern  District of Mississippi task force. Destin, FL.

Banks, C. E. (October 2002). National Trainer. Project Safe Neighborhoods: Strategic Problem Solving Training. United States Attorney's Office Western District of Wisconsin task force. Chicago, IL.

Banks, C. E. (October 2002). National Trainer. Project Safe Neighborhoods: Strategic Problem Solving Training. United States Attorney's Office Northern District of Indiana task force. Chicago, IL.

Calkins, R. F. & Banks. C. E. (May 2001). The Current Status of the Prevention Needs Assessment Studies Project in the State of Michigan. Presented at the Center for Substance Abuse Prevention (CSAP) State Site Review Meetings. Michigan Department of Community Health, Lansing, MI.

Calkins, R. F., Aktan, G., & Banks, C. E. (March 2001). Substance Abuse Needs Assessments For Solving Substance Abuse Problems. Presented at the 10th Annual Information Integration Conference. Kellogg Center, East Lansing, MI.

Calkins, R. F., & Banks, C. E. (October 1999). Overview of the Michigan Prevention Studies and Workplan. Presented at the Center for Substance Abuse Prevention 1999 Fall Needs Assessment Contractors Workshop. Washington, DC.

Banks, C. E., & Calkins, R. F. (October 1999). The Future of Substance Abuse Prevention Needs Assessment in Michigan: The Direction and Goals for the State. Presented at the Center for Substance Abuse Prevention 1999 Fall Needs Assessment Contractors Workshop. Washington, DC.


## Committees, Professional Affiliations, & Academic Organizations

Institutional Review Board (IRB), Department of Justice, Office of Justice Programs, October 2011 – Present.

Crime Solutions.gov Working Group, Department of Justice, Office of Justice Programs, October 2011 – Present.

Office of Justice Programs' Diagnostic Center Working Group, Department of Justice, Office of Justice Programs, February 2012 – June 2012.

Co-Chairperson, Evidence Integration Team [*Gangs*], Department of Justice, Office of Justice Programs, Office of the Assistant Attorney General, June 2010 – February 2011.

Advisory Board, Evidence-Based Decision-Making in Local Criminal Justice Systems. National Institute of Corrections, November 2009 – December 2010.

Evidence Standards Team, Department of Justice, Office of Justice Programs, Office of the Assistant Attorney General, October 2009 – March 2010.

Data Collection & Analysis Workgroup, Data-Driven Approaches to Crime and Traffic Safety (DDACTS) Initiative; Department of Transportation, National Institute of Justice (NIJ), & the Bureau of Justice Assistance (BJA), October 2009 – February 2011.

Implementation Team, Data-Driven Approaches to Crime and Traffic Safety (DDACTS), Department of Transportation, National Institute of Justice (NIJ), & the Bureau of Justice Assistance (BJA), September 2009 – January 2011.

Leadership Working Group – Evidence Based Practice, United States Department of Justice, Office of Justice Programs, Office of the Assistant Attorney General, April – May 2009.

"Generating Evidence" for Evidence-Based Practice sub-workgroup, United States Department of Justice, Office of Justice Programs, Office of the Assistant Attorney General, April – May 2009.

"Assembling Existing Evidence" for Evidence-Based Practice sub-workgroup, United States Department of Justice, Office of Justice Programs, Office of the Assistant Attorney General, April - May 2009.

Project Safe Neighborhoods Policy Review Committee, United States Department of Justice, Facilitated by the Deputy Assistant Attorney General (Office of Legal Policy), March 2009.

Peer Review Committee, United States Department of Justice, Bureau of Justice Assistance, *Program Measurement, Training, and Technical Assistance*, August 2008.

Performance Measures Business Process Improvement Design Group, United States Department of Justice, Office of Justice Programs, May 2008 – January 2009.

Performance Measures Committee, Michigan Prisoner ReEntry Initiative (MPRI), Michigan Department of Corrections, April 2006 – December 2006.

Chairperson, Grant Review & Award Selection Committee, Independent Evaluator for the
   Michigan Prisoner ReEntry Initiative (MPRI). Public Policy Associates, Inc. and the
   Michigan Department of Corrections, 2005 - 2006.

Community Interface Workgroup,
   State of Michigan Planning Project for the Uninsured, Summer/ Fall 2005.

Chairperson, Research and Project Development Task Force,
   Center for Collaborative Research in Health Outcomes & Policy,
   Michigan Public Health Institute, 2004-2005

Chairperson, Grant Review & Award Selection Committee, Michigan's Title V Juvenile Justice
   Initiative. Juvenile Justice Grants Unit, Family Independence Agency (JJGU-FIA) and
   Michigan Public Health Institute, 2004

## *Honors, Awards, & Accomplishments*

Department of Justice Recognition for Performance, October 2010,
   Special Act Award – for providing Leadership, from BJA, for the Assistant Attorney
   General's Evidence Integration Initiative (E2I)

Department of Justice Recognition for Performance, October 2010
   Awarded for working with the Department of Justice's research agency, the National
   Institute of Justice (NIJ), by bringing a practical practitioner perspective to awarding
   contracts to conduct applied  research, for reviewing publications, and for providing
   comments and recommendations on funding proposals.

Department of Justice Recognition for Performance, September 2009
   Special Act Award - for participating in the development and management of the BJA
   Performance Measurement Tool (PMT).

Department of Justice Recognition for Performance, September 2009
   Awarded for providing assistance with grant processing, peer-review, and red-booking
   for the American Recovery and Reinvestment Act of 2009.

Department of Justice Recognition for Performance, February 2009
   Awarded for providing assistance with the development of the Second Chance Act
   prisoner reentry initiative's solicitation, logic models, and performance measures.

Department of Justice Recognition for Performance, January 2009
   Awarded for providing assistance with the management and development of BJA
   performance measures.

Recognition from the Associate Attorney General, September 2008
   Assisted BJA's Policy Office in collecting information from 16 police departments across
   the nation that were identified as having an increase in violent crime. Was able to

quickly research the needed information from research reports and news sources regarding the 16 cities, and then compile a high-quality product.

Passed the Treasury Enforcement Agent (TEA) Exam, 2002
> Taken at the Detroit, Michigan Field Office.

Passed the Federal Bureau of Investigation (FBI) Special Agent Applicant Exam, 1999
> Taken at the Detroit, Michigan Field Office.

Certificate of Appreciation, 1998
> Issued by the Department of the Treasury, United States Customs Service.
> In recognition of and appreciation for noteworthy contribution to the effective and efficient operation of the Special Agent in Charge, Detroit, Michigan.

Committee on Institutional Cooperation Fellow, 1998
> Awarded by Michigan State University and the Committee on Institutional Cooperation for professional and academic excellence.

Minority Competitive Doctoral Fellowship, 1996-1998
> Awarded by Michigan State University.

Summer Acceleration Fellowship, 1996
> Awarded by The Graduate School, Michigan State University.

Overseas Study Minority Student Scholarship, 1994
> Awarded by the Council for International Studies and Programs, Michigan State University.

Alpha Phi Sigma, 1993
> Recognized member of the National Criminal Justice Honor Society.

Certificate for Outstanding Performance, 1993
> Awarded by the Center for Learning and Achieving Students, State of Hawaii Department of Health.

## Federal Law Enforcement Certifications

Disclosure of Grand Jury Material, Granted by the United States Attorney, Eastern District of Michigan: Detroit, MI. (1998)

Treasury Enforcement Communications System (T.E.C.S.), U. S. Department of the Treasury (1998)

National Criminal Information Center (N.C.I.C.), U. S. Department of Justice (1998)

Special Investigative Unit Support System (S.I.U.S.S.), Office of the Special Agent in Charge, United States Customs Service: Detroit, MI. (1998)

012809

## Community Service & Volunteer Work

<u>Supervisor and Counselor</u> [6/93 - 8/93] Center for Learning & Achieving Students, Department of Health: Honolulu, HI.

<u>Offender Development Assistant</u> [1/93 - 5/93] Crossroads Youth Offender Program, Peckham Vocational Industries, Inc.: Lansing, MI.

<u>Volunteer Probation Officer</u> [8/92 - 5/93] Juvenile Diversion Programs, Ingham County Probate Court: Lansing, MI.

<u>Counselor</u> [5/92 - 8/92] Summer Enrichment Program, Ingham County Probate Court: Lansing, MI.

## Computer Skills

Proficient with MS Office products Word, Excel, Powerpoint, and Access. Also proficient utilizing Corel and SPSS software applications.

## References

Dr. Edmund McGarrell, Director & Professor
    Michigan State University, School of Criminal Justice
    517/355-2197

Dr. Tim Bynum, Professor & Researcher
    Michigan State University, School of Criminal Justice
    517/355-2197

Dr. William S. Davidson, Distinguished Professor
    Chair, Ecological Community Psychology
    Editor, American Journal of Community Psychology
    Michigan State University
    517/353-5015

Dr. Paul Elam, Project Manager
    Public Policy Associates, Inc.
    517/485-4477

Dr. Faye Taxman, Professor
    George Mason University, Administration of Justice
    703/993-8555

012810

## Personal Information

| | |
|---:|:---|
| **NAME** | Clarence E Banks II |
| **COUNTRY** | United States of America |
| **OTHER COUNTRY** | |
| **CITY** | Washington |
| **STATE / PROVINCE** | Dist of Columbia |
| **ZIP** | |
| **DAYTIME PHONE NUMBER** | |
| **EVENING PHONE NUMBER** | |
| **CELL PHONE NUMBER** | |
| **PAGER NUMBER** | |
| **INSTANT NOTIFICATION ADDRESS** | |
| **FAX NUMBER** | |
| **E-MAIL ADDRESS** | |

## Work History

| Job Title | Employer | Salary | Start date | End Date | Federal Job (Y/N) | Pay Plan | Series | Grade |
|---|---|---|---|---|---|---|---|---|
| Knowledge Management Coordinator | Department of Justice, Bureau of Justice Assistance | | 4/28/2008 | Present | Y | GS | 0343 | 15 |

Was this the highest grade held on a permanent basis in the competitive service:  Yes

This was a supervisory position: no

The promotion potential grade or full performance level of this position  15

Location: (State, City, Country)  Washington, Dist of Columbia, United States of America

Supervisor Name:  Elizabeth Griffith    Phone:    Email:
Permission to contact supervisor granted.

012811

*Serve as the BJA subject matter expert on the disciplines, techniques, and best practices of program review, evidence-based programming, program assessment, program evaluation, and evidence integration. Periodically serve as the Acting Associate Deputy Director for Policy (Strategic Initiatives) in my supervisors absence. Serve as a member of the Bureau of Justice Assistance (BJA) & National Institute of Justice (NIJ) Leadership Team. Serve as the Agency Lead on OJPs Demonstration Field Experiment (DFE), Randomized Control Trial (RCT) portfolio. This portfolio includes the Second Chance reentry program & the Hawaii HOPE (probation and enforcement) program. Manage key agency projects that focus on: program evaluation & performance measurement; cost-benefit analysis; and offender risk, needs, and responsivity. Served on the Assistant Attorney Generals Evidence Integration Initiative (E2I) team, which included co-chairing the Evidence Integration Team focused on Gangs.*

*Agency Lead: Demonstration and Evaluation of HOPE: An Innovative Probation Program*
*The Bureau of Justice Assistance (BJA) and the National Institute of Justice (NIJ) are teaming up to replicate Hawaii's Opportunity Probation with Enforcement (HOPE). NIJ will fund an evaluation of the BJA demonstration sites. This Demonstration Field Experiment (DFE) will rigorously test whether the HOPE probation model can promote the successful completion of probation for high-risk probationers. DFE sites will be asked to examine risk assessment scores, criminal histories, and prior behavior on probation to determine which probationers are high-risk for failing probation through drug use, missed appointments, and/or re-offending. After the pool of high-risk probationers has been determined, they will be randomized into one of the following groups: (a) HOPE probation, or (b) probation as usual.*

*Agency Lead: Second Chance Act Demonstration Field Experiment: Fostering Desistance through Effective Supervision*
*BJA will fund up to four demonstration sites to test a crime desistance-based reentry model. This project is a collaborative effort among BJA, the National Institute of Justice (NIJ), and the National Institute of Corrections (NIC). BJA will fund the demonstration sites, NIJ has funded the evaluation, and NIC will coordinate and facilitate the training, technical assistance, and coaching to the sites. This DFE will consist of a randomized controlled trial (RCT), where the parole officers will be randomized into treatment and control groups, and the parolee participants will be randomized into treatment and control groups. In order to generate new knowledge about effective solutions for working with offenders in the community and to enhance practice, this DFE will be focused on examining the community-based components of a comprehensive reentry strategy. This DFE will also examine how post-release interactions, programs, services, and activities impact parolees. The results from this DFE are expected to enhance the knowledge base for working with post-release offenders in the community.*

*Agency Lead: Womens pathways to Jail: The roles and intersections of serious mental illness and trauma*
*BJA has funded Idaho State University to examine the prevalence of mental illness among women in jails, and the pathways to jail for women with and without mental illness.*

*Agency Lead: Risk, Needs, & Responsivity (RNR) simulation tool*
*BJA has funded George Mason University (GMU) and the University of Massachusetts-Lowell (UML) to develop a Risk, Needs, & Responsivity (RNR) simulation tool. This RNR simulation tool is being developed to help federal, state and local jurisdictions assess their current system, identify gaps and prioritize both services and controls (drug testing, electronic monitoring, etc.) based on desired outcomes*

---

| Senior Research Associate & Michigan Prisoner ReEntry Initiative (MPRI) Evaluation Coordinator | Public Policy Associates, Inc | 10/ 1/ 2005 | 4/1/2008 | N |
|---|---|---|---|---|

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Lansing, Michigan, United States of America

Supervisor Name:                    Phone:                    Email:

Permission to contact supervisor granted.

Working in collaboration with the National Institute of Corrections, the Michigan Department of Corrections, the Michigan Council on Crime and Delinquency, and with Michigan communities the MPRI (Michigan Prisoner ReEntry Initiative) evaluation coordinator provides expert technical assistance regarding data collection, analysis, reporting, and the examination of trends over time. The evaluation coordinator presents information and interacts with multiple community stakeholders, including individuals from the Michigan Department of Community Health, the Michigan Department of Mental Health, the Michigan State Housing Development Authority, the Michigan Office of Drug Control Policy, and with local community leaders and groups. The evaluation coordinator's responsibilities also includes strategic planning; conducting a competitive process to identify an independent evaluation consultant; overseeing the work of the independent evaluation consultant; serving as principal link between the independent evaluation consultant and the MPRI; serving as a member of the MPRI performance measures committee; and developing a plan for the ongoing evaluation of the MPRI.

Other Selected Research Projects:
- Jail Monitoring of Juvenile Detainees for the Department of Human Services, Bureau of Juvenile Justice - Responsible for conducting 200 site visits to selected county jails, adult lockups, juvenile detention homes, and locked state and private institutions, and (b) developing a procedures manual that provides specific guidance for conducting site visits to county jails, adult lockups, juvenile detention homes, and locked state and private institutions for the purpose of monitoring and collecting of data regarding the de-institutionalization of status offenders, removal of juveniles from adult jails and lock-ups, and separation of juveniles from adult detainees.

- Michigan Juvenile Crime Analysis Project for the Department of Human Services, Bureau of Juvenile Justice - Responsible for providing the Governors Committee on Juvenile Justice and Michigan communities with a detailed analysis of juvenile crime in Michigan counties. Also responsible for showing the relationship of disproportionate minority contact (DMC) from one contact point to another within communities; completing an assessment report of juvenile crime activity in Michigan; working with Michigan communities to assess and gather DMC data; and for completing a crime analysis report for the State of Michigan.

-Ingham County/City of Lansing, Community Coalition for Youth: Communities that Care Comprehensive Prevention Strategies Title II Data Collection Project - Responsible for ensuring that the data-collection process is carried out effectively through review and modification of existing data-collection tools; developing a common set of data to collect, including age, familial system, gender, race, school status, zip code, frequency of contact with juvenile justice/ human services system, reasons for contact, and indicators of risk; incorporating qualitative and quantitative findings; and reporting findings to partnering agencies.

-Process Evaluation of the Workplace and Community Transition for Incarcerated Youthful Offenders Programs (YOP) - Responsible for documenting and understanding the way in which the YOP is unfolding, to determine whether implementation is occurring as planned, to determine whether unexpected barriers or opportunities are arising, and to determine whether the multiple sites are maintaining fidelity to the YOP model. Responsibilities also include assisting with the development of a logic-model, survey and interview protocols and a process evaluation report.

| Technical Assistance Coordinator & National Research Team member | Michigan State University, School of Criminal Justice | 10/ 1/ 2002 | 4/1/2008 | N |
|---|---|---|---|---|

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  East Lansing, Michigan, United States of America

| Supervisor Name: | | Phone: | | Email: |
|---|---|---|---|---|

Permission to contact supervisor granted.

*Responsible for coordinating and providing technical assistance to United States Attorney Office (US–O) judicial district task forces in the implementation, operation, and assessment of the PSN initiatives. This assistance focuses on all aspects of PSN strategic problem solving including assessing the gun crime problem, implementing strategies, monitoring implementation, and evaluating the impact of PSN. In this context, technical assistance can involve arranging on-site visits using a cadre of experienced individuals involved with PSN and initiating & coordinating peer to peer contacts between districts to discuss strategies, initiatives, collaboration, evaluation, etc. In addition, technical assistance may also be provided through phone calls to provide information and respond to specific task force issues. In each instance, technical assistance is tailored to the need of the individual district. In general, this position is responsible for coordinating and assisting technical assistance in the following areas: (a) Strategic Problem Solving, (b) PSN Interventions and Best Practices, and (c) Research, Data Collection, and Evaluation. Specifically, the TA Coordinator can be involved in a number of technical assistance activities including: providing strategic problem training to USAO district task forces, disseminating PSN information, participating in the development of research instruments to measure PSN initiatives, developing Memorandums of Understanding to promote collaboration between law enforcement agencies and research organizations, promoting the sharing of information between districts, addressing data requirement inquiries, arranging meetings and conference calls to discuss PSN initiatives and strategies (including offender notification meetings, lever-pulling meetings, homicide incident reviews, media campaigns, most violent persons [MVP] lists, etc.). Also been a member of the Department of Justices Equipping Teams for Success - Anti-Gang training (November 2006) and the Comprehensive Anti-Gang Initiative (August 2007) training & facilitation teams.*

| | | | | | |
|---|---|---|---|---|---|
| Research Associate & Lead Evaluator | Michigan Public Health Institute | 10/ 1/ 2004 | 9/1/2005 | N | |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Okemos, Michigan, United States of America

| Supervisor Name: n/a | Phone: | Email: |
|---|---|---|

Permission to contact supervisor granted.

*Summary of Project Responsibilities:*

*-Improving Cancer Outcomes in African-Americans Evaluation, Project Leader & Lead Evaluator: Responsible for leading project team meetings, completing IRB/ Privacy applications, providing assistance to grantees/ project partners in complying with data security and privacy sensitive data requirements, provide technical assistance to grantees/ project partners for data collection and evaluation efforts, develop focus group and survey protocols, develop and review evaluation plans, develop study methodologies and write a process evaluation report.*

*-Office of Rural Health Policy (ORHP) Evaluation, Research Team member: Assist the CRHOP research team with data abstraction and interpretation, develop data collection instruments, contact grantees to obtain project information, and write, review, and edit sections of two reports for the United States Congress.*

*-State Planning Grant, Research Team member: Responsible for programming revisions to the household survey, employer survey, and the key informant interviews; assist with data management, including checking data integrity, outputting, and the transfer of data. Also assist with data analysis, data management, and report writing for two studies designed to examine Michigan's employers and uninsured population.*

| | | | | | |
|---|---|---|---|---|---|
| Juvenile Justice Project Leader | Michigan Public Health Institute | 12/ 1/ 2003 | 12/1/2004 | N | |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Okemos, Michigan, United States of America

Supervisor Name:                          Phone:                    Email:
n/a
Permission to contact supervisor granted.

*Responsible for the coordination, planning, development, and implementation of the Juvenile Delinquency Prevention Program Evaluation Facilitation Project (JDPPE). This position provided research and evaluation direction and coordination as well as grant compliance and needs assessment assistance for 30 Michigan communities. This position also provides technical assistance, expertise and leadership for local program activities and directs a variety of administrative, project management and program development activities. This includes participating in and providing oversight and coordination of training and technical assistance activities, including community site visits, workshops, and annual conferences. This position also maintains regular proactive phone and e-mail communication with assigned communities and ensures the fulfillment of all project reporting requirements, including, but not limited to, project quarterly reports, annual reports, and final reports. Finally, this position provided team-building leadership, group process facilitation, and conflict resolution, when needed.*

| Associate Project Coordinator | Michigan Department of Community Health, Office of Drug Control Policy | 6/1/2000 | 12/1/2002 | N |
|---|---|---|---|---|

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Lansing, Michigan, United States of America

Supervisor Name:                          Phone:                    Email:

Permission to contact supervisor granted.

*Provided supervision of data collection, training of interviewers, and coordination of the research process for a joint treatment needs assessment project between the Michigan Department of Community Health and the Michigan State University, School of Criminal Justice. Participated in a collaborative effort to develop a research addendum to the existing ADAM (Arrestee Drug Abuse Monitoring) interview instrument. Arranged, coordinated, and supervised the pre-testing of the research addendum. Scheduled and coordinated data collection at 3 Detroit Police Department precincts. Collaborated with executive-level police officers and court officials to determine the most effective and efficient method of tracking arrestees through the Wayne County judicial system.*

| Research Coordinator | Michigan Department of Community Health | 10/1/1999 | 10/1/2002 | N |
|---|---|---|---|---|

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Lansing, Michigan, United States of America

Supervisor Name:                                          Phon
n/a
Permission to contact supervisor NOT granted.

*Responsible for (a) developing statewide and regional estimates of substance use prevalence and need for prevention for key subgroups of middle and high school-aged adolescents; (b) for demonstrating the linkage between risk factors, substance use, and the need for prevention among youth; (c) assessing substance abuse prevention needs using social indicators; and (d) evaluating the adequacy of the current substance abuse prevention service system in meeting the needs of high-risk population subgroups, including identifying gaps and needs in the system. Provided management, supervision, and coordination of data collection efforts for three substance abuse prevention needs assessment studies: (1) the Michigan Substance Abuse Risk and Protective Factors 2000 Student Survey, (2) the Community Prevention Systems Assessment - COMPSA survey, and (3) the Assessing Substance Use Prevention Needs in Michigan Counties: A Study Using Social Indicators. This position also managed and coordinated the duties of staff members from 2 survey research organizations (Research Triangle Institute and Prevention Network), while monitoring and managing a $950,000 budget. This position was also responsible for contacting and obtaining authorization from approximately 100 school superintendents and principals to participate in a statewide school survey effort. Duties also included preparing data tables, graphs, charts, figures for information dissemination; conducting literature searches; developing workplans, protocols, and quarterly progress reports; designing and managing database tracking systems to monitor school participation, school refusals, survey administration, and the ordering and distribution of school incentives.*

| Program Coordinator | Michigan State University, School of Criminal Justice | 8/1/1995 | 10/1/2002 | N |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  East Lansing, Michigan, United States of America

Supervisor Name:                              Phone:                    Email:

Permission to contact supervisor granted.

*Responsible for the day to day operations of the Detroit/ Wayne County Arrestee Drug Abuse Monitoring (ADAM) program. This included recruiting law enforcement agencies to participate in the ADAM program, training and supervising interviewers, scheduling and coordinating data collection at 6 Wayne County detention facilities, obtaining supplies, preparing questionnaire materials, editing data, coordinating the activities of security officers, packaging and shipping questionnaires and specimens, and conducting face to face interviews with arrestees (when necessary). Prepared, monitored, and managed $225K annual budget. Hired, trained, and managed a staff of 15 to 20 facility supervisors and interviewers. This position was also responsible for requesting and presenting information and data to the Executive staffs of the 56 Detroit/ Wayne County law enforcement agencies.*

| Research Associate | Michigan Department of Community Health | 6/1/1999 | 9/1/1999 | N |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Lansing, Michigan, United States of America

Supervisor Name:                              Phone: n/a         Email:
n/a
Permission to contact supervisor NOT granted.

*Performed activities for the Michigan substance abuse treatment needs assessment studies, including assisting in the management and analyses of the needs assessment studies' data, producing reports from the Michigan Family of Treatment Needs Assessment Studies, producing tables/charts and/or graphs to display statistical results and/or concepts. Also performed literature reviews and participated in the development of scientific manuscripts related to the studies.*

| Intern - Department of the Treasury, United States Customs Service, Office of Investigations | Department of the Treasury, United States Customs Service, Office of Investigations | 5/1/1998 | 9/1/1998 | N |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Detroit, Michigan, United States of America

Supervisor Name:                         Phone:  n/a     Email:  n/a
Permission to contact supervisor NOT granted.

*As an intern for the US Customs Service I wrote case reports, used Treasury databases to track the border crossings of subjects, documented wire tap information, sat in on informant interviews, and shadowed agents as they conducted surveillance, sting operations, and border and airport terminal searches. I also created tables and graphs to document the money connection of a smuggling conspiracy case. I also collaborated with the Resident Agent in Charge (RAC) from another federal investigative agency on a smuggling conspiracy case, and I was granted security clearance to access to the Treasury Enforcement Communications System (T.E.C.S.), the National Criminal Information Center (N.C.I.C.), and the Special Investigative Unit Support System (S.I.U.S.S.). I was also granted Disclosure of Grand Jury Material, Granted by the United States Attorney, Eastern District of Michigan.*

| Research Assistant | Michigan State University, School of Criminal Justice | 6/1/1997 | 9/1/1997 | N |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  East Lansing, Michigan, United States of America

Supervisor Name:                         Phone:              Email:

Permission to contact supervisor granted.

*Examined crime scene photos, evidence, and reports for approximately 70 homicide cases for a National study investigating patterns of homicide incidents in the city of Detroit, Michigan. This position was responsible for determining and documenting: (1) what the first officer on the scene did to preserve the crime scene, (2) who collected and preserved the physical evidence, (3) the circumstances that led to the homicide, (4) the offenders relationship with the decedent, (5) what injuries were caused to the decedent, and (6) what, if any, weapon(s) were used to cause the injuries to the decedent. Records for this study were provided by the Detroit Police Department's Homicide Unit.*

| Program Evaluator | Michigan State University, School of Criminal Justice | 5/1/1995 | 8/1/1995 | N |

The promotion potential grade or full performance level of this position

Location: (State, City, Country)  East Lansing, Michigan, United States of America

Supervisor Name                          Phone               Email:

Permission to contact supervisor granted.

*Conducted face-to-face interviews with middle school children and documented their responses pertaining to the effectiveness of their schools conflict resolution and peer mediation initiatives. Responsible for distributing attitude assessment questionnaires to students in a multiple classrooms, in 4 middle schools. Also responsible for editing and cleaning the data from the completed interviews.*

| Criminal Law Research Assistant | Michigan State University, School of Criminal Justice | 8/1/1994 | 3/1/1995 | N |

012817

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  East Lansing, Michigan, United States of America

Supervisor Name:                          Phon                          Email:

Permission to contact supervisor granted.

*Wrote legal briefs. Researched criminal justice related Supreme Court decisions and opinions. Assisted in the preparation of legal materials and briefs for journal publication. Assisted in a project which was designed to explore States perspectives on federal habeas corpus reform.*

| Case Management Analyst | National Council on Crime & Delinquency | 3/1/1994 | 8/1/1994 | N |

The promotion potential grade or full performance level of this position:

Location: (State, City, Country)  Lansing, Michigan, United States of America

Supervisor Name:                          Phone: n/a     Email: n/a
Permission to contact supervisor NOT granted.

*Reviewed child abuse and child neglect cases in 7 Michigan counties for a national research study. Audited and analyzed approximately 100 Department of Child Protective Services case files to abstract and describe: (1) the number of children involved in the case, (2) the alleged abuse that took place, (3) the type of support that existed within the family, (4) the identification of the alleged perpetrator, (5) the involvement and referrals made by the case manager, and (6) the risk of future abuse or neglect.*

## Eligibilities

⦿ I am a US citizen
○ I am not a US citizen
○ I am lawfully admitted to the United States as a permanent resident.
○ I am legally authorized to be employed.
○ None of the above.

Country of Citizenship

Other (If Applicable)

Federal Law (300.701 at 5 CFR Part 300 )requires that any male United States citizen or immigrant who is at least 18 years of age but less than 26 years of age register with Selective Service (Conscription or "draft" to military service). You must be registered to qualify for Federal employment. Failure to register with Selective Service is a felony. All male applicants from the age of 18 but less than 26 years of age are required to provide a response to this question as part of the application process.

☑ I am a male born after December 31, 1959.
⦿ I have registered with the Selective Service.
My confirmation number is: _____          (ex. 12-1234567-1)
○ I do not have to register with the Selective Service. Proof of this is attached.

012818

☐ I am or was a volunteer with the Peace Corps, VISTA, ACTION within the last 12 months.

☐ The Federal Government's hiring options include special appointing authorities for people with disabilities. Federal employers are authorized to use these authorities when considering certain people with disabilities. I wish to be considered under these authorities. Click here for more information.

☑ I was a David L. Boren scholar or fellow, and I am no longer a student.

Check the appropriate boxes below if you are or have been a Federal civilian employee. NOTE: Federal Military Service is not considered Federal civilian employment, nor is volunteer work such as Peace Corps, VISTA, etc. This service will be captured with later questions.
◉ I am a federal civilian employee.
☑ I am also a reemployed annuitant.
☑ I also have reinstatement eligibility.
◯ I am a former federal civilian employee.
☑ I am a retired federal civilian employee.
☑ I also have reinstatement eligibility.
◯ I have never been a federal civilian employee.

The questions below refer to the US Armed Forces. Certain Federal hiring processes are geared to the employment of current and former members of the Armed Forces and their families. Check all that apply to you.
☐ I am serving or have served in the US military.
☐ I am the spouse or family member of an active duty or former member of the Armed Forces; OR I am the family member of a U.S. Civil Service employee who is stationed overseas.
The questions below refer to your student or graduate status and are used to determine your eligibility for employment in a Pathways Program position. These positions provide paths to Federal internships and potential careers in Government for students and recent graduates. Select the choice that applies to you.
◯ I am a high school student(includes public, private, home school, technical or vocational schools).
◯ I am currently attending or enrolled to attend classes in a college or university.
◯ I am currently attending or enrolled to attend a graduate or professional school.
◯ I am currently attending or enrolled to attend an undergraduate or graduate home school curriculum.
◯ I graduated within the last 2 years and completed all the requirements for an associate, bachelor and master's degree, professional, or doctorate degree from a qualifying college, university, professional, vocational, or technical school.
◯ I am **Veteran,** who completed all the requirements for an associates, bachelor's masters's, professional, or doctorate degree from a qualifying college, university, professional, vocational, or technical school within the past 6 years, and, **due to a military service obligation,** was unable to apply under the Recent Graduate Program and I was discharged from active duty within the past 2 years.
◯ None of the above.


**SF50 Item 16 Pay Plan:** GS
**SF50 Item 17 Occ Code:** 0343
**SF50 Item 18 Grade or Level:** 13
**SF50 Item 20A Basic Pay**
**SF50 Item 20C Adj. Basic**
**SF50 Item 23 Veterans Preference:** 1
**SF50 Item 24 Tenure:** 1
**SF50 Item 33 Part-Time Hours Per Biweekly Pay Period:**
**SF50 Item 34 Position Occupied:** 1

Tell us about your Federal Civilian Employment.

┌─Current Federal Civilian Job─

012819

Your current and previous Federal work history is going to determine how many and what kinds of lists your name goes on for consideration by hiring officials. While it may require some research on your part, it is **essential** that you provide this information to receive every consideration to which you are entitled.

Employer name |Office of Justice Progi

Series |0343

Pay Plan GS    (If you do not see your Pay Plan listed here, enter your salary, below)

Current Grade |13 ⌄|    (If you do not see your Grade listed here, enter your salary, below)

How long did you hold this position at this grade? (Please enter a value for BOTH years and months.)

Years |4

Months |6

It is important to know what 'promotion potential' is - especially as it relates to how you may be hired for positions in the Federal government. The term 'promotion potential' applies to federal positions only and not to private sector or military positions. Positions with promotion potential are usually posted with multiple federal grades such as GS-09, GS-11, and GS-12. These are also referred to as career ladder positions. When you apply for a position with promotion potential (or a career ladder position), you can be promoted without having to 'compete' for each grade in that career ladder - up to the highest grade the job posting contained. So, using our previous example, you could be promoted without competition to the GS-12, even if you were hired as a GS-09. However, if you wanted to be promoted further, say to a GS-13, you would have to apply and go through a competition process before you could be considered. If you do not know the promotion potential for the grade you are in, we will use your current grade as the full performance level.

If you have ever competed for a position with this kind of promotion potential, you may be able to be hired using a non-competitive hiring rule for another, entirely different, position. So, for example, if you competed and were hired for a position with a career ladder of GS-09, GS-11, and GS-12, and you then wanted to apply and be considered for a different position, you could be hired without competing with others if that position's promotion potential did not exceed the GS-12 level. If it did, you would have to compete. If it does not, you may (and we stress the word 'may') be hired without competition using this hiring rule. To ensure you are given full credit for the grades or pay bands you have already competed to get, you should always be aware of and able to provide an SF-50 showing that you have already competed and were hired for that position and its full promotion potential. You may be asked to provide the promotion potential for any prior position for which you were hired. This is when you should indicate the highest grade you were promoted to or the highest grade of the career ladder for a position you were hired into, even if you did not get promoted to that highest grade. You will be asked for proof documents showing this is true so you must have documentation, such as an SF-50, which clearly states this.

The Promotion Potential for my current job is   13 ⌄

Salary                              |Yearly ⌄|

┌─ Highest Paying Federal Civilian Job ─

Now tell us about the highest paying Federal Civilian Position you have held ON A PERMANENT BASIS in the COMPETITIVE SERVICE (if not the same as above). Please note that if you do not have current or previous Federal Civilian employment, it will not stop you from being considered from a talent pool. These questions are here ONLY to determine the types of referral lists and appointment(s) to which current or former Federal Civilian employees of the Competitive Service are eligible.

Employer name |Office of Justice Progi

Series |0343

Pay Plan |GS    (If you do not see your Pay Plan listed here, enter your salary, below)

Highest Grade Held [13  ⌄]    (If you do not see your Grade listed here, be sure to enter your salary, below.)

How long did you hold this position at this grade? (Please enter a value for BOTH years and months.)

Years [4

Months [6

If you do not know the promotion potential for the grade you are in, we will use your current grade as the full performance level.

Promotion Potential [13 ⌄]

Salary [          ] [Yearly ⌄]

☐ I have a current Career Transition Assistance Plan (CTAP) or Interagency Career Transition Assistance Plan (ICTAP) notice. (Have you seen a letter like this?)

Date separated from agency

[ Choose File ] No file selected

☐ I am on a re-employment priority list.

[

☐ I am a current Non-Appropriated Fund (NAF) employee.

I may be appointed because of previous or current employment with

| | Period of Employment | | Type of Appointment |
|---|---|---|---|
| | From | To | |
| ☐ Administrative Office for the US Courts | | | |
| ☒ Canal Zone Merit System | | | |
| ☐ Panama Canal Zone Commission | | | |
| ☐ United States Postal Service | | | |
| ☐ Overseas Employee | | | |
| ☐ General Accounting Office | | | |
| ☐ National Guard Technician | | | |
| ☐ Foreign Service Officer or Employee | | | |
| ☐ Office of the President | | | |
| ☐ Office of the Vice President | | | |
| ☐ White House Staff | | | |

012821

Date returned to the US

Date separated from Service

☐ I retired from Federal service under the Civil Service Retirement System (CSRS) or under the Federal Employees Retirement System (FERS) on a voluntary retirement.

☐ I received a Voluntary Separation Incentive Payment (VSIP) on

☐ I received an early retirement under the Voluntary Early Retirement Authority

Date of Retirement: _____

I retired early from: [

## Veteran Preference Determination

The eligibility for veteran preference is an important feature of the Federal hiring process. Please take a moment to review the information on veteran preference by clicking the link below before you complete the questions pertaining to your eligibility for veteran preference. An inaccurate claim for preference could cause delay in processing your application. (click here for a definition)

**DD214 Item 4a Grade, rate, or rank:**
**DD214 Item 4b Pay Grade:**
**DD214 Item 12a Record of services, Date entered ad this period: //**
**DD214 Item 12b Record of services, Separation date this period: //**
**DD214 Item 13 Decorations, medals, badges, citations, and campaign ribbons awarded or authorized:**
**DD214 Item 23 Type of separation:**
**DD214 Item 24 Character of service:**

Do you have a period of additional military service not identified above? If so, add it below:

From [                    ] 📅

To [                    ] 📅

Are you a recipient of the Armed Forces Service Medal?
○ Yes
○ No

I am entitled to
○ No preference
○ I have a service-connected disability of less than 10%.
○ I have a service-connected disability of at least 10% but less than 30%.
○ I have a compensable disability of 30% or more.

My most recent period of active service does not equal the three continuous years necessary to qualify for VEOA. My period of active military service which equals three years is

From

To

## Opportunities for Families of Current or Former Military Members

Check the boxes below if the statement applies to you today:
☐ My spouse has been an active-duty member of the U.S. Armed Forces for more than 180 days.
☐ I relocated with my spouse on concurrent travel Permanent Change of Station (PCS) orders that were

issued within the last two years.

☐ I was married to my spouse on or prior to the date of the PCS orders.

☐ I am applying for a position within the same geographic area as my spouse's permanent duty location, and I have not been appointed under the military spouse hiring authority since this PCS.

☒ I am the spouse of a 100 percent disabled service member who was injured while on active duty. My spouse's disability status was approved on

☒ I am the un-remarried widow or widower of a service member who died while serving on active duty. Date of death

☐ I am the widow/widower or mother of a veteran who died or who became 100 percent permanently disabled in connection with their military service.

☐ I am entitled to a 10 point derived preference for spouses and mothers. Proof in the form of an SF-15 is attached.

☒ None of these statements apply to me.

## References

| Reference Name | Relation to Applicant | Title | Company | City/State |
|---|---|---|---|---|
| | Supervisor | Director & Professor | Michigan State University, School of Criminal Justice | East Lansing, Michigan |
| | Former Supervisor | Project Manager | Public Policy Associates | Lansing, Michigan |
| | Dissertation committee & Research Colleague | Chair & Distinguished Professor | Michigan State Univeristy, Ecological Community Psychology | East Lansing, Michigan |
| | Former Supervisor | Communications Director | DOJ/Bureau of Justice Assistance | Washington, Dist of Columbia |

| Supervisor | Professor & Researcher | Michigan State University, School of Criminal Justice | East Lansing . Michigan |
| | | | |
| . Criminal Justice Colleague | ' Professor | George Mason University | Fairfax , Virginia |

## Basic Qualifications

Click the checkbox of the following statements that apply to you. Check all that apply.

☑ I am a current competitive-service permanent Office of Justice Programs employee.

The following experience questions are used to determine the number of years of relevant work experience you possess. Please select **only** specialized experience that you have performed for one year or more. Be sure to indicate the number of months or years of experience below:

☑ Served as an expert in conducting program assessment studies for operating criminal justice programs for a major agency component.

☑ Identified and developed data required for use in the management and direction of programs.

☑ Evaluated and analyzed multi-functional criminal justice programs, functions, and organizations to determine the impact and efficiency of existing management systems in accomplishing program or mission objectives.

☑ As a technical expert, devised new analytical techniques to evaluate program findings which impacted criminal justice policy development, such as establishing standards to identify and measure program accomplishments, developing and testing program models or summarizing and integrating research into new program models on projects that were sensitive or critical due to their volatility, economic impact, the number and complexity of issues involved, and/or their potentially precedent-setting nature.

**For the work indicated above, how many hours did you work in a typical work week?**

⦿   Full-time ○ Part-time [        ▾] hours per week

**For those experience categories you have indicated you possess, enter either the total number of months OR the total number of years which you have actually performed the work. Click the Month or Year button to identify whether your answer reflects Months or Years.**

Months or years performed          ○ Months

[17                                 ⦿ Years

012824

## Technical Qualifications

Ability to analyze current or projected operating criminal justice programs and tests of research models and to develop strategies to enhance capacity and implementation.

**Evaluated work processes to enhance capacity for criminal justice programs and made recommendations for organizational improvements to promote efficiency, effectiveness, and increased knowledge about criminal justice interventions and strategies. The applicant should have performed analyses on a quantitative and qualitative basis and assessed the effectiveness of criminal justice programs and operations in meeting established goals and objectives.**

○ Experience analyzing and evaluating multifunctional criminal justice programs and research projects to determine whether the program management structure effectively accomplished objectives and provide the necessary controls for effective program implementation with fidelity. Ability to approach organizational and policy problems from an analytical, objective point of view with particular ability in evaluating data, defining alternatives, and recommending solutions.

⦿ Extensive experience analyzing and evaluating agency-wide criminal justice programs and research projects to determine whether the program model or strategy effectively accomplished objectives and provide the necessary controls for effective program implementation with fidelity. Ability to approach organizational and policy problems from an analytical, objective point of view with particular ability in evaluating data, defining alternatives, and recommending solutions.

○ Experience analyzing and evaluating individual criminal justice programs, functions, and organizations to determine whether the program management structure effectively accomplished objectives and provide the necessary controls for effective program implementation. Ability to approach organizational problems from an analytical point of view in evaluating data.

○ Experience, education, or training less than the levels described above.

○ None of the above.

Ability to communicate in writing.

**Conveyed information in written form. For example, must have the ability to communicate in writing in performing criminal justice work to convey information in written form such as reports, letters, or documents.**

◉ Experience includes preparation of a variety of written documents including reports on analyses and findings, program and research reports, data calls and fact sheets, correspondence, etc. Prepares reports consisting of program assessment findings, analyses and recommendations for resolving highly complex and difficult cases or review situations. Drafts reviews of program implementation with recommendations for further action when settlements fail. Experience demonstrates knowledge of a broad range of sources of pertinent information, and the skill to analyze and present information which may require modification of established methods or derivation of new methods of developing and presenting information to maximize understanding and minimize controversy for a variety of audiences who use the information in different ways.

○ Experience includes preparation of a variety of written documents including reports on analyses and findings, research and program reports, responses to data calls, budget justifications, fact sheets and program correspondence, etc. Prepares reports consisting of program assessment and outcomes, criminal justice concepts and policy, and analyses and recommendations for resolving major precedent-setting cases or review situations, where highly creative and innovative issues or recommendations may be involved. Drafts assessments of program performance and recommendations for further action when settlements fail.

◉ Experience includes preparation of a variety of written documents including reports on analyses and findings, research and program reports, responses to data calls, budget justifications, fact sheets and program correspondence, etc. Prepares reports consisting of program assessment and outcomes, criminal justice concepts and policy. Drafts assessments of program performance and recommendations for further action when settlements fail.

○ Experience, education, or training less than the levels described above.

○ None of the above.


Ability to plan and execute work on criminal justice programs or strategies.


**The ability to plan and execute work sufficient to break down the requirements of assigned projects into components for accomplishment.**

○ Experience establishing objectives and strategies for criminal justice projects or research having agency-wide, industry-wide, government-wide, or national impact. Experience monitoring and evaluating progress to ensure that programs and policies are implemented with fidelity and a knowledge of the impacts, adjusting resources and processes as needed.

◉ Experience determining research based approaches to criminal justice problems and issues for which guidelines are scarce or of limited use. Experience deviating from precedent, and analyzing a variety of unusual conditions, problems, or questions, to develop new methods, policies, and criteria. Work products widely affect activities or operations for a significant criminal justice organizational segment of an agency, such as a regional office, Center, or major field installation. Example: Planned and scheduled program or evaluation or data analysis procedures, and specified new systems and requirements, in a multi-faceted criminal justice program.

○ Experience developing long-range plans for new criminal justice programs and research projects affecting critical agency operations or policies. Experience applying many different and unrelated processes and methods to a broad range of criminal justice activities. Example: Planned and implemented a new field test of a criminal justice intervention for a large local, state or national program.

○ Experience, education, or training less than the levels described above.

○ None of the above.


Ability to lead work as a team member.

**The ability to lead multi-disciplinary and agency work with colleagues in agency and staff of partner, stakeholder and customer organizations to lead the planning, implementation, and evaluation of criminal justice programs or strategies.**

⊙ Experience leading a group of interdisciplinary specialists to study, resolve, and implement improved criminal justice strategies or research. Performed significant project management responsibilities including planning milestones; obtaining necessary resources, equipment, or personnel; and promoting the efforts of the group. Group included specialists from other agency organizations, other federal agencies, academic institutions, public officials, or private individuals. The project was national in scope and planning, development and implementation efforts lasted for several years.

○ Experience taking a leadership role to coordinate and/or integrate the work of a wide variety of participants when there are significant major advancements or issues in criminal justice program planning, implementation, analysis, research and management for outcomes. Leads coordination of projects or research where there is involvement of various contractors, organizations, agencies, and/or private organizations.

○ Experience leading a group of interdisciplinary specialists to study, resolve, and implement improved criminal justice strategies or research. Performed significant project management responsibilities including planning milestones; obtaining necessary resources, equipment, or personnel; and promoting the efforts of the group. Group included specialists from other agency organizations, other federal agencies, public officials, or private individuals. Project was limited to one-year or less, and scope was regional.

○ Experience, education, or training less than the levels described above.

○ None of the above.

Ability to plan, evaluate, and direct criminal justice research activities in collaboration with practitioners.

**The ability to develop and implement criminal justice research and programs with reseachers and practitioners.**

⊙ Experience developing long-range plans for new criminal justice programs and research projects affecting critical agency operations or policies. Experience applying many different and unrelated programmatic and research processes and methods to a broad range of criminal justice activities to enhance knowledge. Example: Planned and implemented a new program model or research project at the state or national level.

○ Experience determining approaches to criminal justice problems and research needs for which guidelines are scarce or of limited use. Experience deviating from precedent, and analyzing a variety of unusual conditions, problems, or questions, to develop new methods, policies, and criteria. Work products widely affect activities or operations for a significant criminal justice organizational segment of an agency. Example: Planned and scheduled program and research procedures, and specified new systems and requirements, in a multi-faceted criminal justice program.

○ Experience managing a program or research project (Example: Developed and implemented criminal justice programs such as field tests of research models including guiding the development of the research model, soliciting participants from the criminal justice agency and research community, writing project proposals and preparing research or progam reports. Incumbent develops or reviews other programs; provides subject matter expertise in developing and implementing policies pertaining to criminal justice research and program matters.)

○ Experience, education, or training less than the levels described above.

○ None of the above.

## Education

| Name of School | City/State | Degree | Majors | Receive Date | Total Credits Earned | Current G.P.A |  |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

| MICHIGAN STATE UNIVERSITY | East Lansing, Michigan | Doctorate | Interdisciplinary Social Science, Criminal Justice; Additional Cognates: Sociology and Family & Child Ecology | 05/2006 | 125 | 3.49 |

**Type of School:** College, University, or Military College

| MICHIGAN STATE UNIVERSITY | East Lansing, Michigan | Master's | Criminal Justice | 08/1997 | 30 | 3.54 |

**Type of School:** College, University, or Military College

| MICHIGAN STATE UNIVERSITY | East Lansing, Michigan | Bachelor's | Criminal Justice & Psychology | 12/1993 | 122 | 2.98 |

**Type of School:** College, University, or Military College

## Applicant Preferences

**Time Limit Preference:**
none

**Work Schedule Preferences:**
Full Time

## Relevant Information

### AWARDS

| Award | Date |
|---|---|
| Quality Step Increase | 05/2011 |
| DOJ Recognition for Performance - Special Act Award | 10/2010 |
| DOJ Recognition for Performance | 10/2010 |
| DOJ Recognition for Performance | 09/2009 |

012828

| DOJ Recognition for Performance - Special Act Award | 09/2009 |
|---|---|
| DOJ Recognition for Performance | 02/2009 |
| DOJ Recognition for Performance | 01/2009 |
| Recognition from the Associate Attorney General | 09/2008 |
| Fellow, Committee on Institutional Cooperation | 07/1998 |
| Summer Acceleration Fellowship | 07/1996 |
| Minority Competitive Doctoral Fellowship | 07/1996 |
| Overseas Study Minority Student Scholarship | 07/1994 |

## COMMUNITY SERVICE

| Community Service | Date |
|---|---|
| Counselor, Center for Learning and Achieving Students | 07/1993 |
| Assistant, Crossroads Youth Offender Program | 07/1993 |
| Volunteer Probation Officer | 07/1992 |
| Counselor, Summer Enrichment Program | 07/1992 |

## TRAINING

| Course | Completion Date |
|---|---|
| Project Management | 07/2012 |
| Contracting Officer's Representative Course (COR/COTR) | 11/2011 |
| Microsoft Sharepoint 2010 Fundamentals | 10/2011 |
| Workshop: Designing and Leading Randomized Field Experiments | 11/2010 |
| Grant Management System (GMS) Redbook Training | 03/2009 |
| Workshop: Concept Mapping in Evaluation | 01/2009 |
| Workshop: How to Estimate the Effects of Interventions | 11/2008 |
| Workshop: Logic Models: Uses, Limitations, Links to Methodology & Data | 11/2008 |
| DOJ Grants Management System (GMS) - Certificate Training | 06/2008 |
| DOJ Ethics Training | 06/2008 |

| DOJ Computer Security Training | 04/2008 |
| Microsoft Access 2000 - Level 2 | 08/2003 |
| Microsoft Access: Queries & Reports | 07/2003 |
| Microsoft Access 2000 - Level 1 | 05/2003 |
| Microsoft Access Database Design | 05/2003 |
| An Intorduction to the Reid Technique of Interviewing & Interrogation | 04/2002 |

## CERTIFICATIONS

| Licenses or Certifications | Dates |
| --- | --- |
| Passed Treasury Enforcement Agent Exam | 07/2002 |
| Passed Federal Bureau of Investigation Special Agent Applicant Exam | 07/1999 |

## Military Occupational Specialty

If you were in the military, please select the Occupational Speciality for which you have the most experience from the following lists:

*None Selected*

## Other Considerations

## Security Clearance

If you have ever held a security clearance, issued by a U.S. Government agency, please enter the highest level of clearance you have been awarded.

Confidential

Is your security clearance active?

012830

Yes

## Passport Information

If you have a passport for foreign travel, please select the type from the list below.

## Recent Performance Ratings

Please provide your three most recent performance ratings, beginning with the most recent.

| | |
|---|---|
| Most Recent | Outstanding |
| Second Most Recent | Outstanding |
| Third Most Recent | Outstanding |

## Attached Documents

| Name | Description | Type | Action |
|---|---|---|---|
| MSUTranscripts_EdBanks.pdf | | Transcripts | View |
| PerformanceAppraisal_FY09.pdf | | Other | View |
| PerformanceAppraisal-Narrative_FY09.pdf | | Other | View |
| PerformanceAppraisal_FY10-Banks.pdf | | Other | View |
| SupportingDoc_AwardInformation.pdf | | Other | View |
| SupportingDoc_AwardInformation_FY10.pdf | | Other | View |
| PerformanceAppraisal_FY11-Banks.pdf | | Other | View |
| SF-50_Banks_July2012.pdf | | SF-50 Notice of Personnel Action | View |
| SF-50_Banks_June2011.pdf | | SF-50 Notice of Personnel Action for Highest Paying Position | View |
| SF-50_Banks_June2011.pdf | | SF-50 Notice of Personnel Action for Current Position | View |
| Quality_Step_increase_Info-March2011.pdf | | Other | View |
| ResumeforEdBanks_101412_v2.docx | | Resume | View |

012831

## Comments and Certification Information

### APPLICANT CERTIFICATION

I certify that, to the best of my knowledge and belief, all of the information on and submitted in support of my application is true, correct, complete and made in good faith. I understand that false or fraudulent information on or attached to this application may be grounds for not hiring me or firing me after I begin work, and may be punishable by fine or imprisonment. I understand that any information I give may be investigated.

☑    I certify that I have read and understand the applicant certification statement provided above.

### ADDITIONAL COMMENTS

## Avue Communications Summary

| Subject | Received | View |
|---|---|---|
| Avue Application Ineligible: JP-13-009 | 10/14/2012 | View |
| Avue Application Eligible: JP-13-009 | 10/14/2012 | View |
| Avue Application Received: JP-13-009 | 10/14/2012 | View |
| Avue Application On List: JP-13-009 | 11/12/2012 | View |
| Vacancy: JP-13-009, Program Analyst (Evidence Integration), GS-0343-14 at Department of Justice, Office of Justice Programs | 12/19/2012 | View |
| acancy: JP-13-009, Program Analyst (Evidence Integration), Program Analyst (Evidence Integration), GS-0343-14 at Department of Justice, Office of Justice Programs | 12/28/2012 | View |

Copyright © 2013 Avue Technologies Corporation, All Rights Reserved.
Avue Technologies, Patent Pending
Privacy Policy

**Exhibit 67**

TIMOTHY E. JEFFRIES



U.S. Citizen, 12 Years of Gov Experience
No Veterans Preference
Work: (202) 616-7385
Current Position GS-13-09

## EDUCATION

*Largo High School* - Largo, Maryland, (1989)

*Associate Degree in Science* - Tidewater Community College, Virginia Beach, Virginia (1992)

*Bachelor of Science Degree in Psychology* - Old Dominion University, Norfolk, Virginia
(1994) Major in Psychology, Minor in Human Service Counseling

*Masters in Social Work*- Norfolk State University, Norfolk, Virginia (1998)

## TRAINING

**Presidential Management Intern Appointment** (1998) Upon first entering the federal
government, as a 1998 Presidential Management Intern (PMI), I experienced a total of six detail
assignments at four federal agencies.    The agencies, at which I detailed, were Health and Human
Services (HHS), Housing and Urban Development (HUD), Department of Justice (DOJ), and the
Office of National Drug Control Policy (ONDCP) The PMI program also afforded me 200 hours
of management specific training to include: Effective Supervisory Issues, Managing Multiple
Priorities, Effective Writing Techniques, Congressional Briefing, Budget and Appropriations,
Ethics in Government, and Future Government Trends.   With each agency experience, I acquired
principles, concepts, and techniques to be used as building blocks for a future management
position.

Exhibit 53 p. 360

## EMPLOYMENT HISTORY

**Policy Advisor,** Supervisor: Ruby Qazilbash, Associate Deputy Director for Policy at the Bureau of Justice Assistance, Office of Justice Programs, Department of Justice, Washington, D.C. (202) 305 6982.  August 2010 – Present.

Duties:  As a policy advisor, I am responsible for providing national leadership to practitioners in over 2,500 of the nation's Drug treatment Courts.  I also provide assistance on a broad range of policy issues to include problem solving courts and crime reduction task force initiatives.  I am responsible for the management of a $45 million annual Drug Court Discretionary Grant appropriation as well as the management of various cooperative agreements with federal and private partners.  As a member of a federal consortium to address the needs of substance abusing offenders, I work with HHS, DOT, and the Veterans Administration to ensure the continuous coordination of service delivery for substance abusers.  As a result of the collaborative, I have coordinated a new braided funding opportunity utilizing strengths from multiple agencies to address wrap around services for this population.  I also am responsible for providing assistance to the White House, Office of National Drug Control Policy to contribute to the 2010 National Drug Control Strategy by addressing the needs of Military Veterans and Families and other Drug programs.  Lastly, I am responsible for the coordination and service delivery for the Indian Alcohol and Tribal Court Assistance programs to provide a myriad of drug treatment services to our Native American population.

**(Detail) Acting Senior Policy Advisor,** Supervisor:  Pam Cammarata, Acting Deputy Director for Policy at the Bureau of Justice Assistance, Office of Justice Programs, Department of Justice, Washington, D.C. (202) 514 9193.  June 2010 – August 2010

Duties:  With the temporary promotion to Senior Policy Advisor, I was tasked with oversight of all operations within the Substance Abuse and Mental Health portfolio.  Such oversight, which encompassed ten solicitations, was handled in conjunction with my normal policy advisor duties. This was made more difficult in that it occurred at a heightened time (more commonly known as the "Grant making" season), where I was responsible for the execution of funding recommendation memos; spending plan drafts; peer review coordination; and guidance provision for the first ever CTAS solicitation which applied to all ten solicitations.  I drafted spending plans and approved deliverables for other senior policy advisors to identify cross cutting programming.  I contributed to the shaping of the ONDCP national drug control strategy by devising action items to coordinate with other federal agencies.

**Policy Advisor,** Supervisor: Andrew Molloy, Associate Deputy Director for Policy at the Bureau of Justice Assistance, Office of Justice Programs, Department of Justice, Washington, D.C. (202) 514 9909.  April 2008 – June 2010.

Duties:  As a policy advisor, I am responsible for providing national leadership to practitioners in over 2,400 of the nation's Drug treatment Courts.  I also provide assistance on a broad range of

Exhibit 53 p. 361

policy issues to include problem solving courts and crime reduction task force initiatives.  I am responsible for the management of a $40 million annual Drug Court Discretionary Grant appropriation as well as the management of various cooperative agreements with federal and private partners.  As a member of a federal consortium to address the needs of substance abusing offenders, I work with HHS, DOT, and the Veterans Administration to ensure the continuous coordination of service delivery for substance abusers.  As a result of the collaborative, I have coordinated a new braided funding opportunity utilizing strengths from multiple agencies to address wrap around services for this population.  I also am responsible for providing assistance to the White House, Office of National Drug Control Policy to contribute to the 2010 National Drug Control Strategy by addressing the needs of Military Veterans and Families and other Drug programs.  Lastly, I am responsible for the coordination and service delivery for the Indian Alcohol and Tribal Court Assistance programs to provide a myriad of drug treatment services to our Native American population.

**Grant Manager**, Supervisor: Edison Aponte, Branch Chief for Bureau of Justice Assistance, Office of Justice Programs, Department of Justice, Washington, D.C. (202) 307-3180.  November 2006- April 2008.

Duties:  As a grant manager for Bureau of Justice Assistance, I handled more than 350 discretionary, formula, earmark, and block grants in 26 different types of grant programs to reduce criminal activity and promote public safety.  As a grant manger for the states of South Dakota, North Dakota and Nebraska, I was responsible for frequent site monitoring visits to apprise constituents of areas where they may improve treatment and programming.   The visits consisted of 2-4 day meetings with chief judges, county and city officials, treatment directors, education liaisons, and court personnel in which I provide technical assistance and recommendations for improvement.  I was also responsible for addressing field inquires at a variety of venues to include national and state conferences, and nationally sponsored training.  I have expertise in addressing state administrators, conducting plenary and breakout sessions, and addressing state Supreme Court justices at drug treatment court state venues.

**Acting Branch Chief**, Supervisor: Eileen Garry, Deputy Director for Programs Division, Bureau of Justice Assistance, Office of Justice Programs, Department of Justice, Washington D. C. (202) 307-6226.  September 2005- November 2005.

Duties:  The Special Projects Branch was established to assist the programs division with top priorities and innovative assignments. I was selected to supervise this branch because of my leadership characteristics as well as identified strengths in the grant closeout process. As Acting Branch Chief, I was responsible for providing advice and program management guidance to a team of five employees.  Initiatives of this team include the closing of more than 2,000 challenging block grants.  Also I am responsible for ensuring that specialized grant managers assist other grant managers and state policy advisors in completion of their duties.  I am trusted with the

Exhibit 53 p. 362

signing authority for time and attendance, leave slips, and other relevant documentation. I am responsible for devising corrective action plans, approval and review of Individual Development Plans, and the improvement of the quality of work performance within the agency.

**Grant Manager**, Supervisor: Linda Vines, Branch Chief for Bureau of Justice Assistance, Office of Justice Programs, Department of Justice, Washington, D.C. (202) 307-2015. March 2003- September 2005.

Duties: As a grant manager for Bureau of Justice Assistance, I handle more than 400 discretionary, formula, earmark, and block grants in 26 different grant programs to reduce criminal activity and promote public safety. As a grant manger for the states of South Carolina and West Virginia, I am responsible for monthly site monitoring visits to apprise constituents of areas where they may improve treatment and programming. The visits consisted of 2-4 day meetings with chief judges, county and city officials, treatment directors, education liaisons, and court personnel in which I provide technical assistance and recommendations for improvement. I was also responsible for addressing field inquires at a variety of venues to include national and state conferences, and nationally sponsored training. I have expertise in addressing state administrators, conducting plenary and breakout sessions, and addressing state Supreme Court justices at drug treatment court state venues.

**Special Assistant - White House, Office of National Drug Control Policy/ Project Liaison,** Supervisor: Andrea Barthwell M. D. Deputy Director for Demand Reduction at the White House Office of National Drug Control Policy, Washington, D.C. (202) 395-6751. July 2002-March 2003.

Duties: Served as the Drug Court Discretionary Grant Program lead to the heads of Federal agencies, White House staff, Members of Congress, Bureau of Justice Assistance, National Association of Drug Court Professionals, state organizations, and committees on a variety of anti-drug initiatives. I initiated interagency collaboration between the Department of Housing and Urban Development and the Department of Justice to reduce barriers of Drug Court Discretionary Grant Programs. I drafted quarterly priority area outlook documents, weekly progress reports to the director, quarterly Demand Reduction action plans, subject matter briefing books, director's talking points for national and/or state conferences, background research for congressional testimony, and assisted in the development of key policy papers for the Office of Demand Reduction. I also interpreted reports from the National Institute of Justice on program recidivism for substance abusers.

**Grant Manager.** Supervisor: Marilyn M. Roberts, Director, Drug Courts Program Office, Department of Justice, Washington, D.C. (202) 616-5001 September 2000- March 2003.

Duties: I Managed 60 federal discretionary grants and provided technical assistance to enhance program effectiveness in the following areas; Alcohol and other drug treatment resources,

Exhibit 53 p. 363

Pharmacology and effects on the brain, Alcoholics Anonymous/ Narcotics Anonymous groups, and DUI treatment courts. I was charged with amending the annual Drug Court funding solicitation based on congressional changes in legislature. I participated in several working groups with SAMHSA to develop federally mandated Drug Treatment Key Components and Strategies, which are to be followed by all federally funded Drug Courts. I devised new incentives program and promoted best practices for drug courts to increase the success of substance abuse programming, thus reducing national recidivism. I managed cooperative agreements with American University, National Research Development Institute, and Encounter Medical Group to oversee cooperative agreements in an effort to deliver a cultural competency curriculum. In the supervisor's absence, I served as the acting supervisory grant manager, supervising seven grant program specialists. In this capacity, I was responsible for the signing and approval authority of all grant administrative documents. I also served as the acting director of the Drug Court Program Office, providing guidance and instruction to a staff of 14 policy and program specialists.

**Special Assistant to the Acting Deputy Chief of Staff,** Supervisor: Douglas S. Kantor, Office of the Secretary, Department of Housing and Urban Development, Washington, D.C. June 2000.

Duties: I conducted research that led to negotiations between HUD and Smith & Wesson on gun safety, which resulted in Smith & Wesson placing gun safety locks on all guns as a standard. I reviewed, edited and prepared documents to include management reports, HUD annual reports, HUD 2020 reform, and Booz, Allen, Hamilton reviews. I researched and drafted detailed reports on understanding the "Effects of Community Building on Housing Developments", and the H.R. 4194 Title V Appropriations Conference report on the Conforming Rule. Using Immigration and Naturalization Services data, I researched and compiled a detailed presentation on the influx of immigrants into public housing for the Assistant Secretary. I assisted the Deputy Chief of Staff in such duties as Scheduling, Congressional Affairs, Correspondence, Public Affairs, and Policy Development and Research. I also worked with the Office of Special Counsel to execute an Executive Quote Library.

**Presidential Management Intern:** Housing Specialist in the Office of Customer Services and Amenities for Supervisor Paula Blunt, Associate Deputy Assistant Deputy Secretary for Public and Assisted Housing. (202) 708-0614 June 1999 to July 2000. Duties: I participated in working groups that focused on interagency drug policy coordination, and improved screening for substance abusers in welfare-to-work programs.

**Presidential Management Intern:** Special Assistant to Gloria Cousar, Deputy Assistant Secretary for Public and Assisted Housing Delivery (202) 708-1380 Department of Housing and Urban Development, Washington, DC, (202) 708-0614 July 1998 to June 1999. Duties: Reviewed and rated Federal Grants in the following areas; Tenant Opportunities Programs, Economic Development and Supportive Services, Resident Opportunities for Supportive Services, and Community Development Block Grants.

**Presidential Management Intern** Policy Assistant to the Senior Advisor, Office of Disease Prevention and Health Promotion, Office of the Secretary, at Health and Human Services (HHS) Supervisor: Tom Vischi, May 1999 to July 1999, Duties: Reviewed extensive background

Exhibit 53 p. 364

materials, including the National Drug Control Strategy and Performance Measures of Effectiveness reports to Congress.  I reviewed sound bites and television video clips to determine their effectiveness in reaching the population at hand.   The review required careful planning to identify the population at risk, and provide the most appropriate message to that audience to curb underage substance abuse.  In addition, I was responsible for updating several sections of the Healthy Families 2010 manual.   This manual provided local jurisdictions with measurable goals and guidance to better improve public health within the next decade.

**Presidential Management Intern**   Grant Reviewer for Empowerment Zone/ Enterprise Community (EZEC) Round II Applications, Supervisor Dennis Kane, Community Planning and Development Division, Department of Housing and Urban Development, Washington, D.C. August 1998 to November 1998.   Duties: A detail to the Vice President's Round II Empowerment Zone review process.   This consisted of an eight week grant review process to review regional community development block grants awarded in the amount of $100 million per city.

**Children's Counselor** for the City of Chesapeake at Tidewater Detention Home, Chesapeake Virginia, May 1996 to July 1998, Supervisor:  Van Jones, (757) 382-8748  Duties:  I served as a detention counselor to incorporate treatment into the law enforcement system, in an effort to rehabilitate troubled youth.  I facilitated the "University Within Walls" project which provided educational and vocational services in detention in preparation for their re-entry into the community.

**Respite Care Provider and Substitute Teacher** for the Barry Robinson Center, Norfolk, Virginia. May 1996 to June 1998, Supervisors: Cindy Mills and Corey Brooks, (757) 455-6100. Duties: I functioned as a teacher and counselor at an inpatient residential care facility for abused children.

**School Social Worker** for the East End Academy, Intern Assignment, Newport News, Virginia, December 1997 to May 1998, Supervisor: Mary Ann Hendricks
Duties:   I interned as a social worker in a grant funded alternative behavioral school to rehabilitate expelled students within the criminal justice system.

**Social Services Intern** at Virginia Beach Department of Social Services, Virginia Beach, Virginia, August 1996 to May 1997, Supervisor: Albert Duseault, Principal Social Worker (757) 437-3307, Duties:  I managed a caseload of 6 clients within the City of Virginia Beach.  I was responsible for Adult Protection Services, Child Protective Services, Juvenile Court Mediation, Crisis Intervention Counseling, and HIV treatment groups.

**Residential Counselor** at The Pines Residential Treatment Center/ Behavioral Studies Program, Portsmouth, Virginia June 1994 to May 1996, Supervisor: Kim Casey, Supervisor (757) 393-0061, Duties:  I was responsible for the counseling of 30 juvenile court-ordered aggressive behavioral residents.  This included providing Client Centered intervention, the facilitation of family sessions and individual treatment, disbursing medication, the de-escalation of "Out of Control" residents, and continuous updating of the client's treatment plans.

Exhibit 53 p.365

# AWARDS

Earned a Spot Award for excellence of Service for the FY 2009 Bureau of Justice Assistance Drug Policy Review to include assistance with the delivery of 2.3 billion in   American Recovery and Reinvestment Act funding.

Earned a Spot Award for excellence of Service for the FY 2005-2008 Bureau of Justice Assistance Grant Review and Processing cycle, and for participating as the Drug Court Discretionary grant assistant lead.

Earned a Spot Award for excellence of Service for the FY 2003 Bureau of Justice Assistance Grant Review and Processing cycle, and for participating on a working group to develop a site monitoring tool.

Earned a Spot Award for completing the FY 2001 Drug Courts Program Office grant application review and grant award processing in a timely manner.

Earned a Commendation of Efforts for extended work hours, and dedication in the review of Round II Empowerment Zone/ Enterprise Community applications. (1999)

Commendation of Efforts for attending to the treatment milieu of the Pines Treatment Center, and for drafting excellent staffing reports. (1997)

Exhibit 53 p. 366

**Exhibit 68**

(RC Print)

| OFFICE OF JUSTICE PROGRAMS | | | | | | 20721 | - | 4502 | FORM AD-334 |
|---|---|---|---|---|---|---|---|---|---|

| SOCIAL SECURITY NO. | PAY PERIOD DATE MO DA YR MO DA YR | P/P | T&A CONTACT POINT | ACCT. STAT. | ORGANIZATIONAL STRUCTURE | PERSNL OFFICE | PAY PLAN | GR. | STEP | USDA (REV. 10/97) |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2/12/2012   2/25/2012 | 04 | JP-11-0010-01-02 | 1504 | JP-08-10-3000 | 3466 | GS | 13 | 09 | |

| SALARY | RATE | TYPE EMPL. | SCD FOR LEAVE | RET. DEDUCTIONS THIS APPOINTMENT | STATEMENT OF EARNINGS AND LEAVE |
|---|---|---|---|---|---|
| 112,774.00 | PA | F/T | 7/5/1998 | 8,061.52 | |

### EARNINGS AND DEDUCTIONS

| | | ITEM | | HOURS | | | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| CODE | | DESCRIPTION | | P/P | YR. TO DATE | | P/P | YR TO DATE |
| 01 | | REGULAR TIME | | 53.00 | 262.00 | | 2864.12 | 14158.48 |
| 44 | | CASH AWARD | | | | | 1632.00 | 1632.00 |
| 61 | | ANNUAL LEAVE | | 1.00 | 72.00 | | 54.04 | 3890.88 |
| 62 | | SICK LEAVE | | 9.00 | 18.00 | | 486.36 | 972.72 |
| 66 | | OTHER LEAVE | | 9.00 | 40.00 | | 486.36 | 2161.60 |
| 66 | 61 | TIME OFF AWARDS | | 8.00 | 8.00 | | 432.32 | 432.32 |
| ** | ** | **** PAY PERIOD HOURS & GROSS PAY **** | | 80.00 | | | 5955.20 | 23248.00 |
| ** | ** | ********** TOTAL DEDUCTIONS ********** | | | | | 2199.56 | 8537.97 |
| ** | ** | *********** NET PAY *********** | | | | | 3755.64 | 14710.03 |
| ** | ** | DD/EFT ROUTING NO. | | | | | | |

| | | BOND ACCOUNT | | | | | YEAR TO DATE LEAVE STATUS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AUTH NO | DENOM- INATION | DEDUC- TION | BALANCE AVAIL. | NO. ISSUED | ISSUE DATE | TYPE | ACCRUED | USED | BALANCE | PROJECTED USE OR LOSE | PT. HRS UNAPP | MAX. C/O |
| | | | | | | ANN | 24.00 | 1.00 | 197.00 | 99.00 | | 240 00 |
| | | | | | | SICK | 16.00 | 18.00 | 220.00 | | | LEAVE CATEG |
| | | | | | | COMP | | | 1.50 | | | 6 |
| | | | | | | | | | | | | REMARKS |

NAME AND ADDRESS

Official Pay Date     3/8/2012

TIMOTHY E JEFFRIES

**Exhibit 69**

```
SSN _____    AG JP      * PERHIS AWARDS *         01/05/16  IR542
SCREEN 000 NAME THURSTON    L _____  BRYANT _____ PERHIS RCD. 0001

                    AWARDS NUMBER  0004

              CASH AWARD AMT           1417.00   <------
              PMRS/PFP BONUS AMT       _____

EFFECTIVE DATE                 02 14 12  TANGIBLE BENEFITS      ‾
AWARDS CASE NUMBER             JP2I0235  INTANGIBLE BENEFITS
PERIOD COVERED - FROM DATE:    12 01 10  AWARD TYPE CODE        2
              TO DATE:         11 30 11  AWARD CODE           C011
NUMBER PERSONS RECEIVING AWARD      001  NOA 1ST               840
FIRST YEAR SAVINGS                  .00
ACCOUNTING DISTRIBUTION
 FY  2  APPN CODE  22  SUB LEV  10800000
AGENCY CHARGED          JP     ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED _____


INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE         0000
 PF1 = SUB MENU    PF5 = HELP    PF12 = PREV    ENTER = INQUIRY  CLEAR = EXIT
```

FY 11 Rating     Pay in FY 12

```
SSN _____    AG JP      * PERHIS AWARDS *        01/05/16  IR542
SCREEN 000 NAME THURSTON    L _____   BRYANT _____   PERHIS RCD. 0001

                    AWARDS NUMBER  0005

              CASH AWARD AMT           4000.00
              PMRS/PFP BONUS AMT       _____

EFFECTIVE DATE                 03 16 11   TANGIBLE BENEFITS       _
AWARDS CASE NUMBER             JP110621   INTANGIBLE BENEFITS     _
PERIOD COVERED - FROM DATE:    06 01 10   AWARD TYPE CODE          2
                   TO DATE:    11 30 10   AWARD CODE             C011
NUMBER PERSONS RECEIVING AWARD      001   NOA 1ST                 840
FIRST YEAR SAVINGS                  .00
ACCOUNTING DISTRIBUTION
 FY  1  APPN CODE  22  SUB LEV  10800000
AGENCY CHARGED        JP    ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED _____

INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE      0000
PF1 = SUB MENU    PF5 = HELP    PF12 = PREV    ENTER = INQUIRY   CLEAR = EXIT
```

FY 10 Rating        Pay in Fy 11

```
SSN            AG JP        * PERHIS AWARDS *          01/05/16  IR542
SCREEN 000 NAME DANICA         LEE          BINKLEY    PERHIS RCD. 0001

                         AWARDS NUMBER   0004

                CASH AWARD AMT              1417.00
                PMRS/PFP BONUS AMT

EFFECTIVE DATE                   02 14 12  TANGIBLE BENEFITS
AWARDS CASE NUMBER               JP210273  INTANGIBLE BENEFITS
PERIOD COVERED - FROM DATE:      12 01 10  AWARD TYPE CODE              2
                  TO DATE:       11 30 11  AWARD CODE                 C011
NUMBER PERSONS RECEIVING AWARD        001  NOA 1ST                     840
FIRST YEAR SAVINGS                    .00
ACCOUNTING DISTRIBUTION
 FY  2  APPN CODE  22  SUB LEV  10800000
AGENCY CHARGED         JP   ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED


INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE       0000
  PF1 = SUB MENU     PF5 = HELP     PF12 = PREV    ENTER = INQUIRY   CLEAR = EXIT
```

```
SSN _____   AG JP      * PERHIS AWARDS *        01/05/16  IR542
SCREEN 000 NAME DANICA     LEE          BINKLEY     PERHIS RCD. 0001

                     AWARDS NUMBER  0005

                 CASH AWARD AMT          4000.00
                 PMRS/PFP BONUS AMT      _____

EFFECTIVE DATE                03 16 11   TANGIBLE BENEFITS       __
AWARDS CASE NUMBER            JP110651   INTANGIBLE BENEFITS      2
PERIOD COVERED - FROM DATE:   06 01 10   AWARD TYPE CODE        C011
              TO DATE:        11 30 10   AWARD CODE              840
NUMBER PERSONS RECEIVING AWARD     001   NOA 1ST
FIRST YEAR SAVINGS                 .00
ACCOUNTING DISTRIBUTION
 FY  1  APPN CODE  22  SUB LEV  10800000
AGENCY CHARGED        JP     ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED _____


INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE          0000
  PF1 = SUB MENU    PF5 = HELP    PF12 = PREV    ENTER = INQUIRY   CLEAR = EXIT
```

```
SSN _____    AG JP   * PERHIS TIME OFF AWARD DATA *    01/05/16   IR543
SCREEN 000 NAME RUBY _____  F _____    QAZILBASH _____


              HOURS        NATURE OF      EFFECTIVE       PROCESSED
              GRANTED       ACTION          DATE         PP      YR

              32.00          846          05 17 15       10      15
              24.00          846          05 04 14       09      14
              40.00          846          04 20 14       08      14
              10.00          846          10 07 12       21      12
              10.00          846          08 12 12       17      12
              10.00          846          07 29 12       16      12
     ──────▶  40.00          846          02 26 12       05      12
              24.00          846          04 24 11       09      11
              40.00          846          04 10 11       08      11
              32.00          846          11 22 09       24      09




INQUIRY COMPLETE - ENTER NEXT SSN OR SCREEN NUMBER _____    0000 _____
  PF1 = SUB MENU  PF5 = HELP    PF8 = PG/DOWN    ENTER =  INQUIRY   CLEAR = EXIT
```

```
SSN            AG JP        * PERHIS AWARDS *          01/05/16  IR542
SCREEN 000 NAME REBECCA                    ROSE       PERHIS RCD. 0001

                         AWARDS NUMBER   0002

                CASH AWARD AMT             4000.00
                PMRS/PFP BONUS AMT

EFFECTIVE DATE                   03 16 11  TANGIBLE BENEFITS         _
AWARDS CASE NUMBER               JP110647  INTANGIBLE BENEFITS
PERIOD COVERED - FROM DATE:      06 01 10  AWARD TYPE CODE           2
              TO DATE:          11 30 10  AWARD CODE              C011
NUMBER PERSONS RECEIVING AWARD        001  NOA 1ST                  840
FIRST YEAR SAVINGS                    .00
ACCOUNTING DISTRIBUTION
 FY  1  APPN CODE  22  SUB LEV  10800000
AGENCY CHARGED         JP     ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED


INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE         0000
  PF1 = SUB MENU    PF5 = HELP    PF12 = PREV   ENTER = INQUIRY  CLEAR = EXIT
```

```
SSN              AG JP   * PERHIS TIME OFF AWARD DATA *      01/05/16   IR543
SCREEN 000 NAME REBECCA  _____    ROSE _____

                 HOURS      NATURE OF     EFFECTIVE      PROCESSED
                 GRANTED    ACTION          DATE          PP   YR

                  24.00       846        05  31  15        11   15
                  40.00       846        05  17  15        10   15
                  24.00       846        05  04  14        09   14
                  40.00       846        04  20  14        08   14
                   8.00       846        03  24  13        06   13
                  40.00       846        03  10  13        05   13
                  10.00       846        07  29  12        16   12
                  40.00       846        02  26  12        05   12
                  10.00       846        10  09  11        21   11
                 _____      ___        __  __  __        __   __


LAST PHIS RECORD - ENTER NEXT SSN OR PF8 FOR MORE RECORDS
  PF1 = SUB MENU  PF5 = HELP    PF8 = PG/DOWN   ENTER =  INQUIRY    CLEAR = EXIT
```

```
SSN           AG JP      * PERHIS AWARDS *           01/05/16  IR542
SCREEN 000 NAME ALISSA      MARIE        HUNTOON         PERHIS RCD. 0001

                          AWARDS NUMBER   0004

                   CASH AWARD AMT            1374.00
                   PMRS/PFP BONUS AMT

EFFECTIVE DATE                   02 14 12   TANGIBLE BENEFITS
AWARDS CASE NUMBER               JP2I0250   INTANGIBLE BENEFITS        _
PERIOD COVERED - FROM DATE:      12 01 10   AWARD TYPE CODE            2
                   TO DATE:      11 30 11   AWARD CODE               C01I
NUMBER PERSONS RECEIVING AWARD        001   NOA 1ST                   840
FIRST YEAR SAVINGS                    .00
ACCOUNTING DISTRIBUTION
 FY  2  APPN CODE  22  SUB LEV  10800000
AGENCY CHARGED         JP       ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED


INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE        0000
  PF1 = SUB MENU     PF5 = HELP     PF12 = PREV    ENTER = INQUIRY  CLEAR = EXIT
```

```
SSN _____  AG JP      * PERHIS AWARDS *           01/05/16  IR542
SCREEN 000 NAME ALISSA      MARIE      HUNTOON          PERHIS RCD. 0001

                        AWARDS NUMBER  0005

                   CASH AWARD AMT              4000.00
                   PMRS/PFP BONUS AMT        _____

EFFECTIVE DATE                   03 16 11  TANGIBLE BENEFITS        _
AWARDS CASE NUMBER               JP110631  INTANGIBLE BENEFITS
PERIOD COVERED - FROM DATE:      06 01 10  AWARD TYPE CODE          2
               TO DATE:          11 30 10  AWARD CODE             C011
NUMBER PERSONS RECEIVING AWARD        001  NOA 1ST                 840
FIRST YEAR SAVINGS                    .00
ACCOUNTING DISTRIBUTION
 FY  1  APPN CODE  22  SUB LEV  10800000  _____
AGENCY CHARGED        JP        ACCT STATION CHARGED 0000

AWARD CODE DESCRIPTION
CASH AWARD - PERFORMANCE BASED  _____


INQUIRY COMPLETE - PRESS ENTER OR PF KEY TO CONTINUE         0000
  PF1 = SUB MENU    PF5 = HELP    PF12 = PREV    ENTER = INQUIRY  CLEAR = EXIT
```

Exhibit 70

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| JEFFRIES, TIMOTHY E | | | 02/14/12 |

| FIRST ACTION | SECOND ACTION |
|---|---|

| 5–A. Code | 5–B. Nature of Action | 6–A. Code | 6–B. Nature of Action |
|---|---|---|---|
| 840 | INDIVIDUAL CASH AWARD RB | | |

| 5–C. Code | 5–D. Legal Authority | 6–C. Code | 6–D. Legal Authority |
|---|---|---|---|
| | | | |

| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |
|---|---|---|---|
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | PROGRAM ANALYST |
| | 0003    UA053 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,632.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF JUSTICE ASSISTANCE |
| | OFFICE OF THE DIRECTOR |
| | POLICY OFFICE |
| | |
| | DJ JP0810300000000000   PP 04 2012 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 | 1 – None       3 – 10–Point/Disability      5 – 10–Point/Other<br>2 – 5–Point    4 – 10–Point/Compensable    6 – 10–Point/Compensable/30% | | 1 | 0 – None       2 – Conditional<br>1 – Permanent   3 – Indefinite | | YES   X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0   BASIC | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per |
|---|---|---|---|
| K   FERS AND FICA | 07/05/98 | F   FULL TIME | Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 | 1 – Competitive Service   3 – SES General<br>2 – Excepted Service   4 – SES Career Reserved | E | E – Exempt<br>N – Nonexempt | | 1533 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON  DIST OF COLUMBIA  DC |

| 40. Agency Data | 41.<br>SEX: M | 42.<br>CITZ: 1 | 43.<br>VET STAT: X | 44.<br>ED LV:17 YR:89 INST PRG:440701 |
|---|---|---|---|---|

45. Remarks

CASH AWARD - PERFORMANCE BASED
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/OJP | E/S BY: JENNIFER MCCARTHY |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | DEPUTY DIRECTOR OF ADMINISTRATION |
|---|---|---|---|
| DJ JP | 3466 | 02/17/12 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238