UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY E. JEFFRIES )<br>    Plaintiff )<br> )<br>    v. )<br> )<br>JEFF SESSIONS, )<br>ATTORNEY GENERAL, )<br>U.S. DEPARTMENT OF JUSTICE )<br>    Defendant ) | Civil Action No. 15-1007 (BAH) |

PLAINTIFF'S REPLY TO DEFENDANT'S
OPPOSITION TO MOTION FOR
RELIEF FROM JUDGMENT

Plaintiff Timothy E. Jeffries ("Jeffries"), by his attorney, Jerry R. Goldstein, hereby submits the following reply to the Defendant's Opposition to his Motion for Relief from Judgment.

**1. The Moses Email Deals With Many More Problems With the BJA Promotion Process Than Just Aponte's Preference for Caucasian Females.**

Defendant mischaracterizes the Marilyn Moses email ("Moses email") in a futile attempt to limit its significance. While the email is focused on Edison Aponte's actions, it also addresses other serious problems with the selection process for BJA promotions which could have affected some or all of the non-selections in issue in this case. These problems include subversion of the promotion process to serve the personal discriminatory goals of managers, including Aponte; promotions being used to reward employees who don't complain or report violations (as Jeffries did); a discriminatory culture in BJA that led managers to believe that they could stack promotion panels,

1

influence ratings, promote favorites, and discriminate against qualified applicants with impunity; a lack of management oversight to prevent abuses in promotional decisions; and the fact that complaints about such practices to managers, including Tracey Trautman, Tammy Reid, and Jennifer McCarthy, who were all involved in Jeffries' non-selections, were ignored.

**2. Defendant's Opposition Acknowledges that Caucasian Females Were Selected for Two of the Non-Selections in Issue.** Despite Defendant's attempt to limit the implications of the Moses email to Aponte's preference for Caucasian females, Defendant acknowledges that there were in fact Caucasian females selected for two of the non-selections is issue in this case for which Aponte chaired the panels. Esmeralda Womack, about whom Aponte allegedly had sexual fantasies, was selected for one of the Supervisory Grants Manager (Branch Chief) positions that would report to Aponte,[1] and Brenda Worthington was selected for one of the two Supervisory Grants Management Specialist positions.[2] Thus, at the very least, those two selections are directly implicated by the allegations in the Moses email.

---

[1] The other selectee for Supervisory Grants Manager was Naydine Fulton-Jones, an African-American female, who told Jeffries that she was interviewed before he was even though he was supposedly given priority consideration. (See Exs. 1 and 24) (Citations to numbered exhibits refer to the exhibits attached to Plaintiff's Opposition to Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment at Document No. 9 in the record.)

[2] The other selectee for Supervisory Grants Management Specialist was Cory Randolph, an African-American male, who was told to apply for the position even though he didn't qualify for a GS-14 position (so it was changed to GS-13/14), and said that he had been congratulated by someone for his selection before he even learned that he had been selected and that he himself believed that race played a role in his selection. (Ex. 49 at p. 92)

**3. Jeffries Was Not Previously Aware of Aponte's Alleged Manipulation of the Selection Process.**  The Moses email mentions that "OGC and OJP leadership are well aware that Aponte was rumored to be sexually involved with at least one woman in his chain of command," and that "just about everyone was aware that Aponte was engaged in inappropriate relationships with Caucasian women in his chain of command." (Pp. 1-2 and 5) However, even if these statements about Aponte's rumored relationships are true, this does not mean that Jeffries was previously aware of them, and, in fact, he was not.  In addition, rumors about Aponte's relationships do not necessarily mean that he was manipulating the selection process to place Caucasian women in his chain of command, or that Jeffries was previously aware of such manipulations, which he wasn't.  Therefore, Defendant's argument that Jeffries could not have been "justifiably ignorant" is invalid.  Jeffries' Rule 56(d) motion was denied, so there was no discovery permitted in this Court.  If the discovery about the allegations of Aponte's manipulation of the selection process establishes them to be true, even if it were only as to the two selections involving Womack and Worthington, it would be admissible evidence that could well change the outcome of this case, especially if the discovery establishes management's knowledge of such manipulation.

**4. Defendant's Argument About Jeffries' Low Interview Scores is Invalid.**  Defendant contends that the fact that other panelists besides Aponte gave Jeffries lower interview scores than the selectees means that he would not have been selected for the positions in question regardless of the allegations against Aponte.  However, as previously noted, if the ratings were due to Aponte's actions in stacking the panels, to his

providing the interview questions in advance to his favored applicants (as "Ms. A' in the Moses email said that Aponte did for her), to his influencing the ratings, and/or to his quid pro quo sexual discrimination, then that evidence would have supported Jeffries' claims and could well have led a jury to rule in his favor. See *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909-10 (2016) (judgment vacated because biased judge may have affected fairness to outcome of case even though his vote was not dispositive of result).

Contrary to Defendant's argument, this also applies to the Supervisory Grants Manager position for which Jeffries was supposed to be given priority consideration. There is evidence that the panelists were provided with the names of the other applicants in April 2011 before Jeffries was interviewed (Ex. 13), and two of the panelists (Reid and Aponte) themselves stated in their affidavits to the EEO investigator that they had compared Jeffries to the other applicants. (Ex. 21 at p .318; Ex. 22 at p. 298) Therefore, since Aponte controlled the panel and the interview process, he had the opportunity to influence the other panelists to select his favored applicant and reject Jeffries.

**5. Defendant's Criticism of the Document Jeffries Submitted for the Supervisory Grants Manager Position is Invalid.** Defendant's criticism of a document Jeffries gave the panel for having spelling errors is invalid for two reasons. First, it mischaracterizes the document. It was not submitted as a writing sample as asserted by Defendant; it was requested as an example documenting a situation where Jeffries had used critical thinking to solve a problem. There was no criticism of it from that perspective, and the lengthy document simply contained a few typographical errors. Second, and more importantly, this was never mentioned as a reason for Jeffries' non-

selection either in his rejection letter (Ex. 18), or in the notes of the panelists (Ex. 16), or in the original affidavits they provided to the investigator for the ROI. (Exs. 21-23) Instead, it is mentioned in an undated justification memorandum that appears to have been prepared <u>after</u> the initiation of litigation (Def. Ex. 64). An employer's shifting rationales for an adverse action can be evidence of pretext. *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (a reasonable juror could infer pretext from the shifting and inconsistent explanations for non-selection).

      **6. <u>The Moses Email Was Not Solicited.</u>**  The fact that the Moses email was sent a short time after the parties filed their cross-Motions for Summary Reversal and for Summary Affirmance in the Court of Appeals does not mean that it was solicited. Counsel for Jeffries has never met with or spoken to Moses, or even knew who she was before receiving the email. It is obvious from the email that it was sent to counsel for both parties in an effort to encourage them to settle the case. That does not mean that it was solicited.

### Conclusion

      For the foregoing reasons and those in Plaintiff's Motion for Relief from Judgment, the Court should make an indicative ruling that it would grant Jeffries' Rule 60(b) Motion, or that the Motion raises a substantial issue.

                            Respectfully submitted,

       /s /   **JERRY R. GOLDSTEIN**
           Jerry R. Goldstein (Bar No. 173690)
           Jerry R. Goldstein, P.C.
           1418 Fallswood Dr.
           Rockville, MD 20854
           (301) 502-9514
           (301) 608-0881 Fax
           jrg4law@aol.com
           Attorney for Plaintiff

### CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served via ECF filing, this 10th day of July, 2017, to Marsha W. Yee, Esq., Assistant United States Attorney, 555 Fourth St., N.W., Washington, DC 20530, attorney for Defendant.

       /s /   **JERRY R. GOLDSTEIN**
           Jerry R. Goldstein