**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY JEFFRIES, <br><br> Plaintiff, <br><br> v. <br><br> JEFF SESSIONS, <br> ATTORNEY GENERAL, <br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 15-1007 (BAH) <br><br> Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Timothy Jeffries, seeks relief from the grant of summary judgment against him and in favor of the defendant, the Department of Justice ("DOJ"), pursuant to Federal Rules of Civil Procedure 60(b)(2) and 62.1(a)(3), on his claims of race and gender employment discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, arising primarily from his non-selection for seven positions for which he applied between 2011 and 2014, within the Bureau of Justice Assistance ("BJA"), a component of DOJ.[1] *See* Pl.'s Renewed Mot. For Relief From J. ("Pl.'s Renewed Mot."), ECF No. 25; *Jeffries v. Lynch*, 217 F. Supp. 3d 214, 219–20 (D.D.C. 2016).[2] This motion is predicated on a lengthy email, dated May 10, 2017, from the president of the plaintiff's union to plaintiff's counsel describing disturbing allegations made by an anonymous female BJA

---

[1] The named defendant is the current Attorney General, Jeff Sessions, who is sued in his official capacity, and is substituted for former Attorney General Loretta Lynch. *See* FED. R. CIV. P. 25(d).

[2] The plaintiff's initial motion for reconsideration of the judgment, Pl.'s Mot. For Relief From J. ("Pl.'s 1st Mot."), ECF No. 21, was denied without prejudice pending the D.C. Circuit's resolution of the plaintiff's Motion for Remand already filed before the appellate court, Minute Order, dated July 10, 2017. The D.C. Circuit subsequently held the appeal in abeyance "to allow the district court to address the merits of the renewed motion in the first instance by either denying it with prejudice or issuing an indicative ruling." Order, *Jeffries v. Sessions*, No. 17-5008 (D.C. Cir. Sept. 28, 2017), ECF No. 24.

1

employee about long-standing sexual harassment by a male BJA Associate Deputy Director. Pl.'s Mot. For Relief From J. ("Pl.'s 1st Mot."), Ex. 1, Email, dated May 10, 2017, from Marilyn Moses, President, AFSCME Local 2830 ("Union Email"), ECF No. 21-1. While the anonymous victim of this harassment "never went 'head-to-head' against [the plaintiff] for any promotional position," Union Email at 2; *id.* at 5, and concededly has no direct knowledge about the plaintiff's non-selections, the plaintiff asserts that the allegations of sexual harassment against the victim, and possibly several other women described in the Union Email, constitutes new evidence, within the meaning of Federal Rule of Civil Procedure 60(b)(2), supporting his claims of race and gender discrimination and retaliation. The Court disagrees.

I.  **BACKGROUND**

The factual background underlying the plaintiff's claims is fully set out in the prior Memorandum Opinion explaining the reasons for grant of summary judgment to the defendant and thus will not be repeated here. *Jeffries*, 217 F. Supp. 3d at 220–25. Six months after the issuance of that Memorandum Opinion, while the plaintiff's appeal was pending, the plaintiff's counsel received the Union Email. *See* Def.'s Opp'n to Pl.'s 1st Mot. ("Def.'s 1st Opp'n"), at 1, ECF No. 22 (noting that plaintiff's "union representative sent this email on [plaintiff's] behalf, urging settlement, just eight business days after DOJ filed its motion for summary affirmance."). By this time, according to the Union Email, the plaintiff had been promoted to a GS-14 position "but continues to pursue" his Title VII claims with "hopes that DOJ will settle with him." Union Email at 1.

As noted, the Union Email describes in detail serious allegations made anonymously by a current BJA employee, "Ms. A.," about longstanding sexual harassment she suffered from the conduct of Edison Aponte, the Associate Deputy Director of the BJA Program Division. *Id.* at 2;

Pl.'s 1st Mot. at 4. In addition to Ms. A., the Union Email describes allegations of sexual harassment and rape against Aponte made by a former BJA employee, with the initials S.C., *id.* at 2, 6; Aponte's "rumored" sexual liaison with another former BJA employee, with the initials A.A., *id.* at 2; and Aponte's inappropriate comments communicated to Ms. A. about other BJA female employees, including S.C., Esmeralda Womack, Tarasa Yates, and "**OJJDP manager [] Kellie Dressler Blue**," *id.* at 4, 5 (emphasis in original). These allegations concerning serial sexual harassment by a senior BJA manager were described in the Union Email as "indicia of a discriminatory culture that exists among BJA management with respect to promotions," *id.* at 2, such that "favoritism plays a role in promotional selections, and that managers such as Aponte, have deliberately subverted the merit protection system and its guarantees to serve their own personal agendas," *id.*; *see also id.* ("[I]t illuminates that Aponte subverted the promotional process to achieve personal goals via a rigged promotional process."). The Union Email suggests that Aponte targeted for harassment and preferential treatment, as a *quid pro quo* for sexual favors, women with the profile of being attractive, "thin and very [] fair-skinned Caucasian." *Id.* at 5; *id.* at 6 (referring again to "Aponte's apparent preferred profile – she is a very attractive fair-skinned Caucasian woman"). Based on these allegations, the Union Email states that "at a minimum, *all promotions in which Aponte was involved are in question*," *id.* at 2 (emphasis in original), and raises the specter of others who may have been "offered promotions in exchange for sex or other considerations," *id.* at 3.

Aponte was a member of the first-round interview panel for three of the seven non-selections that the plaintiff claims were discriminatory, and was not a final decision-maker for any of these three selections. *Jeffrie*s, 217 F. Supp. 3d at 221–23. In 2011, Aponte served with Tammy Reid and Jonathan Faley on the interview panel to fill two Supervisory Grants Program

3

Manager positions. *Id.* at 221. The plaintiff was not selected, in favor of two women, an African-American woman and Esmeralda Womack, *id.*, about whom Ms. A. alleges Aponte expressed "sexual fantasies," Union Email at 4–5. The selecting official for this position was Tracey Trautman, Def.'s Mot. J. on the Pleadings or Summ. J., Ex. 4, Aff. of Tracey Trautman ¶ 7, ECF No. 7-3, who is mentioned in the Union Email only as one of several higher-ups who failed to stop Aponte's behavior, Union Email at 5.

In 2012, for the Senior Policy Advisor for Evidence Integration position, Aponte served on the interview panel with two women, *Jeffries*, 217 F. Supp. 3d at 222, neither of whom are mentioned as targets of Aponte's sexual harassment in the Union Email. One of the panelists, Kristina Rose, conducted the plaintiff's interview and "was not aware of the plaintiff's prior protected activity at the time of the interview." *Id.* The plaintiff was not selected, in favor of an African-American male. *Id.* The selecting official for this position was Kristen Mahoney, Pl.'s Opp'n Def.'s Mot. J. on the Pleadings or Summ. J. ("Pl.'s Opp'n"), Ex. 38, Selection Recommendation Letter from Kristen Mahoney to Denise O'Donnell, ECF No. 9-14, who was not mentioned in the Union Email.

The last of the three challenged non-selections involving Aponte occurred in 2013, when the plaintiff applied for the position of Supervisory Grants Program Manager. *Jeffries*, 217 F. Supp. 3d at 223. Aponte served on the interview panel with another man, and a non-BJA employee, Kellie Dressler Blue, *id.*, about whom Ms. A. alleges Aponte also expressed "sexual fantasies," Union Email at 5. A second round of interviews was conducted by selecting officials Tracey Trautman, who as noted above is briefly mentioned in the Union Email, and Denise O'Donnell, who is not mentioned in the Union Email, and both found the selectees "highly qualified." *Jeffries*, 217 F. Supp. 3d at 239; Pl.'s Opp'n, Ex. 48, Aff. of Tracey Trautman ¶ 17,

ECF No. 9-16. The plaintiff was not selected in favor of an African-American male and Brenda Worthington, *Jeffries*, 217 F. Supp. 3d at 238, who is not mentioned as a target of Aponte's sexual harassment in the Union Email.

## II. LEGAL STANDARD

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Such a motion "must be made 'within a reasonable time' and 'no more than a year after the entry of the judgment or order or the date of the proceeding.'" *In re Hope 7 Monroe St. Ltd. P'ship (7 Monroe St.)*, 743 F.3d 867, 873 (D.C. Cir. 2014) (quoting FED. R. CIV. P. 60(c)(1)). The party seeking relief under Rule 60(b) bears the burden of proof to show that he is entitled to the relief. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–84 (1992); *Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813, 817 n.6 (D.C. Cir. 2006); *see also Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011). A "threshold requirement for obtaining [such] relief" is the demonstration of "a meritorious claim or defense to the motion upon which the district court dismissed the complaint." *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995) (citation and internal quotation marks omitted); *see also Thomas v. Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014) ("The requirement that parties seeking Rule 60(b) relief show some prospect of succeeding on the merits flows from the basic principle that courts should revive previously-dismissed claims only if they have some reason to believe that doing so will not ultimately waste judicial resources."); *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 447 F.3d 835, 842 (D.C. Cir. 2006) (noting "that a potentially meritorious defense is a precondition for Rule 60(b) relief"). This "established . . . precondition" assures that "vacating [a] judgment will not be an empty exercise or a futile

5

gesture." *Murray*, 52 F.3d at 355; *see also Norman v. United States*, 377 F. Supp. 2d 96, 98 (D.D.C. 2005) (denying plaintiff's Rule 60(b) motion where "the Court [was] persuaded that reinstatement would ultimately be futile").

The D.C. Circuit has made clear that "[a] meritorious defense is not measured by '[l]ikelihood of success,' but by whether it 'contain[s] even a hint of a suggestion which, proven at trial, would constitute a complete defense.'" *Marino v. DEA*, 685 F.3d 1076, 1080 (D.C. Cir. 2012) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (alterations in original; some internal quotation marks omitted); *see also Thomas v. Holder*, 750 F.3d at 902 (noting that Rule 60 movants "need not meet a particularly high bar to satisfy this threshold requirement, but they must provide at least a hint of a suggestion that they might prevail") (internal quotation marks omitted).[3] Since "a genuine dispute over material facts defeats a motion for summary judgment," a meritorious defense may be established "with only a hint of a suggestion that key facts in the record aren't yet entirely clear." *Marino*, 685 F.3d at 1080.

"[T]he decision to grant or deny a rule 60(b) motion is committed to the discretion of the District Court." *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993). In exercising this discretion, the district court "must strike a delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience

---

[3] The defendant relies on an articulation of the legal standard set out in several district court cases that requires the party moving for Rule 60(b) relief to "demonstrate," *inter alia*, "the evidence is admissible and is of such importance that it probably would have changed the outcome.'" Def.'s 1st Opp'n at 3 (quoting *West v. Holder*, 309 F.R.D. 54, 57 (D.D.C. 2015) (quoting *Duckworth v. United States ex rel. Locke*, 808 F. Supp. 2d 210, 216 (D.D.C. 2011) (quoting *Epps v. Howes*, 573 F. Supp. 2d 180, 185 (D.D.C. 2008) (quoting *Lightfoot v. District of Columbia*, 555 F. Supp. 2d 61, 68 (D.D.C. 2008) (quoting *United States v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 392 (2d Cir. 2001)))))). This standard, though adopted in the Second Circuit, *see, e.g.*, *Victorinox AG v. B&F Sys.*, 2017 U.S. App. LEXIS 18070 at *13–14 (2d Cir. Sept. 19, 2017) (applying the *Int'l Bhd. of Teamsters* standard to a Rule 60(b)(2) motion), has not been cited, let alone approvingly, by the D.C. Circuit, and the use of a "probab[ility]" assessment is difficult to reconcile with the D.C. Circuit's direction that a "meritorious defense is not measured by '[l]ikelihood of success.'" *Marino v. DEA*, 685 F.3d at 1080 (alteration in original; citation omitted).

that justice be done in light of *all* the facts." *Bain v. MJJ Prods.*, 751 F.3d 642, 646 (D.C. Cir. 2014) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (alteration in original; internal quotation marks omitted)); *see also Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004) (noting that courts "must balance the interest in justice with the interest in protecting the finality of judgments").

## III. DISCUSSION

The allegations of sexual harassment described in the Union Email, troubling as they are, are insufficient to justify relief under Rule 60 from the grant of summary judgment against the plaintiff on his claims of discriminatory non-selection or to warrant the extended period of 120 days of discovery that he requests. Even if admissible evidence supporting these allegations against Aponte could be discovered, these allegations are sufficiently attenuated from the non-selections at issue that such evidence would not change the outcome by raising genuine issues of material fact about DOJ's legitimate, non-discriminatory reasons for the plaintiff's non-selection.

At the outset, the defendant contends that the plaintiff's motion should be denied because he fails to meet the prerequisites for invocation of Rule 60(b)(2) by showing that the sexual harassment allegations are either "newly discovered evidence that, with reasonable diligence, could not have been discovered in time," FED. R. CIV. P. 60(b)(2), or amount to admissible evidence, Def.'s 1st Opp'n at 3–4. Neither of these bases is sufficient to reject the plaintiff's motion outright.

As support for the first basis for denial of the motion, the defendant highlights the statement in the Union Email that "just about everyone was aware that Aponte engaged in inappropriate relationships with Caucasian women in his chain of command." *Id.* at 3 (quoting Union Email at 6). If this statement is to be believed, the defendant argues that the plaintiff

7

"could not have been 'justifiably ignorant' about Aponte's alleged improprieties," *id.*, and, consequently, failed to exercise reasonable diligence in bringing this evidence before the Court, *id.* Even assuming that the plaintiff was aware of the rumored sexual misconduct by Aponte, this argument ignores the statements in the Union Email that the precise allegations of sexual harassment made by Ms. A. were only recently authorized by Ms. A. to be communicated to the plaintiff. *See* Union Email at 2 (stating that "[w]hile she wants her identity to remain confidential to the extent possible . . . Ms. A. has granted permission to the union president to reveal the nature of her allegations regarding Aponte as it relates to [plaintiff's] claim as to bias/discrimination in BJA's promotional selection process").

The D.C. Circuit has made clear that "evidence that was [] hidden, or unavailable during" dispositive proceedings "could qualify as 'newly discovered evidence' when later found, even if the evidence was known to the movant at the time." *Bain*, 751 F.3d at 647. Otherwise "mere awareness of evidence would forever preclude its consideration as 'newly discovered' . . . even if it had been unavailable during trial or summary judgment proceedings due to circumstances entirely beyond the party's control." *Id.* Giving the plaintiff every inferential benefit, Ms. A. does not appear to have been forthcoming to him about the sexual harassment allegations until many months after resolution of the summary judgment motion in this case, and thus this evidence was unavailable to the plaintiff.

While mere "awareness of evidence, standing alone, does not categorically preclude considering the evidence to be 'newly discovered' under Rule 60(b)(2), a party's unannounced awareness of evidence can affect the assessment of whether it exercised the 'reasonable diligence' contemplated by the Rule." *Id.* at 647–48. The defendant is silent on whether the plaintiff should have sought discovery about Ms. A.'s (or others') allegations regarding Aponte

8

during prior proceedings, *see generally* Def.'s 1st Opp'n, and, given Ms. A.'s continued reluctance to go public with her full story, the record does not support a finding of any lack of diligence by the plaintiff to uncover this evidence. Thus, the defendant's argument that the Union Email does not constitute "newly discovered evidence" is not persuasive.

Next, the defendant urges denial of the plaintiff's motion because the Union "email consists of unsupported hearsay and speculation, and thus cannot satisfy [plaintiff's] burden to show he is entitled to relief. Def.'s 1st Opp'n at 4. Indeed, the plaintiff acknowledged before the D.C. Circuit that the proffered evidence consists of hearsay (or double or triple hearsay). *See* Pl.'s Reply Brief at 3, *Jeffries v. Sessions*, No. 17-5008 (D.C. Cir. June 21, 2017), Doc. No. 1680670 (conceding that the Union "email contains hearsay information. That's why [the email] may not technically be 'newly discovered evidence' for purposes of a Rule 60(b) Motion."). As hearsay, the defendant is correct that the Union Email does not present the quality of evidence sufficient to defeat a motion for summary judgment. *See Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 973 (D.C. Cir. 2016) (finding no error in granting summary judgment where nonmovant offered only "inadmissible hearsay"); *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("Because Greer's evidence about Carter's statement is 'sheer hearsay,' it 'counts for nothing' on summary judgment.") (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)). Nevertheless, the defendant again ignores the fact that the plaintiff seeks discovery precisely to uncover direct, admissible evidence about Aponte's sexual misconduct within BJA and whether this played a role in the three non-selections in which Aponte was involved. Pl.'s 1st Mot. at 8–9. In these circumstances, where the plaintiff requests an opportunity to convert the hearsay into admissible

9

evidence, reliance solely on the fact that the Union Email is hearsay is too thin a thread to deny the plaintiff's Rule 60 motion.

Finally, the defendant argues that the newly discovered sexual harassment allegations "fail to undermine DOJ's non-selection of [the plaintiff] for the three positions for which Aponte served as a panelist." Def.'s 1st Opp'n at 4. After close examination of the Union Email and the record evidence regarding the specific facts relating to each of three non-selections in which Aponte was involved, the Court concludes that, even were the plaintiff able to establish through admissible evidence that Aponte engaged in the sexual harassment alleged in the Union Email, this evidence would not disturb the conclusion reached in granting summary judgment to the defendant that no reasonable jury could infer that the real reason that the plaintiff was not selected for the three positions in which Aponte was involved was discrimination or retaliation. *Jeffries*, 217 F. Supp. 3d at 232, 236, 241.[4]

In other words, the allegations in the Union Email have no bearing on the undisputed evidence underlying the determination that the plaintiff's non-selections for Supervisory Grants Program Manager, Senior Policy Advisor for Evidence Integration, and Supervisory Grants Management Specialist, were due to his "objective shortcomings," *Jeffries*, 217 F. Supp. 3d at 232 n.12, and poor interview performance compared to the selectees for each of the positions, an

---

[4] The plaintiff's request for discovery to supplement the over 17,000 pages of documents provided during administrative proceedings, was previously denied as unnecessary or irrelevant. *Jeffries*, 217 F. Supp. 3d at 228, 233 n.13. That request sought depositions of "21 people, including much of the BJA leadership" and "the Attorney General and members of the Attorney General's Diversity Committee." *Id.* at 219 n. 2. As part of the Rule 60(b) motion, the plaintiff renews his request for a four-month period of discovery, but does not detail the specific numbers of BJA or other DOJ employees he would like to depose "to explore the facts" related by the Union Email. Pl.'s 1st Mot. at 9. Given the questions raised about "how many more 'Apontes' are there within BJA? Are there other additional unknown victims of Aponte? If so, how many victims have there been? Were they all offered promotions in exchange for sex or other considerations?," Union Email at 3—which questions may be part of an apparent investigation by the DOJ Office of Inspector General—the scope of the additional discovery sought by the plaintiff appears very broad and far afield from the specific non-selections involving him or even Aponte. This case is simply not the right vehicle to either investigate or address the serious allegations in the Union Email. Consequently, the plaintiff's renewed request for discovery into the sexual harassment allegations is denied.

assessment shared by the other male and female interviewers, *see id.* at 229–32, 238–41. For instance, regarding the plaintiff's non-selection for either of the two Supervisory Grants Program Manager positions, "the undisputed evidence bolsters the interviewers' conclusion that the plaintiff was unable to explain his qualifications during his interview, dressed unprofessionally for the interview, and submitted a writing sample riddled with errors." *Id.* at 232. By contrast to the interviewers' view that Esmerelda Womack's ability to speak "at length during her interview about how she had mentored BJA staff, providing multiple examples," and to "articulate[] a vision as to how she would lead and supervise if offered the position," the plaintiff evidenced an "inability to articulate how any of his experience had prepared him for the Supervisory Grants Program Manager role during his interview." *Id.* Consequently, the Court found that "[n]o reasonable jury could infer that DOJ's explanation as to why the plaintiff was not selected for the Supervisory Grants Management position was pretextual." *Id.*

Regarding his non-selection for the Senior Policy Advisor for Evidence Integration position, the plaintiff, who holds a Master of Social Work, *id.* at 236, lost out to a candidate with a Ph.D. in a relevant field of Interdisciplinary Social Science with a focus on Criminal Justice, and prior extensive experience as a Senior Research Associate & Evaluation Coordinator, *id.* at 235–36. By contrast to the selectee, the plaintiff had "far fewer awards than [the selectee], lists no publications on his résumé, and has much less research experience," when this "position is focused primarily on research and data analysis." *Id.* Thus, the Court found that "the applicants' résumés make clear that [the selectee] was plainly the more qualified candidate." *Id.* at 235. As to the plaintiff's non-selection for the Supervisory Grants Management Specialist positions, again, the interviewers found that the plaintiff "interviewed so poorly relative to the other

11

candidates." *Id.* at 241; *see also id.* at 239 (referring to "the overwhelming and uncontroverted evidence of the plaintiff's abysmal interview performance").

While the plaintiff suggests that Aponte's low evaluation of him during the hiring process for these non-selections was due to "his desire to have the object of his sexual fantasies reporting directly to him," Pl.'s 1st Mot. at 7, the summary judgment record demonstrates, as detailed in the Memorandum Opinion, Aponte's assessment of the plaintiff's comparative weaker credentials and/or his poor interview performances, compared to the selectees for each of the positions, was shared by the other male and female members of the interview panels, *see Jeffries*, 217 F. Supp. 3d at 229–32, 238–41.

Moreover, the plaintiff's speculation that Aponte subverted the hiring process in the three non-selections in which Aponte participated so that the plaintiff was passed over in favor of selectees fitting Aponte's favored profile of thin Caucasian women, is simply not borne out by allegations in the Union Email. Instead, three of the five selectees were African-American men and one woman—Clarence Banks, Cory Randolph, and Nadine Fulton-Jones. Although the two remaining selectees in these three non-selections were Caucasian women, Brenda Worthington and Esmeralda Womack, the government correctly notes the absence of any allegation that Aponte had any sexual interest in Worthington, Def.'s Opp'n Pl.'s Renewed Mot. at 2, ECF No. 26, and that the plaintiff "did not compete directly" against Womack because he was "informed . . . of his non-selection" before other applicants were interviewed, *id.*

In sum, the allegations of sexual harassment set out in the Union Email do not appear to contradict or even undermine the undisputed record evidence upon which summary judgment was granted. Thus, granting this motion would not alter the outcome and would instead "be an empty exercise or a futile gesture." *Murray*, 52 F.3d at 355.

## IV. CONCLUSION

Upon consideration of the plaintiff's renewed motion, the memoranda submitted in support and opposition, and the entire record herein, for the reasons set out above, the plaintiff's motion is DENIED. An order consistent with this Memorandum Opinion will be entered simultaneously.

**SO ORDERED**.

Date: January 11, 2018

_____
BERYL A. HOWELL
Chief Judge